**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

ORCUN SELCUK; ALAN DAVID
GWILLIAM, TINGTING ZHEN, MICHAEL
BROKLOFF; and THE LEAGUE OF
UNITED LATIN AMERICAN CITIZENS OF
IOWA, on behalf of itself and its members;

        Plaintiffs,

    v.

PAUL D. PATE, in his official capacity as the
Iowa Secretary of State; BENJAMIN D.
STEINES, in his official capacity as the
Winneshiek County Auditor and Winneshiek
County Commissioner of Elections; JAMIE
FITZGERALD, in his official capacity as the
Polk County Auditor and Polk County
Commissioner of Elections; MELVYN
HOUSER, in his official capacity as the
Pottawattamie County Auditor and
Pottawattamie County Commissioner of
Elections; ERIN SHANE, in her official
capacity as the acting Johnson County Auditor
and acting Johnson County Commissioner of
Elections; and KERRI TOMPKINS, in her
official capacity as the Scott County Auditor
and Scott County Commissioner of Elections,

        Defendants.

Case No. 4:24-cv-00390

**PLAINTIFFS' MEMORANDUM OF
LAW IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

**EXPEDITED HEARING AND RELIEF
REQUESTED**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

I.      The Secretary Announces the Voter Purge Program. ............................................ 2

II.     The Individual Plaintiffs, Naturalized Citizens, Attempt to Vote Through Early In-
        Person Voting ........................................................................................................... 5

        A.      Dr. Orcun Selcuk. ....................................................................................... 5

        B.      Mr. Alan David Gwilliam. .......................................................................... 6

        C.      Ms. Tingting Zhen. ...................................................................................... 7

        D.      Mr. Michael Brokloff. ................................................................................. 7

        E.      The League of United Latin American Citizens of Iowa. ........................... 8

III.    Absent an Injunction, the Secretary's List Will Burden Eligible Voters ............... 9

ARGUMENT ...................................................................................................................... 10

I.      Plaintiffs Are Likely to Succeed on the Merits. ................................................... 10

        A.      Plaintiffs Are Likely to Succeed on the Merits of Their Claim That
                Defendants' Conduct Violates the Equal Protection Clause ...................... 10

        B.      The Voter Purge Program Places Impermissible Burdens on the Affected
                Voter's Fundamental Right to Vote. .......................................................... 13

        C.      Plaintiffs Are Likely to Succeed on the Merits of Their Claim That the Purge
                Program Violates Procedural Due Process. ............................................... 14

II.     Plaintiffs Have Suffered and Will Continue to Suffer Irreparable Harm as a Result of
        the Interference with their Right to Vote. ............................................................. 15

III.    The Balance of Equities Tips Sharply in Plaintiffs' Favor. .................................. 17

IV.     The Preliminary Injunction Will Serve the Public Interest. ................................. 18

CONCLUSION ................................................................................................................... 20

# TABLE OF AUTHORITIES

**Federal Cases**                                                                      **Page(s)**

*A. Philip Randolph Inst. v. Husted*,
   907 F.3d 913 (6th Cir. 2018) ...........................................................................18

*Ariz. Dream Act Coalition v. Brewer*,
   757 F.3d 1053 (9th Cir. 2014) .........................................................................17

*Awad v. Ziriax*,
   670 F.3d 1111 (10th Cir. 2012) .......................................................................19

*Bear v. Kautzky*,
   305 F.3d 802 (8th Cir. 2002) ...........................................................................19

*Boustani v. Blackwell*,
   460 F. Supp. 2d 822 (N.D. Ohio 2006)......................................................12, 13

*Burlington N. R.R. Co. v. Bair*,
   957 F.2d 599 (8th Cir. 1992) ...........................................................................16

*Bush v. Gore*,
   531 U.S. 98 (2000)...........................................................................................10

*Cleburne v. Cleburne Living Ctr.*,
   473 U.S. 432 (1985).........................................................................................11

*D.M. by Bao Xiong v. Minn. State High Sch. League*,
   917 F.3d 994 (8th Cir. 2019) ...........................................................................19

*Davis v. Mineta*,
   302 F.3d 1104 (10th Cir. 2002) .......................................................................17

*Democratic Nat'l Comm. v. Republican Nat'l Comm.*,
   No. CV 81-03876, 2016 WL 6584915 (D.N.J. Nov. 5, 2016)................................17

*Dillard v. Crenshaw Cty.*,
   640 F. Supp. 1347 (M.D. Ala. 1986) ...............................................................17

*Doe v. Rowe*,
   156 F. Supp. 2d 35 (D. Maine 2001) ...............................................................14

*Dunn v. Blumstein*,
   405 U.S. 330 (1972).........................................................................................10

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024)...........................................................................................8

*Fernandez v. Georgia*,
   716 F. Supp. 1475 (M.D. Ga. 1989) .................................................................12

*Firearms Policy Coalition Second Amendment Defense Committee v. Harris*,
   192 F. Supp. 3d 1110 (E.D. Cal. 2016)...........................................................19

*Garcia v. Fed. Nat'l Morg. Ass'n*,
   782 F.3d 736 (6th Cir. 2015) ............................................................................14

*Gilliam v. Foster*,
   63 F.3d 287 (4th Cir. 1995) ..............................................................................17

*Gordon v. Holder*,
   721 F.3d 638 (D.C. Cir. 2013) ..........................................................................18

*Graham v. Richardson*,
   403 U.S. 365 (1975)..........................................................................................11

*Grutter v. Bollinger*,
   539 U.S. 306 (2003)..........................................................................................11

*Harper v. Va. State Bd. of Elections*,
   383 U.S. 663 (1966)..........................................................................................13

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982)............................................................................................8

*Heideman v. S. Salt Lake City*,
   348 F.3d 1182 (10th Cir. 2003) ........................................................................16

*Hoblock v. Albany Cty. Bd. of Elections*,
   341 F. Supp. 2d 169 (N.D.N.Y. 2004)...............................................................17

*Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*,
   115 F.4th 889 (8th Cir. 2024) ...........................................................................10

*Hunt v. Wash. State Apple Adver. Comm'n*,
   432 U.S. 333 (1977)............................................................................................8

*Independence-Alliance Party of Minn. v. Simon*,
   87 F.4th 872 (8th Cir. 2023) .............................................................................13

*Kansas City Southern Transport Co., Inc. v. Teamsters Local Union #41*,
   126 F.3d 1059 (8th Cir. 1997) ..........................................................................19

*League of Women Voters of Fla. v. Browning*,
   863 F. Supp. 2d 1155 (N.D. Fla. 2012).............................................................19

*League of Women Voters of Mo. v. Ashcroft*,
    336 F. Supp. 3d 998 (W.D. Mo. 2018) ...............................................................19

*League of Women Voters of N.C. v. North Carolina*,
    769 F.3d 224 (4th Cir. 2014) ...............................................................16, 17, 18

*League of Women Voters of U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016)...............................................................................18

*Libertarian Party of Ark. v. Thurston*,
    962 F.3d 390 (8th Cir. 2020) .............................................................................11

*Luria v. United States*,
    231 U.S. 9 (1913)...............................................................................................10

*McCutcheon v. Fed. Election Comm'n*,
    134 S. Ct. 1434 (2014).......................................................................................16

*Mi Familia Vota v. Fontes*,
    719 F. Supp. 3d 929 (D. Ariz. 2024) .................................................................12

*Montano v. Suffolk Cty. Legislature*,
    268 F. Supp. 2d 243 (E.D.N.Y. 2003) ...............................................................16

*Moore v. Martin*,
    854 F.3d 1021 (8th Cir. 2017) ...........................................................................11

*Nat'l Fed'n of the Blind of Mo. v. Cross*,
    184 F.3d 973 (8th Cir. 1999) ...............................................................................8

*Ne. Fla. Chapter of Ass'n of Gen. Contractors v. Jacksonville*,
    896 F.2d 1283 (11th Cir. 1990) .........................................................................16

*New Ga. Project v. Raffensperger*,
    484 F. Supp. 3d 1265 (N.D. Ga. 2020)...............................................................15

*Obama for Am. v. Husted*,
    697 F.3d 423 (6th Cir. 2012) .......................................................................16, 18

*Ohio State Conf. of NAACP v. Husted*,
    768 F.3d 524 (6th Cir. 2014) .......................................................................13, 14

*Padda v. Becerra*,
    37 F.4th 1376 (8th Cir. 2022) ............................................................................15

*Schmidt v. Des Moines Public Schools*,
    655 F.3d 811 (8th Cir. 2011) .............................................................................14

*Self Advocacy Solutions N.D. v. Jaeger,*
    464 F. Supp. 3d 1039 (D.N.D. 2020) .................................................................14

*Siegel v. LePore,*
    234 F.3d 1163 (11th Cir. 2000) .......................................................................18

*Soltysik v. Padilla,*
    910 F.3d 438 (9th Cir. 2018) ...........................................................................13

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College,*
    600 U.S. 181 (2023) ...........................................................................................8

*Tex. League of United Latin Am. Citizens v. Whitley,*
    No. SA-19-CA-074-FB, 2019 WL 7938511 (W.D. Tex. Feb. 27, 2019) .............12

*Tumey v. Mycroft AI, Inc.,*
    27 F.4th 657 (8th Cir. 2022) ...........................................................................10

*U.S. Student Ass'n Found. v. Land,*
    546 F.3d 373 (6th Cir. 2008) ...........................................................................18

*United States v. Florida,*
    870 F. Supp. 2d 1346 (N.D. Fla. 2012) ............................................................12

*United States v. James Daniel Good Real Property,*
    510 U.S. 43 (1993) ...........................................................................................15

*Wesberry v. Sanders,*
    376 U.S. 1 (1964) .............................................................................................18

*Williams v. Salerno,*
    792 F.2d 323 (2d Cir. 1986) ............................................................................16

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) .............................................................................................10

**State Statutes**

Iowa Code §§ 47.1(1) and 47.7(6) ..........................................................................4

National Voter Registration Act of 1993 § 8(b) .....................................................15

**Constitutional Provisions**

U.S. Const. amend. I ............................................................................................13

U.S. Const. amend. XIV ...............................................................................10, 13

**Other Authorities**

Des Moines Register ....................................................................................................4, 5

Erin Murphy, *3 on List of Possible Illegal Linn County Voters are Eligible,*
   *Auditor Miller Says, The Gazette* (October 25, 2024................................................4

Hannah Fingerhut, *Iowa Finds Several Dozen Instances of Noncitizens Voting in a*
   *Past Election*, *Associated Press* (Oct. 23, 2024) .......................................................3

*Persons Naturalized in Iowa by Country of Birth: 2022*, *State Libr. Iowa*,
   https://www.iowadatacenter.org/index.php/data-by-
   source/other/naturalizations ......................................................................................3

Robin McClelland, *Some Cerro Gordo County Voters Flagged by Pate are*
   *Citizens After All*, *Globe Gazette* (Oct. 30, 2024).....................................................9

Robin Opsahl, *Iowa Secretary of State Says 87 Noncitizens Voted in Elections*,
   *Iowa Cap. Dispatch* (Oct. 22, 2024) ..........................................................................2

Stephen Gruber-Miller, *Iowa Secretary of State Says Dozens of Noncitizens May*
   *Have Voted in Past Elections, Des Moines Register* (October 23, 2024)...................2

## INTRODUCTION

Plaintiffs respectfully and urgently request that this Court grant a temporary restraining order ("TRO") and injunctive relief necessary to halt a new and unlawful scheme that threatens to disenfranchise thousands of voters in the 2024 General Election.

On October 22, 2024—with early voting already underway and just two weeks from Election Day—Iowa Secretary of State Paul D. Pate (the "Secretary") unveiled a list of voters that he maintains are ineligible to vote based on lack of United States citizenship. Rather than adequately investigate the facts, ensure the list's reliability, and then notify the registered voters on the list, the Secretary waited until the eve of an election and provided his list only to county election commissioners, mandating that county election officials automatically challenge the eligibility of all persons on the list. County election commissioners now compelled to follow that directive include Defendants Benjamin D. Steines, Jamie Fitzgerald, Melvyn Houser, Erin Shane, and Kerri Thompkins (with the Secretary, collectively "Defendants").

The Secretary's scheme is unlawful, ill-considered, and an affront to the Constitution. The Secretary's list consists of Iowa voters who have, purportedly and at some point in the past, self-identified to the Iowa Department of Transportation ("DOT") as being non-citizens. But thousands of Iowans naturalize as citizens every year, many of them swearing their oaths in this courthouse. The Secretary's scheme—based solely on data that may be years old—requires new citizens, absent any notice, to prove their citizenship at the polls or else lose their fundamental right to vote in the 2024 General Election. Absent an injunction, Defendants have instituted a burdensome requirement for naturalized citizens that does not exist for citizens born in the United States, solely based on their national origin.

The Secretary's discriminatory scheme requires urgent relief and immediate corrective action. Public reporting indicates that voters on the Secretary's secret list have been referred to

law enforcement for investigation. Exs. A[1], B[2]. Notably, such public reporting indicates that these investigations have confirmed that all investigated persons are lawful, naturalized citizens and eligible to vote.  But in all events, federal law and the Constitution do not tolerate subjecting United States citizens to unwarranted burdens—rising to criminal investigation—for the act of casting a ballot. Whether by design or effect, Defendants' conduct threatens to chill the exercise of the franchise by Iowa's newest citizens.

The election is now mere days away.  Preliminary relief is urgently needed to prevent the irreparable harm impacted voters face to their fundamental right to vote.

## FACTUAL BACKGROUND

### I.     The Secretary Announces the Voter Purge Program.

On October 22, 2024—exactly fourteen days before the November 5, 2024 General Election, and while early voting was already underway in Iowa—the Secretary released a statement claiming that his office has a list of more than 2,000 voters he "reasonably suspects" of being ineligible to vote based on lack of citizenship ("Affected Voters"). That statement was accompanied by a directive to county election commissioners to monitor voting by all persons on the list and automatically challenge the eligibility of Affected Voters if they cast a vote. Ex. A. The directive further requires that challenged voters must cast a provisional ballot rather than a normal ballot, which would count only if the voter adequately proves citizenship. *See id.* Challenged voters have six days—seven days this year due to a holiday—to cure their ballots. Exs.

---

[1] Robin Opsahl, *Iowa Secretary of State Says 87 Noncitizens Voted in Elections*, *Iowa Cap. Dispatch* (Oct. 22, 2024) (attached as **Exhibit A**).
[2] Stephen Gruber-Miller, *Iowa Secretary of State Says Dozens of Noncitizens May Have Voted in Past State Elections*, *Des Moines Register* (Oct. 23, 2024) (attached as **Exhibit B**).

A, C[3], D[4]. Accordingly, voters would have until November 12 at noon to provide proof of citizenship to their respective county auditors to have their votes counted. Exs. E[5], F[6].

Regarding his new list of purportedly ineligible voters, the Secretary claims that he compared voter registration lists to Department of Transportation ("DOT") records of persons who, at some point in the past, self-identified as non-citizens. Ex. E. Specifically, the Secretary generated a list of 2,176 registered voters who purportedly self-reported to the DOT that they were not citizens when applying for a driver's license or similar interactions with the Department. *See id.* The Secretary does not specify any time period for the DOT records, meaning self-identification as a non-citizen may have occurred years ago. *Id.* The letter does not indicate that the Secretary has any firsthand or personal knowledge about any of these voters or identify a source of information for their purported ineligibility beyond the DOT records. *See id.* Iowa maintains records of naturalized citizens showing that more than 4,000 Iowans naturalized in 2022 alone, with 3,000–5,000 Iowans naturalizing each year since 2018. Ex. F. This annual figure is nearly double the number of the total Iowa voters on the Secretary's list.

In keeping with these figures, the Secretary's office admits that some of the Affected Voters on the Secretary's list may have become naturalized citizens since self-reporting non-citizenship to the DOT. Ex. B; indeed, his office has freely conceded that "we need clarification on what their citizenship status was when they registered to vote." Ex. C. And the Secretary's directive makes clear that, even crediting the accuracy of the data, just **154** of the **2,174** voters on the list supposedly self-identified as a non-citizen *after* registering to vote. Ex. E. Despite this, the

---

[3] Hannah Fingerhut, *Iowa Finds Several Dozen Instances of Noncitizens Voting in a Past Election*, *Associated Press* (Oct. 23, 2024) (attached as **Exhibit C**).
[4] Declaration of Orcun Selcuk (Oct. 29, 2024) ¶ 17 (attached as **Exhibit D**).
[5] *See* Letter from Office of the Iowa Secretary of State to Commissioners (Oct. 22, 2024) (attached as **Exhibit E**).
[6] *Persons Naturalized in Iowa by Country of Birth: 2022*, *State Libr. Iowa* (last visited Oct. 30, 2024), https://www.iowadatacenter.org/index.php/data-by-source/other/naturalizations (attached as **Exhibit F**).

Secretary dispensed with further investigation and opted for sweeping challenges, voter intimidation, and disenfranchisement.

The Secretary declined to notify Affected Voters on his list. Instead, the Secretary sent parts of his confidential list to all county election commissioners in Iowa, mandating they challenge any voter on the list as ineligible. Invoking the full authority of his office, the Secretary's directive was unequivocal: "under SOS authority under Iowa Code sections 47.1(1) and 47.7(6), ***you are hereby directed to challenge the ballots of any person in the attached list of registered voters who attempt to vote in the 2024 General Election*****.**" Ex. E (emphasis added). According to the Des Moines Register, "Adams County Auditor Becky Bissell, who chairs the Iowa State Association of County Auditors, said county auditors became aware of Pate's concerns only on Tuesday morning [October 22] and were still seeking more information." Ex. B.

The imposition of having to prove citizenship as a registered voter does not end the consequences following from the Secretary's scheme. The Secretary has publicly threatened criminal prosecution, stating: "It is a felony for noncitizens to either vote or register to vote, and we will work with the authorities to ensure that those who break the law are prosecuted to the fullest extent." Ex B. The threat of investigation and possibility of referral to law enforcement is intimidating. Exs. D, G.[7] Indeed, even a ballot challenge based on citizenship can be intimidating and prevent eligible voters from voting. Ex. H.[8] Additionally, according to public reporting, Linn County has, in fact, referred Affected Voters who already voted to law enforcement for investigation. Ex. I.[9] Importantly, those investigations concluded that the voters in question ***are naturalized citizens eligible to vote***, underscoring the factually baseless and ill-conceived nature

---

[7] Declaration of Alan David Gwilliam (Oct. 29, 2024) ¶ 15 (attached as **Exhibit G**).
[8] Declaration of Joe Enriquez Henry (Oct. 29, 2024) ¶ 16 (attached as **Exhibit H**).
[9] Erin Murphy, *3 on List of Possible Illegal Linn County Voters are Eligible, Auditor Miller Says*, *The Gazette* (Oct. 25, 2024) (attached as **Exhibit I**).

of the Secretary's scheme. *Id.*; *see also* Ex. J.[10] The law-enforcement investigations—along with public reporting of the Secretary's threats of criminal prosecution—foster an unacceptable climate of reprisal and intimidation around the act of casting a ballot.

The Secretary's directives to local election officials include a letter and follow-up email to all commissioners instructing them to challenge Affected Voters on Election Day. Exs. E, K.[11] The email required election officials to keep the list confidential: "**IMPORTANT**: Do not release the names or other details publicly." Ex. K. It provided further instructions for all poll workers to follow on Election Day:

> Before the polls open, all PEOs who will be checking in voters should review the enclosed list of registered voters who have self-reported to the Department of Transportation that they are not a citizen are currently registered to vote. **Therefore, you have a duty to challenge the voter under § 49.79 and offer the voter a provisional ballot.** Follow the appropriate procedures for challenging a voter and processing a provisional ballot. While it is not required to complete the challenger statement form as a PEO, you are required to provide the voter with the Statement to Person Casting a Provisional Ballot produced by your e-pollbook software. You should also complete the Non-Citizens Challenge Form provided with this information.

*Id.*  A challenger's statement form was attached. Exs. L,[12] D ¶ 16. Missing from the Secretary's instruction is any direction to notify Affected Voters or take reasonable steps to ascertain the veracity of the Secretary's list.

## II.   The Individual Plaintiffs, Naturalized Citizens, Attempt to Vote Through Early In-Person Voting.

### A.   Dr. Orcun Selcuk.

Plaintiff Orcun Selcuk ("Dr. Selcuk") was born in Turkey and moved to the United States in 2013. Ex. D ¶ 5. Dr. Selcuk became a naturalized United States Citizen on November 6, 2023.

---

[10] Declaration of Joel Miller (Oct. 29, 2024) ¶¶ 5–6 (attached as **Exhibit J**).
[11] Email from Office of Iowa Secretary of State to Commissioners and Staff (Oct. 22, 2024) (attached as **Exhibit K**).
[12] Orcun Selcuk Challenger's Statement (Oct. 23, 2024) (attached as **Exhibit L**).

*Id.* ¶ 7. Dr. Selcuk is an eligible and registered voter residing in Decorah, located in Winneshiek County, Iowa. *Id.* ¶ 2. He has voted three times in the United States; most recently, he cast an in-person absentee ballot on October 22, 2024 in the 2024 General Election. *Id.* ¶¶ 9–13.

On October 26, 2024, Dr. Selcuk received a letter from Defendant Steines, challenging Dr. Selcuk's eligibility to vote based on his citizenship. *Id.* ¶¶ 16–17. Dr. Selcuk stated that the notice "was very confusing" and "[n]o letter or further explanation accompanied the single page notice." *Id.* ¶ 18. The letter noted that Dr. Selcuk has until November 12, 2024 at noon to prove that he is a United States citizen. *Id.* ¶ 17.

### B.     Mr. Alan David Gwilliam.

Alan David Gwilliam ("Mr. Gwilliam") was born in Wales and moved to the United States in 1981. Ex. G ¶ 5. He became a United States citizen on August 16, 2024, and registered to vote shortly thereafter. *Id.* ¶ 8. He is an eligible and registered voter, currently residing in Iowa City, Iowa, which is located in Johnson County, Iowa. *Id.* ¶ 1.

Mr. Gwilliam "was greatly anticipating voting for the first time in this election," but was recently informed that he is on a list of voters in Johnson County who must vote provisionally and prove their citizenship status before having their votes counted. *Id.* ¶¶ 9–11. Mr. Gwilliam fears the consequences these challenges will have, particularly for those who have not received advanced warning like he was. *Id.* ¶ 15. He says these last-minute challenges are "confusing," "intimidating," and a "burden" on his "fundamental right of citizenship [he] gained after years of effort." *Id.*

### C.     Ms. Tingting Zhen.

Tingting Zhen ("Ms. Zhen") moved to the United States in 2018 from China, where she was born. Ex. M.[13] Ms. Zhen is a naturalized U.S. citizen and an eligible and registered voter residing in Ankeny, Iowa, which is in Polk County, Iowa. *Id.* ¶¶ 1–2.

She was especially excited for her eligibility to vote, stating that America "is a country of freedom. That is what voting means to me. Voting means having a voice and it is freedom." *Id.* ¶¶ 10–11. Ms. Zhen registered to vote on September 23, 2024, then learned through news reports that she may be challenged when voting based on her Iowa driving record. *Id.* ¶ 13. Ms. Zhen called the Polk County Auditor on October 30, 2024 to ask whether she was on the Affected Voters list. *Id.* ¶ 14.  She was put on hold, then was informed the Auditor's Office could not tell her and that she should contact the Secretary. *Id.* ¶¶ 14–15. Ms. Zhen called the Secretary's office, which refused to tell her whether she is on the Affected Voters list. *Id.* ¶ 15. She feels "shocked and intimidated," and questions "how, in this country of freedom, can I be identified as a noncitizen when I am a United States citizen?" *Id.* ¶ 16.

### D.     Mr. Michael Brokloff.

Michael Brokloff ("Mr. Brokloff") moved to the United States in 1997 from Canada, where he was born. Ex. N.[14] He is an eligible and registered voter residing in Davenport, Iowa, which is located in Scott County, Iowa. *Id.* ¶ N. He became a naturalized U.S. citizen in 2021 and registered to vote shortly thereafter. *Id.* ¶¶ 3, 8. He tried to vote early in-person in the General Election on October 25, 2024, but was told he "needed to prove [he] was a citizen." *Id.* ¶ 11. Mr. Brokloff was given a provisional ballot and a printout indicating he was being challenged based on citizenship.

---

[13] Declaration of Tingting Zhen (Oct. 30, 2024) (attached as **Exhibit M**).
[14] Declaration of Michael Brokloff (Oct. 30, 2024) (attached as **Exhibit N**).

Ex. O.[15] He brought his passport to the Scott County Auditor's Office on October 28, 2024 and was told his documentation would be reviewed before November 12, 2024, and they would "either reject or accept [his] ballot at that time." *Id.* ¶ 12. Mr. Brokloff is "frustrated" that, as a U.S. citizen (and having already proved that), his "ballot still has to go to this board after the election" and that he could not "cast a regular ballot, and have it be counted." *Id.* ¶ 14.

### E.    The League of United Latin American Citizens of Iowa.

The League of United Latin American Citizens of Iowa ("LULAC") is the state affiliate of the oldest and largest Latino civil rights organization in the United States. Ex. H ¶¶ 2–3. One of LULAC's most prominent organizational purposes is voter engagement. *Id.* ¶ 6. With over 500 members in Iowa, many of whom are recently naturalized citizens who previously obtained driver's licenses while lawful permanent residents, LULAC's members include Affected Voters. *Id.* ¶¶ 13–17. LULAC brings this action on their behalf. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181, 199 (2023); *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Additionally, LULAC brings this action on its own behalf, as it has been directly injured by Defendants' actions. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393 (2024); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, n. 19 (1982)); *see also Nat'l Fed'n of the Blind of Mo. v. Cross*, 184 F.3d 973, 979 (8th Cir. 1999). In preparation for the 2024 General Election, LULAC has spent substantial funds and working hours on its voter-engagement efforts but did so without knowledge of the Secretary's last-minute directive. Ex. H ¶¶ 7–9, 11. Now, LULAC is and will continue to focus its resources on informing its members of the directive and assisting them in navigating the mandated challenges to their

---

[15] *See* Michael Brokloff Statement to Person Casting a Provisional Ballot (Oct. 25, 2024) (attached as **Exhibit O**).

eligibility, when it otherwise would have continued its investment in the "get out the vote" campaign at this crucial time, as well as maintaining its other initiatives. *Id.* ¶¶ 9, 11–12.

## III.    Absent an Injunction, the Secretary's List Will Burden Eligible Voters

The vast majority, if not all, of persons on the Secretary's list who have been investigated to date are *eligible* voters. *See* Exs. J ¶ 5, P, G, H, M, P.[16] The Secretary's directive—hurriedly put together on the eve of a presidential election—thus burdens and risks disenfranchising eligible Iowa voters, purely on the basis of their national origin.

Mr. Joel Miller ("Mr. Miller") has been the County Auditor and Commissioner of Elections for Linn County, Iowa, for over seventeen years. Ex. J ¶ 1. Mr. Miller reviewed a subset of the 150 registrants Linn County registrants on the Secretary's list, determining that fifteen of those individuals voted early in-person or requested a vote-by-mail absentee ballot. *Id.* ¶ 5. He contacted county and federal law enforcement officers who confirmed that *all* fifteen registrants are United States citizens. *Id.* In other words, *all fifteen registrants* on the list who had voted at the time of investigation were eligible to vote and yet would be challenged and forced to vote provisionally in the presidential election.

Other than the Secretary's October 22 directive, Mr. Miller has received no formal guidance from the Secretary's office on how to implement this challenge program on Election Day. *Id.* ¶ 7. He avers that the October 22 directive is confusing because the Secretary's office explained in an August 12, 2024 email that federal law prohibits states from requiring specific, documented proof of U.S. citizenship at the polls. *Id.* ¶ 9. Mr. Miller is frustrated by the lack of clear guidance and the fact that the Secretary's directive was sent just two weeks before the general election, when most poll-worker training and early voting had already begun. *Id.* ¶ 11. He is

---

[16] Robin McClelland, *Some Cerro Gordo County Voters Flagged by Pate are Citizens After All*, *Globe Gazette* (Oct. 30, 2024) (attached as **Exhibit P**).

especially concerned about legal consequences that could arise from failing to follow the Secretary's mandates. *Id.* ¶ 12.

## ARGUMENT

Plaintiffs are entitled preliminary relief barring Defendants from continuing to implement their unlawful scheme to deny and burden the voting rights of naturalized citizens. A TRO and preliminary injunction should be granted where, as here, the moving party establishes: (1) a likelihood of success on the merits; (2) a likely threat of irreparable harm to the movant; (3) the harm alleged by the movant outweighs any harm to the non-moving party; and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, 115 F.4th 889, 893 (8th Cir. 2024); *see Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022) (applying standard to a TRO).

## I.     Plaintiffs Are Likely to Succeed on the Merits.

### A.     Plaintiffs Are Likely to Succeed on the Merits of Their Claim That Defendants' Conduct Violates the Equal Protection Clause.

The Secretary's scheme violates the Equal Protection Clause by discriminating against persons based on a suspect classification. "All persons born or naturalized in the United States . . . are citizens." U.S. Const., 14th Am., § 1. "Under our Constitution, a naturalized citizen stands on an equal footing with the native citizens in all respects, save that of eligibility to the Presidency." *Luria v. United States*, 231 U.S. 9, 22 (1913). "A citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972); *see also Bush v. Gore*, 531 U.S. 98, 104–05 (2000) ("Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."). Discrimination based on naturalized

citizenship and national origin is presumptively unconstitutional and subject to strict scrutiny. *See Graham v. Richardson*, 403 U.S. 365, 371–72 (1975).

The Secretary's scheme discriminates against naturalized citizens by creating a process that, by design, burdens the right to vote for many recently naturalized citizens, while imposing no burden at all on U.S.-born citizens. Voters who are similarly situated—all are citizens who attested to that fact when they registered to vote—are treated differently, with Iowa citizens who were not born in the United States, and only that class of citizens, subjected to voter challenges requiring them to prove their citizenship at the polls. The program thus creates a suspect classification that discriminates against naturalized citizens and treats persons differently with respect to a fundamental right based on that classification. Because naturalized citizens are, by definition, not born in the United States, the classification is *de facto* based on the Affected Voter's national origin.

As a result, the Secretary's scheme is subject to strict scrutiny, which it cannot survive. *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (strict scrutiny applies "when a statute classifies by race, alienage, or national origin"). When strict scrutiny applies, state action will be upheld as constitutional "only if it is narrowly drawn to serve a compelling interest." *Libertarian Party of Ark. v. Thurston*, 962 F.3d 390, 398 (8th Cir. 2020) (internal quotation omitted). The state bears the burden of making this demonstration. *Moore v. Martin*, 854 F.3d 1021, 1025–26 (8th Cir. 2017).

The Secretary's list is not narrowly tailored to further compelling governmental interests. *See Grutter v. Bollinger*, 539 U.S. 306, 326 (2003). The list—which is based solely on the DOT records and not any firsthand personal knowledge—is vastly over-inclusive and targets anyone who has registered to vote after purportedly identifying as a non-citizen at some point in the past.

Indeed, the Secretary recognizes that only 154 of the 2,174 Affected Voters self-identified as a non-citizen *after* registering to vote. Ex. E. The scheme fails to make any allowance for the thousands of Iowans who naturalize every year. *See* Ex. E. And to date, the vast majority, if not all, of Affected Voters who have been investigated have been determined to be citizens and *eligible voters*. *See* Exs. J ¶ 5; G, H, M, P.  Even if the Secretary had specific reasons to question a voter's eligibility, a narrowly tailored approach would involve an individualized inquiry to investigate the facts and attempt to corroborate the DOT records. Here, by contrast, a simple comparison of voter registration dates to the dates these same individuals self-reported to the DOT would have more narrowly tailored the scheme. Additional far less-restrictive means are available, including notifying the Affected Voters or publicly disclosing the list weeks (or even months) before the election.

Federal courts consistently strike down similar laws that burden the rights of naturalized citizens as the Secretary has done here. A federal court struck down an Ohio law that required naturalized citizens—but not U.S.-born citizens—to provide proof of citizenship, on grounds that it violated the fundamental right to vote naturalized citizens in Ohio. *See Boustani v. Blackwell*, 460 F. Supp. 2d 822, 827 (N.D. Ohio 2006). A Georgia court held that a state law that barred naturalized citizens from becoming state troopers is unlawful. *Fernandez v. Georgia*, 716 F. Supp. 1475, 1479 (M.D. Ga. 1989). And Florida, Arizona, and Texas have similarly had to abandon programs that systematically target naturalized citizens. *See United States v. Florida*, 870 F. Supp. 2d 1346, 1350 (N.D. Fla. 2012); *Mi Familia Vota v. Fontes*, 719 F. Supp. 3d 929, 1018–19 (D. Ariz. 2024); *Tex. League of United Latin Am. Citizens v. Whitley*, No. SA-19-CA-074-FB, 2019 WL 7938511, at *1 (W.D. Tex. Feb. 27, 2019) (attached as **Exhibit R**). The same result should be reached here.

**B.      The Voter Purge Program Places Impermissible Burdens on the Affected Voter's Fundamental Right to Vote.**

The Secretary's directive also unlawfully burdens Plaintiffs' fundamental right to vote protected by the First and Fourteenth Amendments. The Supreme Court has long recognized the right to vote as a constitutionally protected fundamental right. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966). Under the *Anderson-Burdick* sliding-scale framework for right-to-vote challenges, courts "weigh 'the character and magnitude of the asserted injury to the rights protected by the First Amendment ... that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule.'" *Independence-Alliance Party of Minn. v. Simon*, 87 F.4th 872, 876 (8th Cir. 2023) (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)). Strict scrutiny applies to laws and practices that constitute a "severe burden" on Plaintiffs' right to vote. *Id.*

The Secretary's directive constitutes a severe burden on Plaintiffs' right to vote. At best, it requires Affected Voters to cast a provisional ballot and prove—without advance notice—their citizenship or else face disenfranchisement in the 2024 General Election. *See Boustani*, 460 F. Supp. 2d at 827 (finding proof of citizenship law "imposes an undue burden on the fundamental right to vote of naturalized citizens in Ohio"). At worst, Defendants are subjecting Affected Voters to intimidation, criminal investigation, and intrusive scrutiny to exercise the right to vote.

Regardless, the Secretary's directive cannot survive any level of scrutiny. Even for less-than-severe burdens, *Anderson-Burdick* is not a "rational basis test" but rather a "means-end fit framework" that requires the state to set forth more than mere speculative concerns to justify voting restrictions. *Soltysik v. Padilla*, 910 F.3d 438, 449 (9th Cir. 2018). Even a "minimal" burden under *Anderson-Burdick* "must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Ohio State Conf. of NAACP v. Husted*, 768 F.3d 524, 538 (6th Cir. 2014),

*vacated on other grounds*, 2014 WL 10384647 (6th Cir. Oct. 1, 2014) (quoting *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008)). The Secretary must "articulate specific, rather than abstract state interests, and explain why the particular restriction imposed is actually necessary, meaning it actually addresses the interest put forth." *Id.* at 545. The Secretary has no state interest in—mere days away from a presidential election—burdening and disenfranchising large swaths of registered voters absent definitive proof that any of those voters are ineligible. And indeed, all available evidence suggests that at least a sizeable percentage of individuals on the list are naturalized citizens and eligible voters.

### C.       Plaintiffs Are Likely to Succeed on the Merits of Their Claim That the Purge Program Violates Procedural Due Process.

The Secretary's scheme also violates the right to procedural due process. Procedural due process requires both notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Garcia v. Fed. Nat'l Morg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965); *see also Schmidt v. Des Moines Public Schools*, 655 F.3d 811, 817 (8th Cir. 2011). Plaintiffs establish a violation of procedural due process by: (1) setting forth the liberty or property interest at stake; and (2) proving that the defendant deprived them of such an interest without due process of law. *Schmidt*, 655 F.3d at 817. Due process is "a flexible concept" tailored to the interests and circumstances at stake. *Id.*

As to the first prong, it is "[b]eyond debate" that "the right to vote is a constitutionally protected liberty interest." *Self Advocacy Solutions N.D. v. Jaeger*, 464 F. Supp. 3d 1039, 1052 (D.N.D. 2020); *see also Doe v. Rowe*, 156 F. Supp. 2d 35, 47 (D. Maine 2001) ("courts have recognized that the fundamental nature of the right to vote gives rise to a liberty interest entitled to due process protection.") (citing cases).

14

As to the second prong, the Secretary's directive fails principally because Affected Voters are provided no pre-deprivation notice. *See United States v. James Daniel Good Real Property*, 510 U.S. 43, 53 (1993) (noting "the general rule requiring predeprivation notice and hearing" can be set aside "only in extraordinary situations") (internal quotation marks omitted). Here, the Secretary has specifically instructed county election commissioners to keep the identity of the Affected Voters secret until election day, while challenging Affected Voters only when they vote. Indeed, many of the Affected Voters will have no idea they are on the list—or even that such a list exists—until the moment they approach the ballot box. Absent any kind of notice, these voters have no meaningful opportunity for due process prior to having their fundamental right to vote being burdened by a cumbersome (and illegal) verification process via an arbitrary challenge to their ballot. In addition, assuming they are even aware of their status, due to the late hour of the Secretary's October 22 directive, the Affected Voters have no opportunity for any kind of process or hearing to challenge their placement on the list. The lack of notice is made all the worse by Ms. Zeng's experience of having Defendants refuse to disclose whether she is on the Secretary's list. *See* Ex. M ¶¶14-15. And for reasons explained *supra*, there is an enormous "risk of an erroneous deprivation" because the Secretary's list is inaccurate, and therefore little governmental interest in the directive. *Padda v. Becerra*, 37 F.4th 1376, 1382 (8th Cir. 2022) (internal quotation marks omitted). By contrast, Plaintiffs' private interest "implicates an individual's right to vote and is therefore entitled to substantial weight." *New Ga. Project v. Raffensperger*, 484 F. Supp. 3d 1265, 1292 (N.D. Ga. 2020).

## II.   Plaintiffs Have Suffered and Will Continue to Suffer Irreparable Harm as a Result of the Interference with their Right to Vote.

As a preliminary matter, Plaintiffs do not need to provide a showing of irreparable harm in this instance as they normally would, because the NVRA explicitly provides for injunctive relief.

"When an injunction is expressly authorized by statute and the statutory conditions are satisfied, the movant need not establish specific irreparable injury to obtain a preliminary injunction." *Burlington N. R.R. Co. v. Bair*, 957 F.2d 599, 601 (8th Cir. 1992) ("It is a well-established rule that where Congress expressly provides for injunctive relief to prevent violations of a statute, a plaintiff does not need to demonstrate irreparable harm to secure an injunction.").

Regardless, Plaintiffs easily establish irreparable harm. When considering the irreparable harm analysis, courts usually look at either of two factors: 1) whether the harm is "certain, great, actual, and not theoretical," *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003), or 2) whether the harm can "be undone through monetary remedies," *Ne. Fla. Chapter of Ass'n of Gen. Contractors v. Jacksonville*, 896 F.2d 1283, 1295 (11th Cir. 1990).

Regarding the first factor, the right to vote is fundamental and the Secretary's purge program irreparably harms Plaintiffs by infringing on that right. *See generally McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434, 1440-41 (2014) ("There is no right more basic in our democracy than the right to participate in electing our political leaders."). When voting rights "are threatened or impaired, irreparable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *see also, e.g.*, *id.* ("A restriction on the fundamental right to vote therefore constitutes irreparable injury."); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("Courts routinely deem restrictions on fundamental voting rights irreparable injury."); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986) ("The registration applicants in this case would certainly suffer irreparable harm if their right to vote were impinged upon."); *Montano v. Suffolk Cty. Legislature*, 268 F. Supp. 2d 243, 260 (E.D.N.Y. 2003) ("An abridgement or dilution of the right to vote constitutes irreparable harm.").

For the second factor, the harm is irreparable also because the injury—being prevented from voting—is not compensable. Absent injunctive relief, the Affected Voters will miss their opportunity to vote freely in upcoming elections, and there is no way to adequately compensate them after the fact. *See, e.g.*, *League of Women Voters of N.C.*, 769 F.3d at 247 ("[O]nce the election occurs, there can be no do-over and no redress."); *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, No. CV 81-03876, 2016 WL 6584915, at *17 (D.N.J. Nov. 5, 2016) (attached as **Exhibit Q**) ("[C]ourts have consistently found that a 'person who is denied the right to vote suffers irreparable injury'" because "infringement on the right to vote 'cannot be alleviated after the election.'"); *Hoblock v. Albany Cty. Bd. of Elections*, 341 F. Supp. 2d 169, 176 (N.D.N.Y. 2004) ("Money cannot compensate these Plaintiffs for the harm of being shut out of the political process, and therefore they have met the requirement of showing irreparable harm."); *Dillard v. Crenshaw Cty.*, 640 F. Supp. 1347, 1363 (M.D. Ala. 1986) ("Given the fundamental nature of the right to vote, monetary remedies would obviously be inadequate in this case; it is simply not possible to pay someone for having been denied a right of this importance."). Thus, given that the Secretary's directive threatens Plaintiffs' fundamental right to vote ahead of a fast-approaching election, irreparable injury is satisfied.

## III.   The Balance of Equities Tips Sharply in Plaintiffs' Favor.

For the relative harms analysis, a court "balance[s] the irreparable harms we have identified against the harm to defendants if the preliminary injunction is granted." *Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002). The Secretary's purge program creates the very real risk that Plaintiffs and other eligible voters will be wrongfully purged from the voting rolls without sufficient time for reinstatement. In other words, absent an injunction, Plaintiffs "will likely suffer an irreparable loss of their constitutional rights." *Gilliam v. Foster*, 63 F.3d 287, 292 (4th Cir. 1995); *see also Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) ("[T]he balance of the

equities favor prevent[ing] the violation of a party's constitutional rights.") (internal quotation marks omitted); *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined."). By contrast, any potential harm to Defendants will be minimal and cannot compare to the harm of deprivation of constitutional rights. *See generally Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) (affirming district court finding that "a potential deprivation of [plaintiff's] constitutional right" outflanked State's interests even when the court determined the latter were legitimate). Defendants face no harm in an injunction here; Defendants remain entitled to pursue list maintenance activities in the normal course, just not activities that threaten to disenfranchise and intimidate thousands of voters days before a presidential election. For these reasons, the balance of equities favor granting injunctive relief in favor of Plaintiffs.

## IV.    The Preliminary Injunction Will Serve the Public Interest.

Plaintiffs are entitled to a preliminary injunction when, "if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). There is an extraordinary public interest in protecting the right to vote and ensuring as many eligible voters are given the opportunity to exercise that right. *See, e.g.*, *Wesberry*, 376 U.S. at 17; *Obama for Am.*, 697 F.3d 423 ("[T]he public has a strong interest in exercising the fundamental political right to vote . . . The public interest therefore favors permitting as many qualified voters to vote as possible." (internal citations omitted)); *League of Women Voters of N.C.*, 769 F.3d at 247 (same); *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (same). In particular, "[t]here is a great public interest in not denying voters the opportunity to vote, in violation of the procedures of the NVRA…." *A. Philip Randolph Inst. v. Husted*, 907 F.3d 913, 922 (6th Cir. 2018); *see also U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 388 (6th Cir. 2008) (noting "the risk of

actual voter fraud is miniscule when compared with the concrete risk" of disenfranchisement).

Further, "the public has an interest in ensuring federal laws are followed, particularly when those

interests relate to voting rights." *League of Women Voters of Mo. v. Ashcroft*, 336 F. Supp. 3d 998,

1006 (W.D. Mo. 2018); *see also Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) ("[I]t is

always in the public interest to prevent the violation of a party's constitutional rights. . . While the

public has an interest in the will of the voters being carried out . . . the public has a more profound

and long-term interest in upholding an individual's constitutional rights." (internal quotations

omitted)); *League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1167 (N.D. Fla.

2012) ("The vindication of constitutional rights and the enforcement of a federal statute serve the

public interest almost by definition."). Plaintiffs cannot imagine anything more centrally in the

public interest than ensuring that registered, eligible voters are able to freely exercise their

constitutional right to vote in the upcoming Federal elections.

By contrast, "[t]he public has no interest in enforcing unconstitutional laws" or actions.

*Firearms Policy Coalition Second Amendment Defense Committee v. Harris*, 192 F. Supp. 3d

1110, 1129 (E.D. Cal. 2016); *see also D.M. by Bao Xiong v. Minn. State High Sch. League*, 917

F.3d 994, 1004 (8th Cir. 2019) ("[I]t is always in the public interest to prevent the violation of a

party's constitutional rights.") (quotation omitted). Defendants', Plaintiffs', and the public's

interests should all be the same—ensuring eligible voters are able to cast ballots in the upcoming

presidential election.

Finally, "the primary function of a preliminary injunction is to preserve the status quo…"

*Kansas City Southern Transport Co., Inc. v. Teamsters Local Union #41*, 126 F.3d 1059, 1066-77

(8th Cir. 1997) (internal quotation marks omitted); *see also Bear v. Kautzky*, 305 F.3d 802, 805

(8th Cir. 2002) (noting the public interest in "maintaining the status quo"). It would violate the

status quo—days out from a presidential election and after early voting has already started in Iowa—to permit the Secretary and county clerks to challenge and potentially disenfranchise registered voters who have consistently voted in previous elections (and in some cases voted in this presidential election). The Secretary had months, or years, to conduct the list maintenance contemplated here, and he elected not to. His directive, issued on the eve of a presidential election, has caused chaos, confusion, and fear of his own making. It is in the public interest to preserve the status quo here and let these registered voters vote as they have for years.

Given the Secretary's directive and public statements from his office, affirmative remedial action is necessary to minimize the risk that Affected Voters will be subjected to this unlawful scheme or have the exercise of the right to vote chilled. Accordingly, Plaintiffs request targeted relief to ensure that county election officials and—to the extent possible—the public know that the Secretary's directive is rescinded.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the entry of a temporary restraining order and preliminary injunction.

Dated: October 31, 2024

/s/ *Jesse Linebaugh*

Jesse Linebaugh (AT0004744)
Email: jesse.linebaugh@faegredrinker.com
Matthew J. Scott (AT0014441)
Email: matthew.scott@faegredrinker.com
Joe R. Quinn (AT0015363)
Email:  joe.quinn@faegredrinker.com
Emily R. O'Brien** (AT0015757)
Email: emily.obrien@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, IA  50309
Telephone:  +1 515 248 9000

Craig S. Coleman*
Email: craig.coleman@faegredrinker.com
Jeffrey P. Justman*
Email: jeff.justman@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Telephone: +1 612 766 7000

Rita Bettis Austen (AT0011558)
Email: rita.bettis@aclu-ia.org
Thomas D. Story (AT0013130)
Email: thomas.story@aclu-ia.org
AMERICAN CIVIL LIBERTIES UNION OF
IOWA FOUNDATION
505 Fifth Avenue, Suite 808
Des Moines, IA 50309
Telephone: +1 515 243 3988

Ari Savitzky*
Email: asavitzky@aclu.org
Jonathan Topaz*
Email: jtopaz@aclu.org
Ming Cheung*
Email: mcheung@aclu.org
Sophia Lin Lakin*
Email: slakin@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION, INC.
125 Broad Street, 18th Floor
New York, NY 10004

Telephone: +1 212 549 2500

Patricia Yan*
Email: pyan@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION, INC.
915 15th Street NW
Washington, DC 20005
Telephone: +1 202 457 0800

*Pro Hac Vice Application Forthcoming
**Application for Admission Forthcoming

Attorneys for Plaintiffs Orcun Selcuk, Alan David
Gwilliam, Tingting Zhen, Michael Brokloff, and the
League of United Latin American Citizens of Iowa

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true copy of the foregoing document was filed electronically through the Court's CM/ECF filing system on October 31, 2024, which will send notice to all counsel of record.

*/s/ Jesse Linebaugh*

**INDEX OF EXHIBITS**

| Exhibit | Description |
| --- | --- |
| | |
| A | October 22, 2024 – Robin Opsahl, *Iowa Secretary of State Says 87 Noncitizens Voted in Elections*, *Iowa Cap. Dispatch* (Oct. 22, 2024), https://iowacapitaldispatch.com/2024/10/22/iowa-secretary-of-state-says-87-noncitizens-voted-in-elections/ |
| | |
| B | October 23, 2024 – Stephen Gruber-Miller, *Iowa Secretary of State Says Dozens of Noncitizens May Have Voted in Past State Elections*, *Des Moines Register* (Oct. 23, 2024), https://www.desmoinesregister.com/story/news/politics/elections/2024/10/23/iowa-secretary-of-state-paul-pate-says-noncitizens-may-have-voted-in-elections/75797141007/ |
| | |
| C | October 23, 2024 – Hannah Fingerhut, *Iowa Finds Several Dozen Instances of Noncitizens Voting in a Past Election*, *Associated Press* (Oct. 23, 2024), https://apnews.com/article/noncitizen-voting-iowa-622235f2771a372801a5e3c4d1a86343 |
| | |
| D | October 29, 2024 – Declaration of Orcun Selcuk in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction |
| | |
| E | October 22, 2024 – Letter from Office of the Iowa Secretary of State to Commissioners (Oct. 22, 2024) |
| | |
| F | October 30, 2024 – *Persons Naturalized in Iowa by Country of Birth: 2022*, *State Libr. Iowa* (last visited Oct. 30, 2024), https://www.iowadatacenter.org/index.php/data-by-source/other/naturalizations |
| | |
| G | October 29, 2024 – Declaration of Alan David Gwilliam in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction |
| | |
| H | October 29, 2024 – Declaration of Joe Enriquez Henry in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction |
| | |
| I | October 25, 2024 – Erin Murphy, *3 on List of Possible Illegal Linn County Voters are Eligible, Auditor Miller Says*, *The Gazette* (Oct. 25, 2024), https://www.thegazette.com/campaigns-elections/3-on-list-of-possible-illegal-linn-county-voters-are-eligible-auditor-miller-says/ |
| | |
| J | October 29, 2024 – Declaration of Joel Miller (Oct. 29, 2024) |
| | |
| K | October 22, 2024 – Email from Office of the Iowa Secretary of State to Commissioners and Staff (Oct. 22, 2024) |
| | |

| L | October 23, 2024 – Orcun Selcuk Challenger's Statement (Oct. 23, 2024) |
|---|---|
| | |
| M | October 30, 2024 – Declaration of Tingting Zhen (Oct. 30, 2024) |
| | |
| N | October 30, 2024 – Declaration of Michael Brokloff (Oct. 30, 2024) |
| | |
| O | October 25, 2024 – Michael Brokloff Statement to Person Casting a Provisional Ballot (Oct. 25, 2024) |
| | |
| P | October 30, 2024 –  Robin McClelland, *Some Cerro Gordo County Voters Flagged by Pate are Citizens After All*, *Globe Gazette* (Oct. 30, 2024), https://globegazette.com/news/local/govt-and-politics/mason-city-cerro-gordo-noncitizens-voter-rolls-flagged-pate-wedmore-duax/article_44928a50-961c-11ef-a006-c3157b1a3ffc.html |
| | |
| Q | November 5, 2016 – *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, No. CV 81-03876, 2016 WL 6584915 (D.N.J. Nov. 5, 2016) (unpublished opinion) |
| | |
| R | February 27, 2019 – *Tex. League of United Latin Am. Citizens v. Whitley*, No. SA-19-CA-074-FB, 2019 WL 7938511 (W.D. Tex. Feb. 27, 2019) (unpublished opinion) |
| | |
| S | October 31, 2024 – Press Release, Attorney General Bird Statement on LULAC Suing State for Upholding Election Integrity, Iowa Dep't of Just. (Oct. 31, 2024), https://www.iowaattorneygeneral.gov/newsroom/attorney-general-bird-statement-on-lulac-suing-state-for-upholding-election-integrity |
| | |