## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

|  |  |
|---|---|
| ORCUN SELCUK; ALAN DAVID GWILLIAM; TINGTING ZHEN; MICHAEL BROKLOFF; and THE LEAGUE OF UNITED LATIN AMERICAN CITIZENS OF IOWA, on behalf of itself and its members,<br><br>    Plaintiffs,<br><br>  v.<br><br>PAUL D. PATE, in his official capacity as the Iowa Secretary of State; BENJAMIN D. STEINES, in his official capacity as the Winneshiek County Auditor and Winneshiek County Commissioner of Elections; JAMIE FITZGERALD, in his official capacity as the Polk County Auditor and Polk County Commissioner of Elections; MELVYN HOUSER, in his official capacity as the Pottawattamie County Auditor and Pottawattamie County Commissioner of Elections; and ERIN SHANE, in her official capacity as the acting Johnson County Auditor and acting Johnson County Commissioner of Elections,<br><br>    Defendants. | Case No. 4:24-cv-00390 |

### DECLARATION OF MATTHEW J. SCOTT IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

I, Matthew J. Scott, being first fully sworn upon oath, allege and state as follows:

1.  I am an attorney at the law firm of Faegre Drinker Biddle & Reath LLP in Des Moines, Iowa and am one of the attorneys representing Orcun Selcuk, Alan David Gwilliam, Tingting Zhen, Michael Brokloff, and the League of United Latin American Citizens of Iowa (collectively, "Plaintiffs") in connection with the above referenced case. I make this Declaration

in support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. This declaration is made on my personal knowledge and belief.

2.      Attached as **Exhibit A** is a true and accurate copy of an October 22, 2024 news article published on the *Iowa Capital Dispatch* website, *available at* https://iowacapitaldispatch.com/2024/10/22/iowa-secretary-of-state-says-87-noncitizens-voted-in-elections/ (last accessed October 31, 2024).

3.      Attached as **Exhibit B** is a true and accurate copy of an October 23, 2024 news article published on the *Des Moines Register* website, *available at* https://www.desmoinesregister.com/story/news/politics/elections/2024/10/23/iowa-secretary-of-state-paul-pate-says-noncitizens-may-have-voted-in-elections/75797141007/ (last accessed October 31, 2024).

4.      Attached as **Exhibit C** is a true and accurate copy of an October 23, 2024 news article published on the *Associated Press* website, *available at* https://apnews.com/article/noncitizen-voting-iowa-622235f2771a372801a5e3c4d1a86343 (last accessed October 31, 2024).

5.      Attached as **Exhibit D** is a true and accurate copy of an October 29, 2024 Declaration of Orcun Selcuk in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.

6.      Attached as **Exhibit E** is a true and accurate copy of an October 22, 2024 letter from the Office of the Iowa Secretary of State to Commissioners.

7.      Attached as **Exhibit F** is a true and accurate copy of the State Library of Iowa State Data Center's "Persons Naturalized in Iowa by Country of Birth: 2022" website page, *available at*

https://www.iowadatacenter.org/index.php/data-by-source/other/naturalizations    (last    accessed October 31, 2024).

8.    Attached as **Exhibit G** is a true and accurate copy of an October 29, 2024 Declaration of Alan David Gwilliam in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.

9.    Attached as **Exhibit H** is a true and accurate copy of an October 29, 2024 Declaration of Joe Enriquez Henry in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.

10.    Attached as **Exhibit I** is a true and accurate copy of an October 25, 2024 news article published on *The Gazette* website, *available at* https://www.thegazette.com/campaigns-elections/3-on-list-of-possible-illegal-linn-county-voters-are-eligible-auditor-miller-says/    (last accessed October 31, 2024).

11.    Attached as **Exhibit J** is a true and accurate copy of an October 29, 2024 Declaration of Joel Miller in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.

12.    Attached as **Exhibit K** is a true and accurate copy of screenshots from an October 22, 2024 email sent from the Office of the Iowa Secretary of State to Commissioners and Staff.

13.    Attached as **Exhibit L** is a true and accurate copy of Plaintiff Orcun Selcuk's Challenger's Statement, dated October 23, 2024.

14.    Attached as **Exhibit M** is a true and accurate copy of an October 30, 2024 Declaration of Tingting Zhen in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.

15.     Attached as **Exhibit N** is a true and accurate copy of an October 30, 2024 Declaration of Michael Brokloff in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.

16.     Attached as **Exhibit O** is a true and accurate copy of an October 25, 2024 Statement to Person Casting a Provisional Ballot given to Plaintiff Michael Brokloff.

17.     Attached as **Exhibit P** is a true and accurate copy of an October 30, 2024 news article from the *Globe Gazette* website, *available at* https://globegazette.com/news/local/govt-and-politics/mason-city-cerro-gordo-noncitizens-voter-rolls-flagged-pate-wedmore-duax/article_44928a50-961c-11ef-a006-c3157b1a3ffc.html (last accessed October 31, 2024).

18.     Attached as **Exhibit Q** is a true and accurate copy of the unpublished opinion in *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, No. CV 81–03876, 2016 WL 6584915 (D.N.J. Nov. 5, 2016).

19.     Attached as **Exhibit R** is a true and accurate copy of the unpublished opinion in *Tex. League of United Latin Am. Citizens v. Whitley*, No. SA-19-CA-07-FB, 2019 WL 7938511 (W.D. Tex. Feb. 27, 2019).

20.     Attached as **Exhibit S** is a true and accurate copy of an October 31, 2024 press release titled "Attorney General Bird Statement on LULAC Suing State for Upholding Election Integrity" located on the Iowa Department of Justice website, available at https://www.iowaattorneygeneral.gov/newsroom/attorney-general-bird-statement-on-lulac-suing-state-for-upholding-election-integrity (last accessed October 31, 2024).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 31, 2024 in Des Moines, Iowa.

*/s/ Matthew J. Scott*

Dated: October 31, 2024

/s/ *Matthew J. Scott*

Jesse Linebaugh (AT0004744)
Email: jesse.linebaugh@faegredrinker.com
Matthew J. Scott (AT0014441)
Email: matthew.scott@faegredrinker.com
Joe R. Quinn (AT0015363)
Email: joe.quinn@faegredrinker.com
Emily R. O'Brien** (AT0015757)
Email: emily.obrien@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, IA 50309
Telephone: +1 515 248 9000

Craig S. Coleman*
Email: craig.coleman@faegredrinker.com
Jeffrey P. Justman*
Email: jeff.justman@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Telephone: +1 612 766 7000

Rita Bettis Austen (AT0011558)
Email: rita.bettis@aclu-ia.org
Thomas D. Story (AT0013130)
Email: thomas.story@aclu-ia.org
AMERICAN CIVIL LIBERTIES UNION OF
IOWA FOUNDATION
505 Fifth Avenue, Suite 808
Des Moines, IA 50309
Telephone: +1 515 243 3988

Ari Savitzky*
Email: asavitzky@aclu.org
Jonathan Topaz*
Email: jtopaz@aclu.org
Ming Cheung*
Email: mcheung@aclu.org
Sophia Lin Lakin*
Email: slakin@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION, INC.
125 Broad Street, 18th Floor
New York, NY 10004

Telephone: +1 212 549 2500

Patricia Yan*
Email: pyan@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION, INC.
915 15th Street NW
Washington, DC 20005
Telephone: +1 202 457 0800

*Pro Hac Vice Application Forthcoming
**Application for Admission Forthcoming

Attorneys for Plaintiffs Orcun Selcuk, Alan David
Gwilliam, Tingting Zhen, Michael Brokloff, and the
League of United Latin American Citizens of Iowa

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true copy of the foregoing document was filed electronically through the Court's CM/ECF filing system on October 31, 2024, which will send notice to all counsel of record.

*/s/ Matthew J. Scott*

# Exhibit A

Election 2024
Government + Politics

# Iowa Secretary of State says 87 noncitizens voted in elections

By: Robin Opsahl - October 22, 2024 3:19 pm



Iowa Secretary of State Paul Pate talks to reporters about election security on Oct. 3, 2024 at the State Capitol. (Photo by Kathie Obradovich/Iowa Capital Dispatch)

The Iowa Secretary of State's office says it has found 87 noncitizens who voted in the state's elections, as well as 67 noncitizens who have registered to vote but have not yet cast a ballot.

Secretary of State Paul Pate reported Tuesday the office found these instances through an auditing process of voter registration lists. The people who are not citizens and participated in the state's election process "self-reported" as non-citizens after voting or registering to vote, Pate said in a news release.

Noncitizens voting or registering to vote is a felony charge in Iowa as a class D felony. First-degree election misconduct charges can be punishable by up to five years in prison and fines of $750 to $7,500.

Pate said the office is working with authorities to "ensure that those who break the law are prosecuted to the fullest extent." While the identities of the individuals who participated in elections illegally were not publicly released, Pate said their names were given to the Iowa Attorney General's Office and the Iowa Department of Public Safety for potential prosecution.

In September, Iowa Attorney General Brenna Bird, a Republican, charged a 42-year-old Marshalltown resident with allegedly voting in a July special election for the Marshalltown City Council. The man was a legal resident of the U.S. but not a citizen.

Bird said in a statement to the Iowa Capital Dispatch that the AG's office was committed to ensuring "only legal votes are counted and eligible voters are registered."

"My office is committed to upholding election integrity and takes seriously all cases of election misconduct," Bird said. "Especially as Iowans head to the polls, we must ensure that no Iowan's vote is canceled out by someone else's illegal vote."

The Secretary of State's office also said another 2,022 people self-reported that they did not hold U.S. citizenship, who went on to vote or register to vote. Ashley Hunt Esquivel, communications director for the office, said these are people who identified themselves as noncitizens to the Iowa Department of Transportation through processes like obtaining or renewing a driver's license who later registered to vote.

While this group of individuals could also be subject to felony charges if they are not U.S. citizens, there may be individuals in this category who have been naturalized as U.S. citizens since reporting their status to the Iowa DOT, and legally eligible to vote, Esquivel said.

County auditors will receive a list from the Secretary of State's office of the 2,022 individuals who are noncitizens or potentially noncitizens, she said, and voting precincts will receive lists of potential noncitizens in their precincts. Poll workers are supposed to then challenge these ballots if the person comes in to vote, Esquivel said, at which point the person will be able to cast a provisional ballot.

People whose voter qualifications have been challenged, as well as people who cannot prove on Election Day they are qualified to vote, have the ability to cast provisional ballots.

Voters who cast provisional ballots can provide evidence proving they are eligible to vote to precinct election officials or their local county auditor's office within a timeframe specified on the provisional ballot envelope, according to the Secretary of State's website. The absentee and special voters' precinct board will review voters' registration record and evidence provided, and decide whether the ballot can be counted.

"From there, they have six days to cure that ballot, which means they need to provide some sort of proof of their citizenship to the absentee board, and then if they can do that, then their vote will still be counted," Esquivel said. "So the idea here is that we can make sure that anyone who is eligible to vote is still able to do that."

If a person's ballot is rejected, the individual will receive a letter explaining the decision.

According to the release, Pate said the office has run into "roadblocks" with the federal government, pointing to lawsuits in other states over removing noncitizens from voter rolls too close to the election. The U.S. Department of Justice filed a lawsuit against Virginia earlier in October for removing voters under an executive order by Gov. Glenn Youngkin within the 90-day "quiet period" required under the federal National Voter Registration Act. The lawsuit also states that some eligible voters were wrongfully labeled as noncitizens and had their voter registration canceled.

No one has been removed from Iowa's voter rolls in this process, Esquivel said. She also said that the office is seeking clarification for what processes are available to taking further action on noncitizens participating in elections or being registered to vote, but that these efforts may not begin until after the 2024 general election.

Pate said he plans to work on both the state and federal level to ensure noncitizen voting can be more easily identified and prevented in the future.

"We will be working with both our Attorney General and Iowa's Congressional Delegation to ensure the federal government gives us the tools to know with certainty before a noncitizen is able to register and vote in Iowa elections," Pate said. "Instead of identifying noncitizens after they have voted, we will work with the Iowa legislature to strengthen our laws."

Noncitizen voting has been a high-profile issue ahead of the 2024 election, with former President Donald Trump, the GOP presidential nominee and other Republican leaders claiming Democrats are encouraging recent migrants to illegally participate in U.S. elections.

Pate said in an "Iowa Press" interview in September that his office was working to ensure only eligible voters are participating in the state's elections, but also said that the state has not seen major issues with the subject.

"Our role is to make sure only eligible voters vote," Pate said. "Even one, two, five, a hundred — whatever the number might be is not acceptable. So, we'll keep trying to make sure we're protecting and keeping that away. I don't believe in Iowa we have any of those types of massive voter fraud."

Republish

Our stories may be republished online or in print under Creative Commons license CC BY-NC-ND 4.0. We ask that you edit only for style or to shorten, provide proper attribution and link to our website. AP and Getty images may not be republished. Please see our republishing guidelines for use of any other photos and graphics.

# Exhibit B

# Des Moines Register

---

ELECTIONS

# Iowa secretary of state says dozens of noncitizens may have voted in past state elections

 **Stephen Gruber-Miller**
Des Moines Register

Published 5:10 a.m. CT Oct. 23, 2024 | **Updated 4:26 p.m. CT Oct. 23, 2024**

Iowa Secretary of State Paul Pate's office says dozens of people either voted or registered to vote in Iowa in past elections despite being ineligible because they said they were not citizens.

Pate, a Republican, said 87 people reported to the Iowa Department of Transportation that they were not citizens after they had already voted. Another 67 people reported to the DOT that they were not citizens after they had already registered to vote but had not cast a ballot.

Those people self-reported to the Iowa DOT that they were not citizens when they applied for a driver's license or conducted other business with the DOT. The DOT recently sent its list of self-identified noncitizens to the secretary of state's office, which checked the names against Iowa's voter lists, said Ashley Hunt Esquivel, a spokesperson for Pate.

Pate's office has referred those 154 names to the Iowa Attorney General's Office and the Iowa Department of Public Safety "for potential prosecution."

"It is a felony for noncitizens to either vote or register to vote, and we will work with the authorities to ensure that those who break the law are prosecuted to the fullest extent," Pate said in his statement.

First-degree election misconduct, which includes crimes like registration fraud and vote fraud, is a class D felony, punishable by up to five years in prison and a fine of up to $7,500.

Joe Enriquez Henry, political director for the League of United Latin American Citizens of Iowa, said the secretary of state's announcement could create fear among Latino and

immigrant communities in Iowa.

"To me it appears to be politically motivated," he said. "It's going to create a chilling effect among poll workers and those who are new citizens."

Henry said it's possible that some voters who were flagged as noncitizens by the DOT may actually be citizens who didn't understand the question if there was a language barrier when filling out the DOT form.

"We don't know for sure whether they were ineligible because they were undocumented or if they were actual citizens and they didn't understand the question posed to them," Henry said. "We don't know. And that really concerns me."

None of those votes was cast in the 2024 general election, Hunt Esquivel said. Early voting is underway in Iowa, but any absentee ballots that have already been cast are still sealed.

Iowa's voter database goes back to 2000, so it's possible some of the alleged votes by noncitizens could be from then, Hunt Esquivel said, while some could be as recent as the June 2024 primary election.

Hunt Esquivel said she does not have a breakdown of when the votes occurred.

## Pate's office flags 2,000 noncitizens who registered or voted — but they may have become naturalized citizens

Another 2,022 people reported to the DOT that they were not citizens, and then later either registered to vote or cast a ballot, according to Pate's statement.

Those people may have become naturalized citizens before voting or registering to vote, Hunt Esquivel said. That would mean that they did not commit a crime.

Pate said he has instructed county auditors to have their poll workers challenge the ballots of any of the people identified as potential noncitizens if they show up to vote in the 2024 election, which would require them to cast a provisional ballot.

"We do not want to disenfranchise any eligible voters," Hunt Esquivel said. "The provisional ballot allows all of these individuals to cast a ballot."

Provisional ballots need to be reviewed by the county's Absentee Special Voters Precinct board after the election is over. And a voter who casts a provisional ballot in this way will

need to prove their citizenship to the board for it to be counted.

Adams County Auditor Becky Bissell, who chairs the Iowa State Association of County Auditors, said county auditors became aware of Pate's concerns only on Tuesday morning and were still seeking more information.

"We're also still waiting for further direction and guidance from the secretary of state," she said in an email. "In the end, we will comply with the direction Secretary Pate advises us."

Henry said it's common for groups such as the League of Women Voters to sign up people to vote at naturalization ceremonies when they become citizens.

"I really feel that it's highly unlikely that people who are noncitizens would be registering to vote," he said. "And again there's already safeguards in place to determine eligibility."

## Why is the secretary of state making this announcement now?

Asked why the secretary of state's office was sharing this information two weeks before the election, Hunt Esquivel said the office recently received the relevant records from the DOT.

"We are constantly reviewing and auditing our voter registration lists," she said. "We recently received this information from the DOT. Noncitizens should not be voting in Iowa elections, and this information is critical in protecting the integrity of the 2024 election."

Mark Stringer, executive director of the American Civil Liberties Union of Iowa, said the ACLU will be watching any action related to Iowa's voter lists to ensure that voting rights are protected.

"At this time, we need more information about the Secretary of State's audit, and the reliability of the information that was relied on in conducting it," Stringer said in a statement. "We will closely review any action relating to the voter lists for compliance with court orders and federal law to ensure the full protection of voting rights for all eligible voters in Iowa."

## Pate has repeatedly praised the safeguards in Iowa's election system

Pate has repeatedly said Iowa's voting system has a good track record of integrity and that there is not evidence of widespread fraud.

**More:** Iowa election officials test voting machines to ensure accuracy. Here's how they do it:

"I can tell you that I'm very confident that we don't have massive voter fraud of noncitizens voting," he told reporters on Oct. 3. "But again, we don't want even one or two, and we'll do our best to make sure those things don't happen as well."

Asked about the issue on a Sept. 20 episode of "Iowa Press" on Iowa PBS, Pate laid out the steps Iowa takes to prevent noncitizens from voting.

"Well, the law says pretty clearly you have to be a U.S. citizen to vote. Let's start with that," Pate said. "We have voter ID. So, we are establishing a baseline of you have to prove who you are. We also are working with our partners, we work with the court system, there are various partners who help us identify those folks who are here legally but not U.S. citizens."

On the same program, Bissell said Adams County has not had any issues with noncitizens trying to register to vote.

"We have all of the same procedures in place that Secretary Pate was talking about," she said. "And we cross-check with the DOT and other state agencies to make sure that all of the voters that are registered are able and eligible voters."

## Convictions for election misconduct are rare in Iowa

There have been 10 convictions for election misconduct under Iowa law between Jan. 1, 2020, and the beginning of October 2024, according to data provided by Hunt Esquivel.

Election misconduct under Iowa Code Chapter 39A includes offenses such as submitting a false voter registration application, destroying or interfering with a voter's absentee ballot, voting more than once, voting when the person knows they are not allowed to vote, casting a fraudulent ballot, defrauding someone else's vote, intimidating, threatening or coercing a voter, bribing a voter and tampering with voting equipment.

Hunt's data did not specify which offenses the convictions were for.

Attorney General Brenna Bird is prosecuting one alleged case of noncitizen voting. A Marshalltown man who is a legal U.S. resident but not a citizen is accused of registering to vote and illegally voting in a special election for the Marshalltown City Council on June 16.

He has pleaded not guilty.

At the federal level, Kim Phuong Taylor, the wife of a Republican Woodbury County Supervisor, was convicted of 52 counts of voter fraud last fall for illegally filling out ballots

and other forms for members of the Vietnamese community in order to help her husband win election.

*Stephen Gruber-Miller covers the Iowa Statehouse and politics for the Register. He can be reached by email at sgrubermil@registermedia.com or by phone at 515-284-8169. Follow him on Twitter at @sgrubermiller.*

# Exhibit C

—

—

AP SETS THE STANDARD FOR POLITICAL REPORTING.
SUPPORT INDEPENDENT, FACT-BASED JOURNALISM.    **DONATE**

U.S. NEWS

## Iowa finds several dozen instances of noncitizens voting in a past election



FILE - "I voted" stickers are seen in the Polk County Election Office during early voting, Wednesday, Oct. 16, 2024, in Des Moines,    Read More

**BY HANNAH FINGERHUT**
Updated 3:19 PM CDT, October 23, 2024

**Follow live:** Updates from AP's coverage of the [presidential election.](presidential election.)

DES MOINES, Iowa (AP) — Several dozen people who identified themselves as noncitizens voted in a past election or registered to vote despite being ineligible to do so, Iowa's top election official said with just two weeks to go until 2024 ballots will be tallied.

Elections officials compared the state's 2.3 million registered voters to a list of people who self-reported as noncitizens to the Iowa Department of Transportation, according to Ashley Hunt Esquivel, spokesperson for Secretary of State Paul Pate.

Pate released a statement Tuesday detailing that his office found 87 people who identified themselves to the DOT as noncitizens but previously voted. An additional 67 people said they are not citizens but previously registered to vote.

"For those groups, we have pretty clear evidence ... that they voted or registered to vote when they are not citizens, which is, of course, a Class D felony," Hunt Esquivel said.

ADVERTISEMENT

Additionally, 2,022 people had told the DOT that they are not citizens but subsequently registered to vote or voted. It's possible that they became naturalized citizens in the lapsed time, so "we need clarification on what their citizenship status was when they registered or voted," she said.

MORE ELECTION COVERAGE >



**Pennsylvania judge puts challenge of Elon Musk's $1M-a-day voter sweepstakes on hold**



**Nicky Jam withdraws endorsement of Donald Trump over comedian's 'garbage' comment about Puerto Rico**



**Americans are anxious and frustrated about the presidential campaign, an AP-NORC poll finds**

Pate, a Republican, stressed the importance of election integrity in the announcement, which came two weeks before Election Day.

Voting by people who are not U.S. citizens is illegal in federal elections, and there is not evidence that it is occurring in significant numbers, though there are some states that, like Iowa, have identified dozens of such cases.

Still, the issue of noncitizens voting has been a centerpiece of Republican candidates' campaigns and lawmakers' efforts ahead of the 2024 election, and former President Donald Trump has repeatedly suggested without evidence that Democrats are encouraging illegal migration to the U.S. so they could register the newcomers to vote.

Joe Henry, political director for Iowa's League of United Latin American Citizens, questioned Pate's motivations in releasing the statement, given safeguards already in place, and expressed concern that naturalized citizens may be disenfranchised.

"The decision to make the ballots of 2,022 registered voters provisional causes harm and real problems in determining Iowa's election outcomes," Henry said in an email. "The move to disenfranchise new citizens this close to the election could impact a number of close elections in Iowa."

Hunt Esquivel said Pate's office has not formally updated the voter registration database, but because early voting in Iowa is already underway, election officials sent the names of all individuals identified to relevant precincts — roughly 700 of them. They instructed poll workers to challenge those individuals' ballots and ask them to cast a provisional ballot instead.

Per law, voters would have six days — seven this year because of a holiday — to "cure the ballot, which essentially means if they can provide any proof that they are naturalized citizens, their ballot will be moving forward and counted as cast," Hunt Esquivel said.

Pate has regularly reminded Iowans that the state's laws protect the integrity of the elections but that even one instance of a noncitizen voting illegally is too many.

**What to know about the 2024 Election**

- **Today's news:** Follow live updates from the campaign trail from the AP.

- **Elections, explained:** We answer your election questions.

- **Ground Game:** Sign up for AP's weekly politics newsletter to get it in your inbox every Monday.

- **AP's Role:** The Associated Press is the most trusted source of information on election night, with a history of accuracy dating to 1848. Learn more.

Pate's office has sent the names of the roughly 150 individuals who registered to vote, or voted, and then self-reported as noncitizens to Iowa Attorney General Brenna Bird and the state Department of Public Safety.

Bird's office is ultimately responsible for deciding whether to bring charges. Tawny Kruse, spokesperson for the Department of Public Safety, said the department does not comment on pending investigations.

The American Civil Liberties Union of Iowa said it will monitor instances of disenfranchised voters.

"We will closely review any action relating to the voter lists for compliance with court orders and federal law to ensure the full protection of voting rights for all eligible voters in Iowa," executive director Mark Stringer said in a statement.

ADVERTISEMENT

# Exhibit D

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| **ORCUN SELCUK** et al., | |
| Plaintiffs, | **CASE NO.** _____ |
| v. | DECLARATION OF **ORCUN SELCUK** IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |
| **PAUL D. PATE** et al., | |
| Defendants. | |

I, Orcun Selcuk, declare as follows:

1. The facts contained in this declaration are known personally to me and, if called as a witness, I could and would testify competently thereto under oath.

2. I am an eligible and registered voter residing in Decorah, Iowa, which is located in Winneshiek County, Iowa.

3. I am an Assistant Professor of Political Science and the International Studies Program Director at Luther College.

4. I am a naturalized United States citizen.

5. I moved to the United States in 2013 from Turkey, where I was born.

6. Before obtaining my certificate of citizenship, I was a lawful permanent resident ("LPR").

7. I became a United States Citizen on November 6, 2023.

8. Becoming a United States citizen took many years, much effort and paperwork, and money. However, I felt that it was all worth it when I cast my ballot for the first time.

1

9. I have voted three times in this country.

10. First, I voted in Decorah the day after becoming a citizen, in a local election, on November 7, 2023.

11. When I registered to vote on November 7, 2023, I presented the Certificate of Naturalization as proof of my U.S. citizenship.

12. Second, I voted on September 10, 2024, in a special election relating to the construction of a new elementary school in Decorah.

13. Third, I voted on October 22, 2024, at the Winneshiek County Auditor's Office in the 2024 General Election.

14. I did not face any challenge or difficulty in voting those first two times.

15. However, days after voting this most recent time, I learned my ballot will not be counted in the November 5, 2024, General Election unless I first prove that I am a United States citizen.

16. On Saturday, October 26, 2024, I received a letter dated October 23, 2024, from the Winneshiek County Auditor's Office, which challenged my eligibility to vote on the basis of my citizenship. This letter is attached as Exhibit A.

17. The challenger is identified as Ben Steines, the Winneshiek County Auditor. (Ex. A). The notice gives me until noon on November 12, 2024, the Monday following the November 5, 2024 Election, to prove that I am a United States citizen in order to have my ballot counted. (Ex. A).

18. The notice itself was very confusing. No letter or further explanation accompanied the single page notice.

2

19. Based on media reports that the Iowa Secretary of State had provided lists of alleged non-United States citizens to county auditors to challenge them, and that this list was based on old driving records, I was able to understand the nature of the notice and understand that my own right to vote was being challenged.

20. I worry many others receiving this notice will not even understand what it is and that their right to vote is at risk.

21. Receiving the challenge letter from the Auditor has been challenging and intimidating to have my citizenship questioned.

22. I obtained my current, valid Iowa driver's license while I was still an LPR, on April 20, 2021. My license does not expire until October 18, 2029.

23. To the extent that the State is using similarly outdated and unreliable information to challenge other voters' eligibility to vote based on their citizenship, I worry that this risks disenfranchising those voters, especially those who might lack the time and resources to jump through the extra hoops required to prove their citizenship so close to the upcoming presidential election.

In accordance with 28 U.S.C. § 1746 and under penalty of perjury, I swear that the foregoing is true and correct.

Executed on October 2 9, 2024 in Decorah, Iowa

_____

Orcun Selcuk

3

# Exhibit E



Paul D. Pate
Secretary of State

State Capitol
Des Moines, Iowa 50319

## OFFICE OF THE IOWA SECRETARY OF STATE

October 22, 2024

Dear Commissioners:

The Iowa Secretary of State's Office has undertaken preparations to ensure the security and accuracy of the results of Election 2024, including an individualized review of certain registered voters who are potentially ineligible to vote.

During that review of voter registration data, we compared an Iowa Department of Transportation ("DOT") file of non-citizens with I-Voters. In doing so, we discovered 2,176 registrants who had self-reported as non-citizens that are registered to vote and 154 registrants who had self-reported to the DOT as non-citizens <u>after</u> registering to vote or voting. There is a reasonable suspicion that any voter on either list is a non-citizen.

As a part of its normal process, DOT verifies the Alien ID number of any non-citizen who is applying or renewing for driver's licenses or other state IDs through the United States Citizenship and Immigration Services ("USCIS"), including using the federal Systematic Alien Verification for Entitlements ("SAVE") database.[1] On its website, USCIS describes the SAVE database as "an online service for registered federal, state, territorial, tribal, and local government agencies to verify immigration status and naturalized/acquired U.S. citizenship of applicants seeking benefits or licenses."[2]

When applying for either voter registration or a drivers' license at the DOT, an applicant must identify whether he is a U.S. citizen. In both cases, the applicant self-reports her citizenship status under penalty of perjury to state officials. Along with DOT, the Secretary of State ("SOS") also verifies voter registrations against DOT's database of confirmed citizens. When a voter registration applicant does not appear to match a valid citizen in the DOT's database, it is compared to data from the Social Security Administration. When registrations cannot be confirmed, they are put into pending status in I-Voters until proof of citizenship is provided.

State and federal law authorize ballots being cast by suspected non-citizens to be challenged for further review. Under the Help America Vote Act ("HAVA"), an "individual shall be permitted to cast a provisional ballot" if "an election official asserts that the individual is not eligible to vote[.]"[3] The information that SOS, as Iowa's chief election official, is now sharing with you,

---

[1] New Iowan: Immigrant & Refugee Resources (iowadot.gov)
[2] SAVE | USCIS
[3] 52 USC § 21082(a)

Under Iowa law, "[i]t is the duty of each [precinct election] official to challenge any person offering to vote whom the official knows or suspects is not duly qualified."[5] The reasons for challenge include a voter who is an ineligible non-citizen.[6]

Based on the factors above, SOS concludes there is enough basis for a reasonable person to suspect those on the list are ineligible to vote due to citizenship status. Therefore, under SOS authority under Iowa Code sections 47.1(1) and 47.7(6), you are hereby directed to inform the Precinct Election Officials in the relevant precincts, that they are required under Iowa law to challenge the ballots of any person in the attached list of registered voters who attempt to vote in the 2024 General Election.

As the form shows, there is a box with a space for reason for the challenge. One reason to challenge the voters on either of the attached lists is an individualized reasonable suspicion that he is a nonvoter. On the line seeking a reason for the challenge one clearly stated reason is "citizenship."

The result of such a challenge will be that the voter will place their ballot in a provisional ballot envelope for later and further review, such that it can be cured and the vote validly counted. This is no different than when a voter's qualifications as to age or residency are challenged—all are vital parts of the electoral process. And provisional ballot envelopes include a printed statement that contains the challenge to the person's qualifications as a registered voter.[7] As with all provisional ballots, and as required by Iowa Code, the first clause of the attestation on a provisional ballot is that "I am a United States citizen . . .".[8] The information of those who are registered to vote in your county, as well as the individualized challenges to share with your ASVP Board are forthcoming.

Provisional ballots may be cured at the polling place consistent with law or at the county commissioner of election's office any time before the deadline. This year because of Veteran's Day, that deadline is Tuesday, November 12, 2024. This small step does not impose an undue burden on any voter—any more than a challenge relating to age or residency. But it does help ensure the integrity of our electoral process.

With regards,

Paul D. Pate

State Commissioner of Elections

Iowa Secretary of State

---

[5] Iowa Code § 49.79(1)
[6] Iowa Code § 49.79(2)
[7] Iowa Code § 49.81(3)(*c*).
[8] Iowa Code § 49.81(5)(*a*)(1).



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by JAROLIN DELEON, Voter ID# 500894192. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that JAROLIN DELEON, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, JAROLIN DELEON also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

JAROLIN DELEON indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 1/23/2020>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, JAROLIN DELEON indicated that he or she was a citizen when registering to vote on 9/11/2024.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2)*.

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE

SECRETARY OF STATE

STATE CAPITOL

DES MOINES, IOWA 50319

## OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by YUSHUNWANG, Voter ID# 500670552. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that YUSHUNWANG, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, YUSHUNWANG also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

### Details

YUSHUNWANG indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 8/26/2008. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, YUSHUNWANG indicated that he or she was a citizen when registering to vote on 7/13/2020.

Finally, YUSHUNWANG, self-reported as a non-citizen to DOT on a separate date after registering to vote on 4/12/2024.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

The decision to count or reject each ballot shall be made upon the basis of the information given on the envelope containing the provisional ballot, the evidence concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2)*.

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State



PAUL D. PATE

SECRETARY OF STATE

STATE CAPITOL

DES MOINES, IOWA 50319

## OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by ROSA MARIA RANGEL DE MARTINEZ, Voter ID# 500564921. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that ROSA MARIA RANGEL DE MARTINEZ, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, ROSA MARIA RANGEL DE MARTINEZ also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

### Details

ROSA MARIA RANGEL DE MARTINEZ indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 10/12/2002. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, ROSA MARIA RANGEL DE MARTINEZ indicated that he or she was a citizen when registering to vote on 11/2/2018.

Finally, ROSA MARIA RANGEL DE MARTINEZ, self-reported as a non-citizen to DOT on a separate date after registering to vote on 10/25/2023.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

The decision to count or reject each ballot shall be made upon the basis of the information given on the envelope containing the provisional ballot, the evidence concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2).*

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by
M ESTHER AGUILERA CEBALLOS, Voter ID# 500975319. The Office of Secretary of State
("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his
or her citizenship status as described by the details below, and subject to challenge as required by
Iowa Code § 49.79.

The core of the challenge is that M ESTHER AGUILERA CEBALLOS, has self-reported to
SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, M
ESTHER AGUILERA CEBALLOS also appears to have self-reported to the Iowa Department
of Transportation ("DOT") that they are a not a citizen of the United States.

Details

M ESTHER AGUILERA CEBALLOS indicated that he or she was **not** a citizen when applying
for or renewing with the DOT on 4/5/2017>. As a part of their process, the DOT verifies
citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database
The SAVE database is federal government source used to verify citizenship for various
governmental purposes, including state IDs and voter registration.

Additionally, M ESTHER AGUILERA CEBALLOS indicated that he or she was a citizen when
registering to vote on 10/2/2024.

In addition to the information above, SOS has sent a list of names of registered voters to the
county commissioner of elections. Whether you are considering this challenge as one made by a
PEO or one directly from SOS, you are required under Iowa law to consider this evidence when
you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the
> information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2)*.

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by JAVIER HERNANDEZ GALEANA, Voter ID# 500845971. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that JAVIER HERNANDEZ GALEANA, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, JAVIER HERNANDEZ GALEANA also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

JAVIER HERNANDEZ GALEANA indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 6/3/2015>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, JAVIER HERNANDEZ GALEANA indicated that he or she was a citizen when registering to vote on 10/10/2022.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2).*

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by JOSE LUIS GARCIA, Voter ID# 169713. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that JOSE LUIS GARCIA, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, JOSE LUIS GARCIA also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

JOSE LUIS GARCIA indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 8/16/2006>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, JOSE LUIS GARCIA indicated that he or she was a citizen when registering to vote on 6/19/1999.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the information given on the envelope containing the provisional ballot, the evidence concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2).*

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.


Sincerely,

Paul D. Pate
Iowa Secretary of State



Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by MARIA AYON-FERNANDEZ, Voter ID# 180119. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that MARIA AYON-FERNANDEZ, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, MARIA AYON-FERNANDEZ also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

MARIA AYON-FERNANDEZ indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 3/4/2004>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, MARIA AYON-FERNANDEZ indicated that he or she was a citizen when registering to vote on 2/25/2002.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2).*

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by MARIA ALEJANDRA MORALES CISNEROS, Voter ID# 500870569. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that MARIA ALEJANDRA MORALES CISNEROS, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, MARIA ALEJANDRA MORALES CISNEROS also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

MARIA ALEJANDRA MORALES CISNEROS indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 5/21/2016>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, MARIA ALEJANDRA MORALES CISNEROS indicated that he or she was a citizen when registering to vote on 1/26/2023.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the
> information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2)*.

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by FABIOLA TAPIA, Voter ID# 500927650. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that FABIOLA TAPIA, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, FABIOLA TAPIA also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

FABIOLA TAPIA indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 10/17/2017>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, FABIOLA TAPIA indicated that he or she was a citizen when registering to vote on 2/23/2024.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2).*

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by
EXEQUIEL ALIPO TABELISMA, Voter ID# 188987. The Office of Secretary of State ("SOS")
believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her
citizenship status as described by the details below, and subject to challenge as required by Iowa
Code § 49.79.

The core of the challenge is that EXEQUIEL ALIPO TABELISMA, has self-reported to SOS
that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID,
EXEQUIEL ALIPO TABELISMA also appears to have self-reported to the Iowa Department of
Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

EXEQUIEL ALIPO TABELISMA indicated that he or she was **not** a citizen when applying for
or renewing with the DOT on 6/2/2004>. As a part of their process, the DOT verifies citizenship
status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE
database is federal government source used to verify citizenship for various governmental
purposes, including state IDs and voter registration.

Additionally, EXEQUIEL ALIPO TABELISMA indicated that he or she was a citizen when
registering to vote on 10/22/2004.

In addition to the information above, SOS has sent a list of names of registered voters to the
county commissioner of elections. Whether you are considering this challenge as one made by a
PEO or one directly from SOS, you are required under Iowa law to consider this evidence when
you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the
> information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2).*

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by DERMOT HUGH FERRY, Voter ID# 500801817. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that DERMOT HUGH FERRY, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, DERMOT HUGH FERRY also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

DERMOT HUGH FERRY indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 10/14/2017>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, DERMOT HUGH FERRY indicated that he or she was a citizen when registering to vote on 12/23/2021.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2)*.

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

## OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by MARGARITA GUADALUPE ABREGO, Voter ID# 500335238. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that MARGARITA GUADALUPE ABREGO, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, MARGARITA GUADALUPE ABREGO also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

### Details

MARGARITA GUADALUPE ABREGO indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 5/5/2010>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, MARGARITA GUADALUPE ABREGO indicated that he or she was a citizen when registering to vote on 11/20/2012.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the
> information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2).*

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by ELIUD CHERUIYOT TABUT, Voter ID# 500458422. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that ELIUD CHERUIYOT TABUT, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, ELIUD CHERUIYOT TABUT also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

Details

ELIUD CHERUIYOT TABUT indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 10/4/2008>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, ELIUD CHERUIYOT TABUT indicated that he or she was a citizen when registering to vote on 11/8/2016.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2)*.

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by LIZBETH MIGUELINA COLIN, Voter ID# 500962755. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that LIZBETH MIGUELINA COLIN, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, LIZBETH MIGUELINA COLIN also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

LIZBETH MIGUELINA COLIN indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 10/13/2017>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, LIZBETH MIGUELINA COLIN indicated that he or she was a citizen when registering to vote on 9/4/2024.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2)*.

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.


Sincerely,

*[signature]*

Paul D. Pate
Iowa Secretary of State



Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

### OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by RACHID EL MAROUANI, Voter ID# 500725794. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that RACHID EL MAROUANI, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, RACHID EL MAROUANI also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

### Details

RACHID EL MAROUANI indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 4/8/2014>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, RACHID EL MAROUANI indicated that he or she was a citizen when registering to vote on 10/23/2020.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2).*

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by DORIS CRISTELA SERPAS, Voter ID# 500622235. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that DORIS CRISTELA SERPAS, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, DORIS CRISTELA SERPAS also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

DORIS CRISTELA SERPAS indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 10/6/2010>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, DORIS CRISTELA SERPAS indicated that he or she was a citizen when registering to vote on 10/10/2019.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2).*

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by IRIS Y LOBO, Voter ID# 500854094. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that IRIS Y LOBO, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, IRIS Y LOBO also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

IRIS Y LOBO indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 3/2/2021>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, IRIS Y LOBO indicated that he or she was a citizen when registering to vote on 11/7/2022.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the information given on the envelope containing the provisional ballot, the evidence concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2)*.

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by
DIANA XIMENA FAJARDO, Voter ID# 500645926. The Office of Secretary of State ("SOS")
believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her
citizenship status as described by the details below, and subject to challenge as required by Iowa
Code § 49.79.

The core of the challenge is that DIANA XIMENA FAJARDO, has self-reported to SOS that he
or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, DIANA
XIMENA FAJARDO also appears to have self-reported to the Iowa Department of
Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

DIANA XIMENA FAJARDO indicated that he or she was **not** a citizen when applying for or
renewing with the DOT on 7/26/2019>. As a part of their process, the DOT verifies citizenship
status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE
database is federal government source used to verify citizenship for various governmental
purposes, including state IDs and voter registration.

Additionally, DIANA XIMENA FAJARDO indicated that he or she was a citizen when
registering to vote on 2/4/2020.

In addition to the information above, SOS has sent a list of names of registered voters to the
county commissioner of elections. Whether you are considering this challenge as one made by a
PEO or one directly from SOS, you are required under Iowa law to consider this evidence when
you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the
> information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2).*

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by PAOLA RENTERIA, Voter ID# 500932240. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that PAOLA RENTERIA, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, PAOLA RENTERIA also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

PAOLA RENTERIA indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 9/5/2013>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, PAOLA RENTERIA indicated that he or she was a citizen when registering to vote on 3/22/2024.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2)*.

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by
SOE MAUNG AUNG, Voter ID# 500866942. The Office of Secretary of State ("SOS") believes
that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship
status as described by the details below, and subject to challenge as required by Iowa Code §
49.79.

The core of the challenge is that SOE MAUNG AUNG, has self-reported to SOS that he or she is
a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, SOE
MAUNG AUNG also appears to have self-reported to the Iowa Department of Transportation
("DOT") that they are a not a citizen of the United States.

### Details

SOE MAUNG AUNG indicated that he or she was **not** a citizen when applying for or renewing
with the DOT on 8/17/2016>. As a part of their process, the DOT verifies citizenship status
against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE
database is federal government source used to verify citizenship for various governmental
purposes, including state IDs and voter registration.

Additionally, SOE MAUNG AUNG indicated that he or she was a citizen when registering to
vote on 12/23/2022.

In addition to the information above, SOS has sent a list of names of registered voters to the
county commissioner of elections. Whether you are considering this challenge as one made by a
PEO or one directly from SOS, you are required under Iowa law to consider this evidence when
you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the
> information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2)*.

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

### OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by FATIMA LEA A MORALES, Voter ID# 500670540. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that FATIMA LEA A MORALES, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, FATIMA LEA A MORALES also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

FATIMA LEA A MORALES indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 12/17/2009>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, FATIMA LEA A MORALES indicated that he or she was a citizen when registering to vote on 7/13/2020.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2).*

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

### OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by MONIKA IGORIVNA MELIKA, Voter ID# 500663481. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that MONIKA IGORIVNA MELIKA, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, MONIKA IGORIVNA MELIKA also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

MONIKA IGORIVNA MELIKA indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 8/28/2015>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, MONIKA IGORIVNA MELIKA indicated that he or she was a citizen when registering to vote on 6/2/2020.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the
> information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2)*.

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

### OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by NATHALIE KAZADI MASENGO, Voter ID# 500837452. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that NATHALIE KAZADI MASENGO, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, NATHALIE KAZADI MASENGO also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

NATHALIE KAZADI MASENGO indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 6/17/2021>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, NATHALIE KAZADI MASENGO indicated that he or she was a citizen when registering to vote on 8/29/2022.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2).*

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by YASUTOMO TSUBAKI, Voter ID# 500691031. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that YASUTOMO TSUBAKI, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, YASUTOMO TSUBAKI also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

YASUTOMO TSUBAKI indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 4/13/2019>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, YASUTOMO TSUBAKI indicated that he or she was a citizen when registering to vote on 9/10/2020.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2)*.

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

### OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by LOREN CAROLAY SUAZA GOMEZ, Voter ID# 500891666. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that LOREN CAROLAY SUAZA GOMEZ, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, LOREN CAROLAY SUAZA GOMEZ also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

### Details

LOREN CAROLAY SUAZA GOMEZ indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 6/22/2021>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database. The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, LOREN CAROLAY SUAZA GOMEZ indicated that he or she was a citizen when registering to vote on 7/17/2023.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2).*

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by
NORA GABRIELA EVANS, Voter ID# 500957429. The Office of Secretary of State ("SOS")
believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her
citizenship status as described by the details below, and subject to challenge as required by Iowa
Code § 49.79.

The core of the challenge is that NORA GABRIELA EVANS, has self-reported to SOS that he
or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, NORA
GABRIELA EVANS also appears to have self-reported to the Iowa Department of
Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

NORA GABRIELA EVANS indicated that he or she was **not** a citizen when applying for or
renewing with the DOT on 2/12/2020>. As a part of their process, the DOT verifies citizenship
status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE
database is federal government source used to verify citizenship for various governmental
purposes, including state IDs and voter registration.

Additionally, NORA GABRIELA EVANS indicated that he or she was a citizen when
registering to vote on 8/15/2024.

In addition to the information above, SOS has sent a list of names of registered voters to the
county commissioner of elections. Whether you are considering this challenge as one made by a
PEO or one directly from SOS, you are required under Iowa law to consider this evidence when
you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the
> information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2)*.

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.


Sincerely,

Paul D. Pate
Iowa Secretary of State



Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by FRANCISCO JOAQUIN ARIAS ESTRADA, Voter ID# 500911372. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that FRANCISCO JOAQUIN ARIAS ESTRADA, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, FRANCISCO JOAQUIN ARIAS ESTRADA also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

Details

FRANCISCO JOAQUIN ARIAS ESTRADA indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 10/4/2018>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, FRANCISCO JOAQUIN ARIAS ESTRADA indicated that he or she was a citizen when registering to vote on 11/7/2023.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2)*.

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by
MEAGHAN CHRISTINE HARDING, Voter ID# 500974018. The Office of Secretary of State
("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his
or her citizenship status as described by the details below, and subject to challenge as required by
Iowa Code § 49.79.

The core of the challenge is that MEAGHAN CHRISTINE HARDING, has self-reported to SOS
that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID,
MEAGHAN CHRISTINE HARDING also appears to have self-reported to the Iowa Department
of Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

MEAGHAN CHRISTINE HARDING indicated that he or she was **not** a citizen when applying
for or renewing with the DOT on 6/13/2014>. As a part of their process, the DOT verifies
citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database
The SAVE database is federal government source used to verify citizenship for various
governmental purposes, including state IDs and voter registration.

Additionally, MEAGHAN CHRISTINE HARDING indicated that he or she was a citizen when
registering to vote on 9/30/2024.

In addition to the information above, SOS has sent a list of names of registered voters to the
county commissioner of elections. Whether you are considering this challenge as one made by a
PEO or one directly from SOS, you are required under Iowa law to consider this evidence when
you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the
> information given on the envelope containing the provisional ballot, the evidence

---

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2)*.

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by
LYNNE ANNE MOUW, Voter ID# 500833628. The Office of Secretary of State ("SOS")
believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her
citizenship status as described by the details below, and subject to challenge as required by Iowa
Code § 49.79.

The core of the challenge is that LYNNE ANNE MOUW, has self-reported to SOS that he or she
is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, LYNNE
ANNE MOUW also appears to have self-reported to the Iowa Department of Transportation
("DOT") that they are a not a citizen of the United States.

<u>Details</u>

LYNNE ANNE MOUW indicated that he or she was **not** a citizen when applying for or
renewing with the DOT on 4/27/2000>. As a part of their process, the DOT verifies citizenship
status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE
database is federal government source used to verify citizenship for various governmental
purposes, including state IDs and voter registration.

Additionally, LYNNE ANNE MOUW indicated that he or she was a citizen when registering to
vote on 8/8/2022.

In addition to the information above, SOS has sent a list of names of registered voters to the
county commissioner of elections. Whether you are considering this challenge as one made by a
PEO or one directly from SOS, you are required under Iowa law to consider this evidence when
you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the
> information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2)*.

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by JOSE EMILIO RAMIREZ AGUILAR, Voter ID# 500681445. The Office of Secretary of State ("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her citizenship status as described by the details below, and subject to challenge as required by Iowa Code § 49.79.

The core of the challenge is that JOSE EMILIO RAMIREZ AGUILAR, has self-reported to SOS that he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, JOSE EMILIO RAMIREZ AGUILAR also appears to have self-reported to the Iowa Department of Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

JOSE EMILIO RAMIREZ AGUILAR indicated that he or she was **not** a citizen when applying for or renewing with the DOT on 10/12/2011>. As a part of their process, the DOT verifies citizenship status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE database is federal government source used to verify citizenship for various governmental purposes, including state IDs and voter registration.

Additionally, JOSE EMILIO RAMIREZ AGUILAR indicated that he or she was a citizen when registering to vote on 8/20/2020.

In addition to the information above, SOS has sent a list of names of registered voters to the county commissioner of elections. Whether you are considering this challenge as one made by a PEO or one directly from SOS, you are required under Iowa law to consider this evidence when you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the
> information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2)*.

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by
KAREN LEIGH ZIMMERMAN, Voter ID# 500897103. The Office of Secretary of State
("SOS") believes that there is reasonable suspicion that the voter is ineligible to vote due to his
or her citizenship status as described by the details below, and subject to challenge as required by
Iowa Code § 49.79.

The core of the challenge is that KAREN LEIGH ZIMMERMAN, has self-reported to SOS that
he or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, KAREN
LEIGH ZIMMERMAN also appears to have self-reported to the Iowa Department of
Transportation ("DOT") that they are a not a citizen of the United States.

<u>Details</u>

KAREN LEIGH ZIMMERMAN indicated that he or she was **not** a citizen when applying for or
renewing with the DOT on 10/11/2007>. As a part of their process, the DOT verifies citizenship
status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE
database is federal government source used to verify citizenship for various governmental
purposes, including state IDs and voter registration.

Additionally, KAREN LEIGH ZIMMERMAN indicated that he or she was a citizen when
registering to vote on 8/22/2023.

In addition to the information above, SOS has sent a list of names of registered voters to the
county commissioner of elections. Whether you are considering this challenge as one made by a
PEO or one directly from SOS, you are required under Iowa law to consider this evidence when
you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the
> information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2).*

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:



PAUL D. PATE
SECRETARY OF STATE

STATE CAPITOL
DES MOINES, IOWA 50319

OFFICE OF THE IOWA SECRETARY OF STATE

October 24, 2024

Pottawattamie County ASVP Board
c/o Pottawattamie Commissioner of Elections

Dear ASVP Board:

This letter is meant to provide additional context for the challenge to the ballot being offered by
ESTELLE ALICE NICHOLS, Voter ID# 500853402. The Office of Secretary of State ("SOS")
believes that there is reasonable suspicion that the voter is ineligible to vote due to his or her
citizenship status as described by the details below, and subject to challenge as required by Iowa
Code § 49.79.

The core of the challenge is that ESTELLE ALICE NICHOLS, has self-reported to SOS that he
or she is a citizen when completing his or her voter registration form.

At a different time, during an application or renewal for a driver's license or other ID, ESTELLE
ALICE NICHOLS also appears to have self-reported to the Iowa Department of Transportation
("DOT") that they are a not a citizen of the United States.

<u>Details</u>

ESTELLE ALICE NICHOLS indicated that he or she was **not** a citizen when applying for or
renewing with the DOT on 3/20/2007>. As a part of their process, the DOT verifies citizenship
status against the Systematic Alien Verification for Entitlements ("SAVE") database The SAVE
database is federal government source used to verify citizenship for various governmental
purposes, including state IDs and voter registration.

Additionally, ESTELLE ALICE NICHOLS indicated that he or she was a citizen when
registering to vote on 11/4/2022.

In addition to the information above, SOS has sent a list of names of registered voters to the
county commissioner of elections. Whether you are considering this challenge as one made by a
PEO or one directly from SOS, you are required under Iowa law to consider this evidence when
you review this challenge:

> The decision to count or reject each ballot shall be made upon the basis of the
> information given on the envelope containing the provisional ballot, the evidence

concerning the challenge, the registration and the returned receipts of registration. *Iowa Code § 50.22(2).*

Because SOS is challenging the underlying vote at issue, it is not able to provide further guidance. The Board should consult with the county auditor or county attorney on any clarifications or questions.

Sincerely,

Paul D. Pate
Iowa Secretary of State

Additional Comments:

# Exhibit F

Official State of Iowa Website
(https://www.iowa.gov/official-website)

Agencies A-Z
(https://directory.iowa.gov/agencies)

Programs & Services
(https://directory.iowa.gov/service



**Data by Subject**     **Data by Source**     **Quick Facts**     **Geography (https://www.iowadatacenter.org/index.php/geogr**

Home (https://www.iowadatacenter.org/index.php) / Data by Source (https://www.iowadatacenter.org/index.php/data-by-source)
/ Other Federal Sources (https://www.iowadatacenter.org/index.php/data-by-source/other) / Naturalizations

## Persons Naturalized in Iowa by Country of Birth: **2022**

Note: Countries where the data was withheld to limit disclosure are not included in this map



Source agency name: U.S. Department of Homeland Security
Source agency program: Yearbook of Immigration Statistics
Source agency contact: http://www.dhs.gov/yearbook-immigration-statistics
Source agency release date: October, 2023
Date added to State Data Center Web site: April 3, 2024
State Data Center contact information: State Library of Iowa, State Data Center Program,
http://www.iowadatacenter.org 800-248-4483, census@iowa.gov

© 2024 Mapbox  © OpenStreetMap

This **State Data Center** is a program of:



www.StateLibraryofIowa.gov (https://www.statelibraryofiowa.gov/)
**Contact Us** (https://www.iowadatacenter.org/index.php/about/contact-us)
800-248-4483
Census@iowa.gov (mailto:Census@iowa.gov)

1112 East Grand Ave.
Des Moines, IA 50319

8:00am - 4:30pm
Monday - Friday

**Quick Links**
About Us (https://www.iowadatacenter.org/index.php/about/about)
News & Updates (https://www.iowadatacenter.org/index.php/blog)
Publications (https://www.iowadatacenter.org/index.php/publications)
Remote Support (https://get.teamviewer.com/silo-qs201902)
Cloud Print (https://mp.cloud.papercut.com/?
token=eyJhbGciOiJSUzI1NiIsIm9yZyI6Im9yZy05S0Q2NUY5MyIsInNydiI6InNydi1LRlNSMVgzRyIsInR5cCI6IkpXVCJ9.eyJpYXQiOjE2NDMzMDI0MzQsImlzcyI6InNydi1LRlNSMVgz
srjOqmobjVV7XukvFlVBGgRmVB1PybB4hcpqqj-XFTQefUu84GH2M2AnFVQYtesaTRRxhV9yNDFEob02-7Ovx69u_XnkkKqfif-
JcRBLre_87TS8wiER0dU4QgjpF9K3NfGf8k1xq5POChAh4CKMIvtTwXO-nmcfbi5_ofPRIbpHbVklg6SjtKa-0Odt37jYfqCKZq3G8lkN0EtoWAlj0SpCOvS-
_PfTVy9_7k3JImKNIAa_XF14QZa30PIfc0Da1QsaBAI_U-TuMgof3Ynn62HQS5TgciA-gFKJRL33QyL-aqMxSn6jn02eOYe6A1dkKDnmYY3-
xksEfliXld1hiWzACUFJSMgB1KqBK5lw7zQ6Jn2mxxr1SdVXNp1i3K0Mj2SX5Ikp4HAu39KiSuZ6hcvHOc-c7wj60iWIE1oG1Ym0b8WBskuHfEt0ysiokOX8OF-
uuCpBiPqlsDYSyis-
bPdT4NwxdzpfJGUvn4MIH_Z0P0zcRw4EcBp_LCZ0gh28XaU9MXJNJtgF45Xt68y3N2unUM04zWj2kbpjiAO0zbgawvFVzX3fTFPM1gphfeoIFxDz8hFnOe03jenEY514WhUjj-
zqNnSWk-Hvarv9Umpk2Gpj0jJMR3TVYd-io2jCYvwM13U3oKXJnEzJ-i2NXk)
**Website**
Feedback (https://www.iowadatacenter.org/index.php/about/contact-us/website-feedback)
Policies (https://www.iowa.gov/policies)
Accessibility Statement (https://www.iowa.gov/accessibility-statement)

*This website is supported by the Institute of Museum and Library Services under the provisions of the Library Services and Technology Act as administered by State Library of Iowa.*

Log in (https://www.iowadatacenter.org/index.php/login)

# Exhibit G

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| **ORCUN SELCUK, et al.,** | |
| Plaintiffs, | |
| | **CASE NO.** _____ |
| v. | |
| | DECLARATION OF |
| **PAUL D. PATE**, in his official capacity as | **ALAN DAVID GWILLIAM** |
| Iowa Secretary of State, et al., | IN SUPPORT OF PLAINTIFFS' MOTION |
| | FOR A TEMPORARY RESTRAINING |
| Defendants. | ORDER AND PRELIMINARY |
| | INJUNCTION |

I, Alan David Gwilliam, declare as follows:

1.    The facts contained in this declaration are known personally to me and, if called as a witness, I could and would testify competently thereto under oath.

2.    I am an eligible and registered voter residing in Iowa City, Iowa, which is located in Johnson County, Iowa.

3.    I am retired. Prior to my retirement, I was an attorney practicing primarily in criminal defense. I ran a solo practice in Iowa City and was admitted to the bar of the State of Iowa and the United States District Court for the Northern District of Iowa.

4.    I am a naturalized United States citizen.

5.    I moved to the United States in 1980 from Wales, which is where I was born.

6.    Before obtaining my certificate of citizenship, I was a lawful permanent resident ("LPR").

7.    I obtained an M.F.A. from the University of Iowa in 1989, and then obtained my J.D. from the University of Iowa College of Law in 1999.

8.      I became a United States citizen on August 16, 2024, and registered to vote later that month or in September 2024.

9.      I was greatly anticipating voting for the first time in this election.

10.     However, I have been informed that I am on a list of voters in Johnson County who must vote provisionally and prove they are a United States Citizen before their vote is counted.

11.     I learned of this from my former colleague, the Johnson County Attorney, who informed me that I would be receiving a letter soon confirming that my eligibility to vote has been challenged based on my citizenship.

12.     I understand from news articles published this week and the last week that were quoting statements made by the Iowa Secretary of State, Paul Pate, that this list was developed by reference to Iowa Department of Transportation records.

13.     In August 2023, I renewed my current, valid Iowa driver's license while I was still on LPR status.

14.     The citizenship information reported when I obtained my driver's license in 2023 is out of date. To the extent the Secretary used similar Department of Transportation records for other voters on the list, those voters are similarly at risk of facing a challenge based on outdated citizenship information.

15.     When announcing these challenges, Secretary Pate also stated he was referring people identified in his review to the Iowa Attorney General for prosecution of a class "D" felony—punishable in Iowa by up to five years in prison and a hefty fine. I felt intimidated by Secretary Pate's statements and I believe that other recent immigrants would feel the same and may even be afraid to vote in the upcoming election. I'm concerned about the consequences these voter challenges and investigations will have. My concerns are heightened for those who have not

received advanced warnings or fear the imposition and consequences of criminal investigation. Even if I have not been referred for criminal prosecution, I, at the very least, now have a burden I must confront before exercising a fundamental right of citizenship that I gained after years of effort.

In accordance with 28 U.S.C. § 1746 and under penalty of perjury, I swear that the foregoing is true and correct.

Executed on October 7, 2024 in Iowa City, Iowa

Alan David Gwilliam

# Exhibit H

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| **ORCUN SELCUK** et al., | |
| | CASE NO.  _____ |
| *Plaintiffs*, | |
| | DECLARATION OF |
| v. | **JOE ENRIQUEZ HENRY** |
| | IN SUPPORT OF PLAINTIFFS' MOTION |
| **PAUL D. PATE** et al., | FOR A TEMPORARY RESTRAINING |
| | ORDER AND PRELIMINARY |
| *Defendants*. | INJUNCTION |

I, Joe Enriquez Henry, do hereby declare:

1.      I am over 18 years of age, competent to testify, and declare the following facts based on my own personal knowledge.

2.      I have served as the Political Director for the League of United Latin American Citizens of Iowa ("LULAC") since 2019. I have also been an advisor to LULAC's national President on civic engagement and elections since that time. Prior to that I was the national Vice President for LULAC (Midwest region) from 2015-2018 and state director for LULAC Iowa from 2012-2015. My duties have required me to become knowledgeable about LULAC's voter mobilization and registration efforts. I am also knowledgeable about LULAC's resource allocation decisions. I am also familiar with LULAC's membership within the state of Iowa.

3.      LULAC has approximately 150,000 members throughout the United States and Puerto Rico.  It is the largest and oldest Latino civil rights organization in the United States. LULAC advances the economic condition, educational attainment, political influence, health, housing, and civil rights of all Hispanic nationality groups through community-based programs operating at more than 600 LULAC councils nationwide.

4.      LULAC of Iowa has more than 500 members and is comprised of 20 councils located throughout the state. Among its purposes is to advocate for the rights of Hispanics and Latinos in Iowa. Members pay dues and vote for their council leadership.

5.      The members of LULAC of Iowa and each of its councils include voting-age Latino citizens of Iowa. LULAC of Iowa promotes civic participation, including voting, by its members and their communities. At least half of LULAC of Iowa's members are between the ages of 18 and 30. Many of LULAC's members are registered to vote in Iowa and plan to do so in the November 5, 2024 general election.

6.      A particular focus of LULAC's mission is voter engagement. Every year, LULAC engages in voter registration and voter mobilization efforts throughout the country. This includes encouraging LULAC members to vote and assist members of the Latino community in voting.

7.      LULAC has many events at which it conducts voter mobilization. These events traditionally begin around May during Cinco de Mayo, continuing with booths at Latino festivals throughout the summer and then LULAC banquets that happen in the fall. LULAC sets up booths at these events with voter registration materials, absentee ballot request forms, and other critical voter information. LULAC members work at these booths, but also go out during the events, walking around and reminding people to vote, asking them if they are registered to vote and plan on voting, and letting them know what the issues are within our community and where the candidates stand on particular positions. Throughout 2024, LULAC has spent both money and dedicated valuable working hours to these efforts.

8.      LULAC also engages in other "get out the vote" efforts, including walking neighborhoods or calling LULAC members to confirm that they are registered and know how to vote. Throughout 2024, LULAC has spent both money and dedicated valuable working hours to

these additional "get out the vote" efforts. For example, LULAC recently sent postcards to Latino voters across Iowa, including targeted voters in Pottawattamie County.

9.    The money and working hours LULAC spends on its voter awareness initiatives, such as those described in the preceding paragraphs could be spent furthering other LULAC initiatives.

10.    I have read the *Complaint* in the above captioned matter and am familiar with Iowa Secretary of State Paul Pate's ("Pate") Voter Purge Program, as the term is defined in the *Complaint*. I am also familiar with the list of Affected Voters as the term is defined in the *Complaint*. I hereby incorporate the definitions of those terms as used in the *Complaint* into this declaration.

11.    Had LULAC been aware of the Voter Purge Program earlier, it could have used its resources to help educate its members on how to best navigate the voting process in light of the Voter Purge Program. However, because Pate did not disclose the Voter Purge Program until just a few weeks before the election, LULAC expended many of its resources without knowledge of the Voter Purge Program.

12.    Because of Pate's Voter Purge Program, LULAC will be forced to expend resources to help both LULAC members and other members of the Latino community navigate the suddenly more complicated and burdensome voting process in the upcoming general election.

13.    I am aware of at least some LULAC members that previously reported to the Iowa Department of Transportation that they were lawful permanent residents of the United States, but have subsequently become naturalized United States citizens and have registered to vote in the upcoming general election.

14.     Based on my understanding of the situation and through conversations with LULAC members, I have learned that at least some LULAC members may be on the list of Affected Voters.

15.     Based on my understanding of the situation, I believe many LULAC voters are either unaware if they are on the list of Affected Voters, or that such a list even exists.

16.     Based on my experience, many LULAC members would be extremely uncomfortable with having to undergo a ballot challenge and prove they are United States citizens. Based on that same experience, I believe some LULAC members may chose not to vote or be hesitant to vote in both this election and moving forward.

17.     Having reviewed the list of Affected Voters released on October 29, 2024, by Pottawattamie County, I am aware of at least one LULAC member that is on the list of Affected Voters in that county.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 29, 2024.


_____
Joe Enriquez Henry

# Exhibit I

**3 on list of possible illegal Linn County voters are eligible, Auditor Miller says**

A fourth who requested absentee ballot also is a U.S. citizen

 **Erin Murphy**

Oct. 25, 2024 5:51 pm, Updated: Oct. 28, 2024 7:57 am

 **Why you can trust The Gazette**



Linn County Auditor Joel Miller delivers a portion of the State of Linn County address May 9 at the Jean Oxley Public Service Center in Cedar Rapids. (The Gazette)

Listen to this Article

ıılı Instaread

The Gazette offers audio versions of articles using Instaread. Some words may be mispronounced.

DES MOINES — Three Linn County people flagged by the state as having unknown citizenship — who already voted early in the 2024 general election — all have full U.S. citizenship, Linn County Auditor Joel Miller said Friday.

Iowa Secretary of State Paul Pate, the state's top elections official, this week sent to county auditors a list of over 2,000 Iowans who live in the United States legally, but as of their last documentation with the state were not U.S. citizens, who have recently attempted to vote or register to vote.

Pate has instructed local elections workers to challenge the ballots of any of those individuals who attempt to vote in the 2024 election. Pate said they would be allowed to vote with a provisional ballot, which will be held until their citizenship and voting eligibility is determined.

Voting or registering to vote in Iowa without U.S. citizenship is a Class D felony, punishable by up to five years in prison and a fine of $750 to $7,500.

Miller said the state list included 150 names in Linn County. He said after an initial scan of the list, he discovered three individuals who already had voted and a fourth who had requested an absentee ballot to vote by mail.

Miller said he forwarded those four names to the Linn County Sheriff's Office, which then sent them to federal immigration officers. The federal officers informed the county that all four individuals are U.S. citizens.

The Gazette reached out to the Linn County Sheriff's Office to confirm the account, but had not heard back as of Friday afternoon.

Miller said as of Friday afternoon he had not yet completed his review of the list, but that he suspected "maybe half a dozen other people" on the list have voted early or requested a ballot.

"I'm guessing they're going to be U.S. citizens, too," he said.

Miller said his initial review of the list also revealed 17 more individuals with active voter registration, six with inactive registration — meaning they are registered but did not vote in the 2022 election — and three with their voter registration pending.

## How the state list was created



Iowa Secretary of State Paul Pate speaks with the media Oct. 19, 2022, after early voting at the Lindale Mall in Cedar Rapids. (The Gazette)

Pate said his office found potential state elections law violations during a review of 2.3 million Iowa voter records. The violations were discovered after a cross-check with Iowa Department of Transportation records, Pate said. Most commonly, the voter registration and voting data would coincide with individuals who indicated on their driver's license or other Iowa DOT documents that they are not U.S. citizens.

Pate's office said it found 87 cases of legal Iowa residents without U.S. citizenship who illegally voted and 67 more who illegally registered to vote in previous election cycles spanning back to the 2000s.

Pate said his office is working with the Iowa DOT to refer those 154 names to the Iowa Department of Public Safety for further investigation and potential referral to the Iowa Attorney General's Office, which has exclusive jurisdiction over state elections crimes.

Meantime, the citizenship status of another 2,022 Iowans at the time they voted or registered remains unclear, Pate said. Those individuals — who make up the list sent to county auditors this week — at some point indicated to the state they are not U.S. citizens and later registered or voted in an election, Pate said. It is unknown whether they became U.S. citizens before registering or voting.

In at least four cases in Linn County, according to Miller, they did become U.S. citizens before voting or registering in 2024.

## Miller criticizes Pate's directive



Republican incumbent Paul Pate and Democratic challenger Joel Miller, the 2022 candidates for Iowa Secretary of State, discuss voting and elections issues Sept. 16, 2022, during recording of "Iowa Press" at Iowa PBS studios in Johnston. Pate defeated Miller in the election. (Screen capture from Iowa PBS)

Miller, who ran for Iowa Secretary of State as a Democrat against Pate in 2022 — Miller after the election changed his party affiliation to no longer affiliate with Democrats — has been critical of Pate's directive, especially how it requires volunteer poll workers to automatically challenge the ballots of any Iowans on the state list who attempt to vote.

Miller said he believes asking poll workers to challenge voters' ballots is an undue burden that will turn them off to volunteering in future elections, and he worries about the potential for confrontations when an individual's ballot is challenged.

"I still think it's wrong that the Secretary of State is using precinct election officials to clean up his work. I think it's fundamentally wrong for him to do that," Miller said.

Pate, in an interview earlier this week, told The Gazette he has faith in Iowa's county auditors and poll workers.

"We're doing what we can. And I want to really put a strong plug in support of what our county auditors are doing, and those poll workers — those 10,000 poll workers who are your friends and neighbors, the people you go to church with, you work with — they're the ones that are really going to be the ones who are going to help get it done," Pate said.

"And that's how I sleep at night, quite frankly, on elections because I know they're there and they've all gotten the training and they are going to be doing the best they can, and that's what we can count on," Pate said.

Miller also questioned the timing of Pate's directive, which was issued exactly two weeks before the Nov. 5 election and well into Iowa's early voting period, which started Oct. 16.

The Iowa Secretary of State's Office requested information from the Iowa DOT on Oct. 1, and the department provided the information Oct. 7, according to an Iowa DOT spokeswoman.

Pate's office delivered the instructions to county auditors Oct. 22.

"I think it's just twisted political theater, trying to make a point," Miller said, "and all of those people are probably going to turn out to be naturalized citizens."

Pate earlier this week expressed his frustration with state elections officials not having access to a federal database that verifies the immigration status and U.S. citizenship of applicants seeking benefits or licenses. Pate said acquiring the list can take months and is expensive.

"There are things we've been asking the federal government to do for us, and they either have not or they are so slow — a snail moves faster," Pate said. "And that is frustrating because we have an election now — not a month from now, not two months from now. So we need them to respond to our needs immediately."

*Comments: (515) 355-1300, erin.murphy@thegazette.com*

Get the latest Iowa politics and government coverage each morning in the [On Iowa Politics newsletter](#).

# Exhibit J

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| **ORCUN SELCUK, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**PAUL D. PATE**, in his official capacity as<br>Iowa Secretary of State, et al.,<br><br>Defendants. | CASE NO. _____<br><br>DECLARATION OF<br>**JOEL MILLER**<br>IN SUPPORT OF PLAINTIFFS' MOTION<br>FOR A TEMPORARY RESTRAINING<br>ORDER AND PRELIMINARY<br>INJUNCTION |

I, Joel Miller, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am the County Auditor and Commissioner of Elections for Linn County, Iowa. I have been in this position for over 17 years.

2.      As County Auditor and Commissioner of Elections, I am responsible for, among other things, voter registration and serving as the hearing officer for voter registration challenges.

3.      On October 22, 2024, I received a directive from Iowa Secretary of State Paul D. Pate directing me to require precinct election officials to challenge the ballots of any person appearing on a list of certain registered voters in the County.

4.      The list of challenged registrants in Linn County included 150 individuals who the Secretary of State "conclude[d] there is enough basis for a reasonable person to suspect those on the list are ineligible to vote due to citizenship status."

5.      I reviewed a subset of the 150 registrants to determine if any of the challenged individuals had already voted in the November 5, 2024, federal general election (through in-person absentee voting) or had requested a vote-by-mail absentee ballot. Out of the subset

1

reviewed, fifteen registrants had either already voted or had requested a mail-in ballot. I contacted county and federal law enforcement sources who confirmed that those fifteen registrants are current U.S. citizens.

6. To date, none of the subset of challenged registrants for whom I have sought confirmation of citizenship status have been confirmed as current noncitizens.

7. Other than what is contained in the October 22, 2024, directive, I have received no official or formal guidance from the Secretary of State's Office on how to implement the mandatory voter challenge program.

8. I reviewed a social media post on Secretary Pate's platform purporting to provide clarifying instructions, but I did not view the post as official guidance, and the instructions did not adequately clarify how to implement the October 22 directive.

9. The October 22 directive was in part confusing because officials from the Secretary of State's Office explained via email on August 12, 2024, their apparent position that federal law prohibited states from requiring specific, documented proof of U.S. citizenship at the polls.

10. To date, I have not notified any of the challenged registrants in Linn County that they have been challenged or that they would be required to vote a provisional ballot on Election Day. I have received no guidance on whether to notify any challenged registrants of their status; to the contrary, county auditors were told not to release the names of challenged registrants or other details.

11. Given the lack of clear guidance, I am especially frustrated by the fact that Secretary Pate sent the directive just two weeks before the general election. By October 22, my office had completed the majority of poll worker training and early voting had already begun.

12.     The lack of official guidance is also particularly concerning to me because under Iowa law, county auditors who do not follow the directions of the Secretary of State's Office are subject to consequences including removal from office, fines of up to $10,000, and referral to the Attorney General's Office for criminal prosecution.

I declare under penalty of perjury that the foregoing is true and correct.

Executed 8:15pm CDT on October 29, 2024.

Joel Miller

# Exhibit K

Dear Commissioners and Staff:

This email is being sent as a follow up to this morning's call and provide more information and guidance on processing the identified voters during the challenge process. **The most important thing is every registered voter can vote.**

First, attached is the directive to challenge the voters we spoke about this morning. It will provide a more thorough description of the data and includes relevant legal references. There are ten counties that do not have any voters self-reported as non-citizens. If your county does not have any documents in your folder, there is nothing further you need to do.

(details on downloading list redacted)

We have uploaded the names as well as the total numbers of people identified for each precinct to the FTP site. The data will includes Voter ID#, the name and address of each person, and the date the person last self-reported as a non-citizen to DOT. **IMPORTANT**: Do not release the names or other details publicly. The number of affected voters in your county may be shared, but not any data that could identify the voters — even information that is technically part of their public voter registration record. We are awaiting further guidance from the Attorney General's office on whether the data in the form being provided is subject to open records requirements.

Please provide the following information to your PEOs at their regular training or through a special communication with them prior to election day. You should also prominently make these instructions and the list of voters available in the materials your PEOs will access on Election Day.

*"Before the polls open, all PEOs who will be checking in voters should review the enclosed list of registered voters who have self-reported to the Department of Transportation that they are not a citizen and are currently registered to vote.* **Therefore, you have a duty to challenge the voter under §49.79 and offer the voter a provisional ballot.** *Follow the appropriate procedures for challenging a voter and processing a provisional ballot. While it is not required to complete the challenger statement form as a PEO, you are required to provide the voter with the Statement to Person Casting a Provisional Ballot produced by your e-pollbook software. You should also complete the Non-Citizen Challenge Form provided with this information."*

Attached is a form for PEOs to use if they have to challenge a voter using this process (referenced in the instructions above as the "Non-Citizen Challenge Form"). While Iowa law does not require the PEO to complete a challenger's statement form, this document provides helpful instructions to the PEO and ensures the voter receives accurate information about why they are voting provisionally.

provisionally.

There is a description of what the ASVP Board is allowed to consider during each challenge in Iowa Code §50.22. Because of the nature of this process, our office cannot provide guidance to the ASVP Board on whether to accept or reject provisional ballots that have been challenged due to self-reporting not being a U.S. citizen. Your county attorney should be receiving communication from the Attorney General's Prosecuting Attorney's Training Division regarding this matter.

We appreciate your patience as we navigate this process. We will continue to communicate any updates we have for you as they arise. Please let us know if you have any questions or concerns by contacting ivoters.support@sos.iowa.gov or (515) 725-0172.

Best wishes,

**Bailey Kelley, CERA**

Elections Support Specialist

Office of Iowa Secretary of

State Paul D. Pate

(515) 725-0180

bailey.kelley@sos.iowa.gov



# Exhibit L

# State of Iowa
## Challenger's Statement

*Notice to Challenger: A person may not be challenged for reporting a change of address at the polls or registering to vote at the polls on Election Day as permitted by Iowa law. (Iowa Code 49.79)*

**Voter and Election Information:**

Voter name: ORCUN SELCUK

Election date: 11-5-24

County: WINNESHIEK

Deadline: 12:00 a.m./p.m. 11-12-24 (date)

### CHALLENGER'S STATEMENT - LABEL 1

**Required Challenger Information:**

Challenger name: BEN STEINES

Challenger address: 201 W MAIN ST

DECORAH

Challenger phone #: 563-382-5085

### CHALLENGER'S STATEMENT - LABEL 2

**Reason for Challenge:** (check all that apply)

☒ Is not a United States citizen.    ☐ Is deceased.

☐ Is not a resident at the address where the person is the person is registered.

☐ Has falsified information on a registration form or on a declaration of eligibility.

☐ Was adjudged incompetent to vote.

### CHALLENGER'S STATEMENT - LABEL 3

**Reason for Challenge,** continued:

☐ Is less than 18 years of age on Election Day.

☐ Is not a resident of the precinct where the person is offering to vote.

☐ Was convicted of a felony and voting rights have not been restored.

☐ Voter status is not active (absentee voter only).

### CHALLENGER'S STATEMENT - LABEL 4

**Challenger's Affirmation and Statement:**

I challenge the qualifications of this voter to vote at this election, because of the reason or reasons listed herein.

I am a registered voter in WINNESHIEK County, Iowa. I swear or affirm that information contained in this challenge is true.

I understand that knowingly filing a challenge containing false information is an aggravated misdemeanor. I also understand this challenge will be rejected if it does not include all of the Required Challenger Information.

I understand if I wish to withdraw this challenge, I may notify the precinct election officials at this polling place before the polls close on Election Day, or I may notify the County Auditor in writing before the special precinct board meets at the time of the deadline stated herein.

X _Ben Steines (signature)_
**Challenger's Signature**

**County Auditor's Office use only:**
Keep the original of this form in your office.

Provide notice: If this challenge was made in the Special Voters' Precinct, provide notice of the challenge to the voter. Notice of this challenge was provided to the voter by:

☐ In Person

☒ Mail

☐ Telephone

☐ Fax

Date and time of notice to voter:
10/23/24    10:00 am/pm

Response received from voter:
___/___/___    ___:___ am/pm

Provide details for the reason or reasons checked above:

_____

_____

# Exhibit M

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| **ORCUN SELCUK** et al., | |
| Plaintiffs, | |
| v. | CASE NO. _____ |
| **PAUL D. PATE** et al., | |
| Defendants. | DECLARATION OF **TINGTING ZHEN** IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |

I, Tingting Zhen, declare as follows:

1. The facts contained in this declaration are known personally to me and, if called as a witness, I could and would testify competently thereto under oath.

2. I am an eligible and registered voter residing in Ankeny, Iowa, which is located in Polk County, Iowa.

3. I am a naturalized United States citizen.

4. I moved to the United States in 2018 from China, where I was born.

5. Before obtaining my certificate of citizenship, I was a lawful permanent resident ("LPR").

6. I obtained my current, valid Iowa driver's license while I was still an LPR, on January 21, 2022. My license does not expire until March 30, 2030.

7. I became a United States Citizen on November 13, 2023.

1

8.  I had a naturalization ceremony at the Downtown Library in Des Moines, Iowa, that my husband and our family attended with me, and we went out to dinner to celebrate afterward.

9.  Even though I am married to a United States citizen, it has been a long journey to become a citizen, involving reams of paperwork and included delays resulting from the pandemic. And I had to study for and pass a citizenship exam. But it was worth it to me, and I feel so proud to have become a citizen of this country.

10. I have been especially eager to register to vote, and to vote.

11. I think it is very important to vote as a citizen. Before I was naturalized, I felt like I didn't have a voice in my community, and now I do. This is a country of freedom. That is what voting means to me. Voting means having a voice and it is freedom. I really love that about voting.

12. I registered to vote on September 23, 2024.

13. I learned through news reports that new United States citizens whose Iowa driving records still indicate that they are noncitizens are going to be challenged at the polls, and made to vote a provisional ballot, and that their ballot will not count unless they prove that they are a citizen when they are challenged.

14. On October 30, 2024, I called the Polk County Auditor, and asked if I was on this list. The staff person I spoke with put me on hold for a few minutes, and came back on the phone to tell me that the Auditor's Office could not tell me if I was on the list or not over the phone, and directed me to call the Iowa Secretary of State.

15. I called the Iowa Secretary of State's Office, who also declined to tell me whether I was on the list. They gave me a ticket number, and told me that someone would follow up with me by phone or email.

16. I am feeling shocked and intimidated by all of this. I wonder how, in this country of freedom, can I be identified as a noncitizen when I am a United States citizen? How can I be treated differently, as a citizen, from all other citizens, in whether I can vote a regular ballot, and have my ballot counted?

17. Knowing that I will be challenged is very intimidating to me. I believe that all of us as citizens, whether naturalized or born in this country, should all be treated the same by the government. I believe I should be able to vote with a regular ballot and that my vote should count.

In accordance with 28 U.S.C. § 1746 and under penalty of perjury, I swear that the foregoing is true and correct.

Executed on October 30, 2024 in Ankeny, Iowa

_____
Tingting Zhen

3

# Exhibit N

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| **ORCUN SELCUK** et al.,<br><br>Plaintiffs,<br><br>v.<br><br>**PAUL D. PATE** et al.,<br><br>Defendants. | CASE NO. _____<br><br>DECLARATION OF<br>**MICHAEL BROKLOFF**<br>IN SUPPORT OF PLAINTIFFS'<br>MOTION FOR A TEMPORARY<br>RESTRAINING ORDER AND<br>PRELIMINARY INJUNCTION |

I, Michael Brokloff, declare as follows:

1.  The facts contained in this declaration are known personally to me and, if called as a witness, I could and would testify competently thereto under oath.

2.  I am an eligible and registered voter residing in Davenport, Iowa, which is located in Scott County, Iowa.

3.  I am a naturalized United States citizen.

4.  I moved to the United States in 1997 from Canada, where I was born.

5.  I am a longtime member of the Davenport Community and raised my children here.

6.  Before obtaining my certificate of citizenship, I was a lawful permanent resident ("LPR").

1

7. I obtained my current, valid Iowa driver's license while I was still an LPR, on March 14, 2020. My license does not expire until February 28, 2028.

8. I became a United States Citizen in 2021.

9. I registered to vote shortly after I got my citizenship.

10. I voted in the 2022 election in person at my polling location. I didn't have any trouble in voting then.

11. I went on October 25, 2024 to vote early in the upcoming 2024 presidential election at the Eastern Branch of the Public Library in Davenport, Iowa. The lines were moving quickly, but when it came my time to vote, I provided my driver's license, and the system flagged me for the poll workers. They said I needed to prove I was a citizen. They were able to give me a provisional ballot only. They also gave me a printout explaining why I was given a provisional ballot, which indicated I was being challenged on the basis of citizenship. (Exhibit A).The paperwork indicated that my ballot would be reviewed by a precinct board on November 12, 2024. (Ex. A). It also provided me with a list of options to prove my citizenship to this board. (Ex. A).

12. I then went to the Scott Auditors Office on October 28, 2023 with my passport to prove my citizenship. They photocopied the passport and told me they would review the documentation on November 12, 2024 and either reject or accept my ballot at that time, based on that documentation.

13. They told me they would let me know if they end up not accepting it.

14. I feel frustrated that even though I am a citizen, and I have proved that, that now my ballot still has to go to this board after the election. I feel that I have the right to vote, and to cast a regular ballot, and have it be counted.

In accordance with 28 U.S.C. § 1746 and under penalty of perjury, I swear that the foregoing is true and correct.

Executed on October 30, 2024 in Davenport, Iowa

Michael Brokloff

# Exhibit O

Scott County

2024-10-25 13:54

Statement to Person
Casting a Provisional Ballot

(Give to voter)

Election: November 5, 2024 General Election

Election Date: 11/05/2024

Precinct: Davenport City D62

Name of Voter:
MICHAEL JOSEPH BROKLOFF
Date of Birth: 02/28/1957
Address:
2928 E 44TH CT
DAVENPORT, 52807
Phone (optional):

**Reason for Provisional Ballot:**
Citizen

Decision on Provisional Ballot

Your provisional ballot and qualifications
to vote will be reviewed by the Special
Precinct Board at: 12:00 PM, Tuesday,
November 12, 2024, at 600 W 4th St
Davenport, IA 52801

You have the right and are encouraged to
make a written statement and submit
additional written evidence to the Board
supporting your qualifications as a
registered voter. If you were required to
provide proof of identification and/or
residency, the specific requirements for
doing so is listed below. If your ballot
is not counted, you will be notified by
mail of the reason why it was not counted

X _Nancy J Blake_

Precinct Official Signature

--Photo ID that has not expired and
  contains your name and picture
--Iowa Driver License,
--Out-of-state Driver License,
--Non-Driver ID,
--U.S. Passport,
--U.S. Military ID,
--Employer ID card,
--Student ID issued by an
  Iowa high school or college, or
--Veterans ID card
--One of the following showing your name
  and current address:
--Bank statement, paycheck, utility bill,
  property tax statement, residential
  lease, government check, or
  other government document.

Exhibit P

https://globegazette.com/news/local/govt-and-politics/mason-city-cerro-gordo-noncitizens-voter-rolls-flagged-pate-wedmore-duax/article_44928a50-961c-11ef-a006-c3157b1a3ffc.html

TOP STORY    EDITOR'S PICK

# Some Cerro Gordo County voters flagged by Pate are citizens after all

**Robin McClelland**
Oct 30, 2024



A ballot box is seen during early voting at the Polk County Election Office on Oct. 16 in Des Moines.
Charlie Neibergall, Associated Press

Robin McClelland

Secretary of State Paul Pate released a statement last week saying that **2,022 Iowa** voters have been flagged as self-reported noncitizens. County auditors from Cerro Gordo and Linn County say voters they contacted have confirmed they are U.S. citizens.

Cerro Gordo County Auditor Adam Wedmore said the Secretary of State's Office alerted the his office to six names on the county voter rolls on the list.

"We are working to contact those voters to determine their citizenship status," Wedmore said Tuesday. "So far, we have reached two who have confirmed their citizenship with the auditor's office."

Wedmore

Contributed

Pate's office asked county auditors to challenge the ballots of any voters on the flagged list. All of the individuals involved are legal U.S. residents but could be without full U.S. citizenship, according to Pate. Those voters would be granted a provisional ballot. Pate's office said in a post on X Monday that Iowans on the list to have their ballots automatically challenged can present documents proving their citizenship.

Pate

## People are also reading...

1    **New owner of 29 Iowa ABCM nursing homes has history of regulatory violations**

2    **High School Girls Cross Country: Three area athletes qualify for state cross country meet**

3    **Charles City man arrested for alleged theft from local housing authority**

4    **Ron and Linda Haugen receive Forest City's Hanson Lifetime Achievement Award**

Should Wedmore fail to contact the remaining four flagged voters in Cerro Gordo County, they will be offered provisional ballots and asked to provide citizenship documents at a later date.

Pate said the voters were flagged through the state's transportation department. Federal law prevents election officials from asking about citizenship status, but transportation officials can collect that data. Pate compared the rolls of the two departments to identify the 2,022 flagged voters.

Linn County Auditor **Joel Miller** also has identified voters who are on the list but have citizenship. Miller said the list of 150 voters contained three who had voted already and four who had requested an absentee ballot but not yet voted. Miller forwarded that information to the Linn County Sheriff's Office, which then sent it to federal immigration officers. Federal officers informed the county all four individuals are U.S. citizens.

## Voting security

United States Attorney Timothy T. Duax announced Tuesday that Assistant United States Attorney Daniel Tvedt will lead the efforts of his Office in connection with the Justice Department's nationwide Election Day program for the Nov. 5 general election.

Tvedt has been appointed to serve as the district election officer for the Northern District of Iowa, and in that capacity is responsible for overseeing Election Day complaints of voting rights concerns, threats of violence to election officials or staff, and election fraud, in consultation with Justice Department Headquarters in Washington.

Pate hold an election security press conference at the Iowa National Guard Joint Forces Headquarters at 10 a.m. Wednesday. Partners with Pate's office include the U.S. Department of Homeland Security's Cybersecurity and Infrastructure Security Agency Region 7 Director Phil Kirk, Iowa Department of Homeland Security and Emergency Management Director John Benson, state of Iowa Chief Information

Security Officer Shane Dwyer, Iowa Department of Public Safety Commissioner Stephen Bayens, an Iowa National Guard major and FBI Special Agent in Charge Clint Nafey.

"The state of Iowa is a top-ranked state for election administration and attributes a layered approach to Iowa's success: pre-and post-election audits, paper ballots, physical and cyber security measures, bipartisan teams of poll workers and partnerships with election security partners are all critical components," the Secretary of State's office said in a press release.



By Robin McClelland

City County Government Reporter

# Exhibit Q

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

<u>**Not for Publication**</u>

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE, et al., | Civil Action No. 81-03876 |
| *Plaintiffs*, | <u>**OPINION**</u> |
| v. | |
| REPUBLICAN NATIONAL COMMITTEE, et al., | |
| *Defendants*. | |

<u>**John Michael Vazquez, U.S.D.J.**</u>

      Plaintiff Democratic National Committee ("DNC") alleges that Defendant Republican National Committee ("RNC") violated a consent decree ("Consent Decree" or "Decree") between the parties. The Consent Decree was originally entered in 1982 and was subsequently modified in 1987 and 2009. The RNC denies that it is in violation of the Decree. The DNC seeks the following relief: a finding that the RNC is in contempt, enforcement of the Consent Decree with sanctions, injunctive relief, and an extension of the Consent Decree. For the reasons that follow, the Court denies the DNC's motions for injunctive relief, for contempt, and for sanctions. The Court denies, at this time, the DNC's request to extend the Consent Decree, but the Court will hear the parties after Election Day as to additional discovery on this point in order to develop a full record to determine whether an extension is warranted.

This opinion will first review the current posture of this matter before turning to the background of the Consent Decree and the positions of the parties.  The Court will then analyze the DNC and RNC's arguments in light of the Decree and the applicable law.

## I. BACKGROUND

### A.  Procedural History of the Current Dispute

On October 26, 2016, the DNC requested that the Court issue an order requiring the RNC to show cause why the relief sought by the DNC should not be granted.  D.E. 95.  The DNC included a brief and numerous exhibits in support of its position.  The matter was assigned to the Court[1] on October 27 and, in lieu of issuing the order to show cause, the Court held a telephone conference with counsel for both parties the same day.  Following the conference, the Court issued a scheduling order, which addressed the dates for briefing, discovery requests, and oral argument.  D.E. 102.  The Court also denied the DNC's request for temporary restraints, instead indicating that the Court would rule on the request for injunctive relief following full briefing and argument.  *Id.*

As to discovery, the DNC filed a request on October 27, 2016, seeking one category of agreements and understandings, and six areas of "communications."  "Communications" was to have the "broadest possible meaning and include without limitation, emails, text messages, written correspondence, and any other form of communication, electronic or written."  D.E. 103.  The RNC filed its objections the next day, essentially arguing that the DNC's requests would result in voluminous discovery, were improperly seeking competitive intelligence, and would be unduly burdensome in light of the time constraints due to the approaching Election Day.  D.E.

---

[1] From the inception of the matter in 1981 through the final modification to the Consent Decree in 2009, the case was overseen by the Honorable Dickinson R. Debevoise, U.S.D.J.  Judge Debevoise passed away in August 2015.

107.  On October 31, 2016, the Court held another conference call to address discovery.  The

Court agreed with the RNC that the DNC's broad requests were unworkable in light of the

timeframe in which the Court had to render its decision (i.e. before November 8),[2] but did order

the RNC to produce affidavits from the person or person(s) with knowledge of the events set

forth in the DNC's motion.  D.E. 103.  After reviewing additional submissions from the DNC,

(D.E. 114), the Court ordered additional discovery as to the RNC's purported use of poll

observers.  D.E. 118.

The RNC filed its opposition brief and exhibits on October 31, 2016, to which the DNC

replied on November 3, 2016.  The Court then held oral argument the next day, November 4.

## B.  Background of the Consent Decree

The original Consent Decree was entered in 1982.[3]  The Decree was the result of the

settlement of a lawsuit which claimed that, in connection with the 1981 New Jersey

Gubernatorial election, the RNC and the New Jersey Republican State Committee attempted to

intimidate the minority voters, in violation of the Voting Rights Act, 42 U.S.C. §§ 1971, *et seq.*

*Democratic Nat'l Comm., v. Republican Nat'l Comm.*, 671 F. Supp. 2d 575, 579 (D.N.J. 2009),

*aff'd*, 673 F.3d 192 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 931 (2013).  Specifically, the RNC

sent sample ballots to areas where a large portion of the voters were ethnic minorities, then asked

that the name of each voter whose ballot was returned as undeliverable be removed from New

---

[2] The Court denied the DNC's discovery requests without prejudice, D.E. 113 at 2 n.2., permitting the DNC to renew its requests after Election Day when the constrained timeframe would no longer be an issue.

[3] The plaintiffs to the 1982 Consent Decree included, besides the DNC, the New Jersey Democratic State Committee, and Virginia L. Peggins.  In addition to the RNC, the defendants were comprised of the New Jersey Republican State Committee, Alex Hurtado, Ronald C. Kaufman, and John A. Kelly.

Jersey's voter rolls.  *Id.*  In addition, in an alleged effort of intimidation, the RNC hired off-duty

law enforcement officers to patrol polling places in minority precincts.  *Id.*  The officers wore

armbands that read:  "National Ballot Security Task Force," and some carried two-way radios

and firearms.  *Id.*

The Consent Decree was filed on November 1, 1982.  Section Two of the Decree set

forth the activities of the RNC that were required or prohibited by the agreement.  Among other

things, the RNC agreed that it would it would "in the future, in all states and territories of the

United States":

> (d)  refrain  from  giving  any  directions  to  or  permitting  their
> employees  to  campaign  within  the  restricted  polling  areas  or  to
> interrogate prospective voters as to their qualifications to vote prior
> to their entry to a polling place;
>
> (e) refrain from undertaking any ballot security activities in polling
> places or election districts where the racial or ethnic composition of
> such districts is a factor in the decision to conduct, or the actual
> conduct of, such activities there and where a purpose or significant
> effect of such activities is to deter qualified voters from voting; and
> the  conduct  of  such  activities  disproportionately  in  or  directed
> toward districts that have a substantial proportion of racial or ethnic
> populations shall be considered relevant evidence of the existence
> of such a factor and purpose[.]

1982 Consent Decree at ¶ 2(d)-(e).

The DNC and RNC also agreed that they would, "as a first resort, use established

statutory procedures for challenging unqualified voters."  *Id.* at ¶ 3.  The Consent Decree

recognized that the RNC did not have a "right of control over other state party committees,

county committees, or other national, state and local political organizations of the same party,

and their agents, servants and employees."  *Id.* at ¶ 4.  Nevertheless, the Decree was binding on

the RNC, and its "agents, servants, and employees, whether acting directly or indirectly through other party committees."[4]  *Id.*

In 1987, it came to light that in the previous year's election in Louisiana, a voter challenge list was compiled by sending letters to African-American voters and recording the names of individuals for whom the letters were undeliverable.  *Democratic Nat'l Comm.*, 671 F. Supp. 2d at 580.  Discovery uncovered the fact that the RNC's Midwest Political Director had remarked that the voter challenge list could "keep the black vote down considerably."  *Id.* (citation omitted).  As a result, the DNC and RNC agreed to modify the 1982 Consent Decree.  First, both parties recognized "the importance of neither using, nor appearing to use, racial or ethnic criteria in connection with ballot integrity, ballot security or other efforts to prevent or remedy suspected vote fraud[.]"  1987 Modified Consent Decree.  In addition, the Decree was modified to include a definition of "ballot security" and a preclearance provision.  *Id.* at ¶¶ A, C.

"'Ballot security' efforts" were expressly defined as "ballot integrity, ballot security or other efforts to prevent or remedy vote fraud."  *Id.* at ¶ A.  The RNC was allowed, to the extent permitted by the 1982 consent order, to deploy persons for normal poll functions on election day so long as those deployed did not "use or implement the results of any other ballot security effort[.]"  *Id.* at ¶ B.  There was an exception for ballot security efforts that complied with the Decree and the law, and had been precleared by the Court.  *Id.* at ¶ C.  Otherwise, the RNC could not engage in, assist with or participate in, any ballot security program unless the program was first determined by the Court to comply with the provisions of the consent order and the

---

[4] *See also Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 197 n.2 (3d Cir. 2012) (observing that the "RNC agreed that the RNC, its agents, servants, and employees would be bound by the Decree, 'whether acting directly or indirectly through other party committees.'" (citation omitted)), *cert. denied*, 133 S. Ct. 931 (2013).

applicable law.  *Id.*  Any preclearance decision by the Court was to be determined following twenty days' notice to the DNC.  *Id.*

In 1990, the DNC alleged that the RNC violated the Decree by participating in a program with the North Carolina Republican Party ("NCRP").  *Democratic Nat'l Comm.*, 671 F. Supp. 2d at 581.  In an alleged attempt to intimidate voters, the NCRP sent 150,000 postcards to predominantly African-American precincts warning that giving certain false information to an election official was a federal crime.  *Id.*  In reviewing the DNC's allegations, the Court first determined that the evidence failed to demonstrate that the RNC participated in the NCRP program.  *Id.*  Nevertheless, the Court determined that the RNC violated the Consent Decree by failing to inform state parties of unlawful practices under the Consent Decree and by failing to provide state committees copies of the Decree.  *Id.*  The Court further ruled that the RNC had to provide a copy of the Consent Decree or proper guidance (on how to comply with the Decree) to state parties in the future.  *Id.*

In 2004, Ebony Malone, an African-American resident of Cleveland, brought an enforcement action pursuant to the Decree.  *Id.* at 582.  Malone's claim was that the Decree was violated when letters were sent to voters in precincts with a high concentration of minorities and then a voter challenge list was compiled based on letters that were returned as undeliverable.  *Id.* Following an evidentiary hearing, the Court barred the RNC from using the list for voter challenges and instructed the RNC to inform its agents in Ohio not to use the list for such purposes.  *Id.* at 583.  The Court reasoned that the RNC violated the Consent Decree because it failed to receive preclearance for the voter challenge program, the program targeted areas based on the percentage of minorities in those areas, and a consequence of the program was to deter qualified voters from casting ballots.  *Id.*  Following an emergent application, the Third Circuit

Court of Appeals denied the RNC's request for a stay of the order. *Id.* The Third Circuit then granted the RNC's petition for a rehearing *en banc* and stayed the Court's order. *Id.* However, before the rehearing could occur, the matter was dismissed as moot because Ms. Malone cast her ballot without challenge. *Id.* at 583-84.

In 2008, the DNC brought another enforcement action in light of the hiring of private investigators in New Mexico to examine the backgrounds of various voters in preparation for challenging those individuals' right to vote. *Id.* at 581. The Court rejected the challenge, finding that that the RNC had not participated in, or directed, the ballot security program in question although there may have been misconduct by the New Mexico Republican Party. *Id.* at 582.

The RNC then moved to vacate or, alternately, modify the Consent Decree. *Id.* at 578. Pursuant to Fed. R. Civ. P. 60(b)(5), and following a full evidentiary hearing, the Court declined to vacate the Decree but did agree that modifications were in order. In doing so, the Court carefully reviewed three different types of voter fraud: voter registration fraud, absentee ballot fraud, and in-person fraud. *Id.* at 603. The Court explained that voter registration fraud concerned an individual registering under a false or fictitious name, in-person fraud applied to persons actually casting ballots when they were not legally permitted to do so, and absentee ballot fraud involved the submission of such ballots by a person other than the person qualified to do so. *Id.* Absentee ballot fraud, the Court found, was not readily addressable by pre-election remedies (due to the inability to personally observe the voters casting their absentee ballots) and that the Consent Decree did not prevent the RNC from reporting suspected cases to the appropriate election officials. *Id.* at 603-04.

The Court likewise observed that voter registration fraud normally only occurred in the context of mailing a registration card to the appropriate state agency. *Id.* at 604. Although the

RNC was unable to cite to even one instance of such fraud, the Court recognized that the RNC still had a legitimate interest in ensuring that such fraud did not occur. *Id.* As a result, the Court reduced the preclearance period from twenty to ten days to account for states that permitted registration up to ten days before an election. *Id.* at 604-05.

The Court next turned to in-person fraud, finding that such cases were "extremely rare." *Id.* at 606. In support, the Court pointed to both the majority opinion and dissent in *Crawford v. Marion Cty. Election Bd.,* 128 S. Ct. 1610,[5] 1611 (2008), which involved a challenge to Indiana's requirement that voters prove their eligibility through the production of government-issued photographic identification. *Democratic Nat'l Comm.*, 671 F. Supp. 2d at 608. In short, although the Supreme Court was deeply divided as to the proper outcome, all Justices agreed that there was not even one example of in-person voter fraud in the history of Indiana. *Id.* (citing *Crawford*, 128 S. Ct at 1619 (majority opinion); 128 S. Ct. at 1637 (Souter, J., Dissenting)). The Court concluded that, in the balance, the threat of voter intimidation posed a far greater and real threat to disenfranchising legitimate voters when compared to in-person fraud. *Id.* at 610-13. One example of the scope of the threat of disenfranchisement, pointed to by the Court, was the 2004 case involving Ms. Malone in which the voter challenge list included 35,000 predominately minority persons. *Id.* at 610.

Following its analysis, the Court agreed that modifications to the Consent Decree were appropriate, including the following: (1) only the parties to the Decree could bring an action to redress a violation of the agreement; (2) a reduction in the preclearance period from twenty to ten days; (3) a better definition of "ballot security"; (4) a definition of "normal poll-watch function";

---

[5] The United States Reports citation for *Crawford* is 553 U.S. 181. The Court is citing *Crawford* as Judge Debevoise did before the United States Reports citation was available.

and (5) a definitive expiration date of December 17, 2017, unless the DNC proved in the interim

that the RNC violated the Decree, in which case the Decree would be extended an additional

eight years. *Id.* at 622-23.

The term "ballot security" is defined in the 2009 modification as follows:

> (3) . . . any program aimed at combatting voter fraud by preventing potential voters from registering to vote or casting a ballot. Such programs include, but are not limited to,[6] the compilation of voter challenge lists by use of mailing or reviewing databases maintained by state agencies such as motor vehicle records, social security records, change of address forms, and voter lists assembled pursuant to the HAVA[7]; the use of challengers to confront potential voters and verify their eligibility at the polls on either Election Day or a day on which they may take advantage of state early voting procedures; the recording by photographic or other means of voter likenesses or vehicles at any polling place; and the distribution of literature informing individuals at or near a polling place that voter fraud is a crime or detailing the penalties under any state or federal statute for impermissibly casting a ballot.

*Id.* "Normal poll watch function" is defined as:

> (4) . . . stationing individuals at polling stations to observe the voting process and report irregularities *unrelated to voter fraud* to duly-appointed state officials. Such observers may report any disturbance that they reasonably believe might deter eligible voters from casting their ballots, including malfunctioning voting machines, long lines, or understaffing at polling places. *Such observers may not question voters about their credentials; impede or delay voters by asking for identification, videotape, photograph, or otherwise make visual records of voters or their vehicles; or issue literature outlining the fact that voter fraud is a crime or detailing the penalties under any state or federal statute for impermissibly casting a ballot.*

*Id.* (emphases added).

---

[6] In addition to the unambiguous language used in defining ballot security and normal poll-watch function, the Third Circuit has made clear that the examples used are "non-exhaustive" lists. *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 201 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 931 (2013).

[7] HAVA is an acronym for the Help America Vote Act of 2002, 42 U.S.C. §§ 15301 *et seq.*

On appeal, the Third Circuit upheld the decision. *Democratic Nat'l Comm.*, 673 F.3d 192. The Third Circuit first observed that the "central purpose" of the Consent Decree was to prevent "the intimidation and suppression of minority voters." *Id.* at 203; *see also id.* at 207, 209. Judge Greenaway, writing for the court, further noted that since the inception of the preclearance provision in 1987, the RNC has "never submitted any voter fraud prevention program for preclearance." *Id.* at 212; *see also id.* at 215. The Court of Appeals then indicated that the Decree was intended to address in-person voter fraud, which was a rare occurrence that the RNC could nevertheless address, so long as it abided by the preclearance provision. *Id.* at 212-13. Finally, as to the proximity of actions concerning the Consent Decree to elections, the Third Circuit noted the following:

> The nature and timing of election cycles may cause the need to defend against Decree enforcement suits to arise at inconvenient times, *but resolving those issue before Election Day is crucial to enforcing the Decree by ensuring access to the polls and preventing suppression of minority votes.*

*Id.* at 215 (emphasis added).

### C.  Positions of the Parties

**The DNC's Motion**

The DNC's position is essentially that the campaign of Donald J. Trump, the Republican candidate for President (the "Trump Campaign") has encouraged action that would violate the Consent Decree. The RNC in turn breached the Decree through its general support of the Trump Campaign and its specific assistance to the campaign regarding voter fraud, according to the DNC. Moreover, the DNC alleges that certain persons who are both members of the RNC and state parties have promised action that would violate the Decree.

10

As to the Trump Campaign, the DNC claims that the campaign, including the candidate

himself, has directed his supporters to engage in voter intimidation.  DNC Br. at 5.[8]  As to the

candidate, the DNC indicates that on October 11, 2016, Mr. Trump told a crowd in Pennsylvania

that it is "[s]o important to watch other communities because we don't want this election stolen

from us . . . . And everybody knows what I'm talking about."  *Id.* at 6, DNC Ex. 3.  The DNC

claims that Mr. Trump was referring specifically to Philadelphia, with a focus on African-

American sections of the city.  *Id.*  The DNC indicates that Trump advisers have made similar

public pronouncements.  For example, former New York City Mayor Rudolph Giuliani

reportedly indicated on October 16, 2016, that voter fraud is concentrated in "inner cities" such

as Philadelphia and Chicago; areas in which supporters back Democrats according to Mr.

Giuliani.  DNC Br. at 6, DCR Ex. 23.  The DNC points to a posting on the Trump Campaign's

website titled "Trump Election Observers," as well as the website StopTheSteal.org, as further

evidence that the Trump Campaign is intent on voter suppression efforts.  DNC Br. at 6-7.

StopTheSteal.org is supposedly run by Roger Stone, an alleged advisor to Mr. Trump who was

also involved in the 1981 New Jersey Gubernatorial campaign that led to the Consent Decree in

the first instance.  DNC Br. at 7, DNC Exs. 8 & 9, DNC Elias Ex. 1.

The DNC additionally cites press reports and social media posts which indicate that

certain supporters of Mr. Trump have interpreted the Trump Campaign's statements as a call to

engage in voter intimidation.  For example, one gentleman from Ohio indicated that he was

---

[8] The DNC's initial brief in this matter will be referred to as "DNC Br."  The supporting exhibits
to the brief, attached to a certification of Angelo Genova, Esq., will be referred to as "DNC Ex."
except for those submitted by Marc Elias, Esq., which will be referred to as DNC Elias Ex."  The
RNC's opposition brief will be referred to as "RNC Br.," and its exhibits will be referred to as
"RNC Ex."  The DNC's reply brief and its exhibits, attached to the certification of Mr. Genova,
will be referred to as "DNC RBr." and "DNC REx.", respectively.

planning on going to voting precincts to engage in "racial profiling" to make those voters "a little bit nervous." DNC Br. at 10, DNC Ex. 11. Another man posted on Twitter that he was going to be watching for "shenanigans" and "haul [] away" certain voters. DNC Br. at 10, DNC Ex. 12. The tweet included a picture of a pickup truck with a cage built into the bed. *Id.*

The DNC also asserts that the claim of widespread voter fraud is actually a myth that has been debunked. DNC Br. at 7-8 (citing Lorraine C. Minnite, *The Myth of Voter Fraud* (2010)). The DNC further points to decisions in which courts have ruled, in regard to the state in which the action is brought, that voter fraud is extremely rare and normally used as a pretext for voter intimidation. DNC Br. at 8-9 (citing *Brakebill v. Jaeger*, No. 16-cv-00008 (DLH) (D.N.D. Aug. 1, 2016) (North Dakota); *One Wis. Inst. v. Thomsen*, No. 15-cv-324 (JDP), 2016 WL 4059222 at *2 (W.D. Wis. July 29, 2016) (Wisconsin); *Ne. Ohio Coal. for the Homeless v. Husted*, No. 2:06-cv-896, 2016 WL 3166251 at *28 (S.D. Ohio June 7, 2016) (Ohio)).

As to the RNC's involvement, the DNC makes four arguments: (1) the RNC believes that voter fraud is real; (2) the RNC is working with the Trump Campaign in lock-step; (3) high-level officials in the Trump Campaign indicated that they are working with the RNC as to ballot security; and (4) certain state political officers (who are also members of the RNC) indicated that they will combat perceived voter fraud. DNC Br. at 10-14. As to the RNC's position on voter fraud, the DNC points to the 2012 comments by the RNC's Chairman Reince Priebus which indicated that Republican candidates needed to be one to two percentage points better to offset voter fraud. DNC Br. at 9, DNC Ex. 29. More recently, on October 23, 2016, Mr. Priebus apparently stated on the television news program *Face the Nation* that voter fraud "is real." DNC Br. at 10, DNC Ex. 24.

Concerning the RNC's general synchronization with the Trump Campaign, the DNC again cites to Mr. Priebus' comments. In October 2016, Mr. Priebus reportedly stated that the RNC is "in full coordination" with the Trump Campaign and that the RNC "remain(s) very much involved and together [with the Trump Campaign] in all levels in making these decisions of how best to run the operation across the country." DNC Br. at 12, DNC Ex. 14. The DNC also points to the joint fundraising committee between the RNC and the Trump Campaign and additionally argues that the RNC has commingled its staff and resources with the campaign. DNC Br. at 11-12.

Regarding the RNC's specific coordination with the Trump Campaign on ballot security initiatives, the DNC points to comments made by Vice Presidential candidate Michael Pence during a rally on August 3, 2016. DNC Br. at 11. In response to a question concerning the Democratic Presidential nominee Hillary Clinton "stealing" the election, Governor Pence reportedly indicated that the Trump Campaign and the RNC were working "very closely with state governments and secretaries of states all over the country to ensure ballot integrity." *Id.* (citing *8-3 Replay: Pence Denver Rally Town Hall,* TrumpTube.tv). In further support of its position, the DNC notes that the Trump Campaign manager, Kellyanne Conway, allegedly stated that the RNC and the campaign (along with others) were working together to "monitor precincts" throughout the United States. DNC Br. at 12, DNC Ex. 15.

The DNC contends, moreover, that the Consent Decree is being violated because two members of the RNC, who are also the heads of their respective state party committees, publicly indicated that they are initiating voter fraud programs. The first is Rob Gleason, the chair of the Pennsylvania Republican Party, and the second is Ronna Romney McDaniel, the chair of the Michigan Republican Party. DNC Br. at 13-14. Mr. Gleason reportedly initiated efforts to

recruit poll watchers to work in Philadelphia.  DNC Br. at 13, DNC Exs. 17 & 18.  Ms. Romney McDaniel has apparently announced a "massive statewide anti-voter fraud effort" in Michigan. DNC Br. at 14, DNC Ex. 5.

In light of the foregoing, the DNC contends that the RNC is violating several provisions of the Decree.  DNC Br. at 15.  First, the DNC claims that the RNC has not sought preclearance, as required by the Consent Decree, for any of the stated voter fraud efforts.  *Id.*  The DNC next argues that the Decree has been breached because the voter fraud efforts target areas based on the racial and ethnic composition of the relevant population.  *Id.*  Finally, the DNC asserts that the proposed measures have the effect of deterring qualified persons from voting, thereby running afoul of the Decree.  *Id.*

**The RNC's Opposition**

The RNC responds that it is in compliance with the Consent Decree and that the DNC's arguments lack merit.  *See* RNC Br.  First and foremost, the RNC contends that it has not "organized, participated in, or supported any vote fraud prevention program or ballot security activities."  RNC Br. at 9.  In support of its position, the RNC submitted the declarations of its Political Director, Chris Carr, and six Regional Political Directors.  RNC Exs. B – H.  Mr. Carr states that he received training as to the Consent Decree, that those working for the RNC are aware of the Decree, and that he is unaware of any activities that would violate the Decree.  RNC Ex. B.  All six of the regional directors make declarations in accord with Mr. Carr.  RNC Exs. C – H.

The most detailed description of the RNC's efforts in connection with the Decree is found in the Declaration of John R. Phillippe Jr., the Chief Counsel of the RNC.  RNC Ex. A. Mr. Phillippe notes that the RNC has 168 voting members, including the chairperson of each

state Republican party. *Id.* ¶ 8. Mr. Trump has never been a member of the RNC, according to Mr. Phillippe. *Id.* at ¶ 9.

Mr. Phillippe indicates that he is "responsible for training all RNC personnel on compliance with the Consent Decree." *Id.* ¶ 5. Mr. Phillippe sets forth the steps that he has taken to educate RNC representatives. Among other things, Mr. Phillippe states that the RNC has done the following: (1) May 2016 – the RNC's Counsel Office provided a legal compliance guide, which included information on the Decree, to "all of the RNC's division heads, state party executive directors, and state party chairmen," *id.* ¶ 16 & A-07; (2) June 5, 2015 to April 15, 2016 – the RNC conducted a total of five sessions at its "Campaign Management College" for staff from state parties and various campaigns on "the parameters and restrictions imposed on the RNC by the Consent Decree[,]" *id.* ¶ 17; (3) July 22, 2016 – the RNC provided an orientation for new members, which included a briefing on the Decree, *id.* ¶ 18 & A-08; (4) August 19, 2016 – the RNC's Counsel's Office sent a memorandum to all RNC staff indicating that the RNC would not engage in any ballot security efforts nor provide any resources for such activities, *id.* ¶ 19 & A-09; (5) September 22, 2016 and October 17, 2016 – the RNC Counsel's Office sent guidance to RNC staff, independent contractors, and volunteers as to the parameters of the Decree, *id.* ¶¶ 20-22 & A-10 – A12;[9] and (6) October 2016 – webinar training on the Consent Decree for all RNC political staff and independent contractors, *id.* ¶ 24 & A-14.

Of note, several of the documents attached to Mr. Phillippe's declaration indicate that the RNC was not, and would not be, participating in any poll watching functions. *See id.* & A-10,

---

[9] The October 17, 2016 memorandum to "all staff and independent contractors" reviewed the requirements of the Consent Decree. *Id.* ¶ 22. The recipients were required to sign and return an "affirmation form" indicating that they read the memorandum and would abide by it. *Id.* According to Mr. Phillippe, over 400 recipients did so, which Mr. Phillippe characterizes as the "vast majority" of the recipients. *Id.*

A-ll, A-12, A-13. Yet, according to the information submitted by the DNC, the RNC is currently

engaging poll observers. D.E. 114-1 – 114-3. This information is discussed further below.

Mr. Phillippe also recounts that on October 19, 2016, John Ryder, the RNC's General

Counsel, sent an email to all 168 members that reminded the recipients that they could not use

RNC resources for any activities prohibited by the Decree. *Id.* ¶ 23 & A-13. Mr. Ryder also

encouraged members not to engage in any ballot security activities in any other capacity, for

example, as a state party official, but warned that if the members did so, they were not acting as

agents of the RNC. *Id.*

Moreover, Mr. Phillippe attests that once he learned that Mr. Trump was "likely to

emphasize voter fraud in his campaign," Mr. Phillippe enhanced his training vis-à-vis the

Decree. *Id.* ¶ 5. In addition, he wrote an August 13, 2016 letter to counsel for the Trump

Campaign advising that the RNC strictly complies with the Consent Decree and would not

engage in any ballot security actions. *Id.* ¶ 27 & A-15. The letter also warned that the Trump

Campaign was not an agent for the RNC regarding any ballot security initiatives. *Id.*

The RNC submits that the foregoing efforts, as reflected in Mr. Phillippe's declaration

and supporting exhibits, demonstrate that it has "taken abundant measures to ensure good faith

compliance with the Consent Decree." RNC Br. at 14. In support, the RNC asserts that it

educated the necessary RNC representatives as to the Decree and its contours, took prophylactic

measures to ensure compliance, expressly and proactively informed the Trump Campaign that it

will not partake in any voter fraud measures, and monitored compliance with the Decree. *Id.*

The RNC further decries the evidence submitted by the DNC, arguing that the press

accounts relied upon "contain double and triple hearsay, and are inadmissible and not probative."

*Id.* at 14-15. The RNC asserts that the DNC cannot point to any current, specific prohibited

activities. *Id.* at 15.  The RNC stresses that neither Mr. Trump, his campaign, nor his supporters are subject to the Consent Decree. *Id.* at 15-17.  Mr. Trump, the RNC continues, is not a member of the RNC and has never been authorized to act on behalf of the RNC. *Id.* at 16.

Regarding the joint fundraising committee with Mr. Trump, the RNC responds that it is merely a vehicle by which both can collectively raise money. *Id.* at 18.  Importantly, according to the RNC, each entity receives and gains full control over its share of the proceeds without obligation to spend the funds in a certain manner. *Id.* at 18-19.  The RNC also denies that it is sharing any staff or resources with the Trump Campaign vis-à-vis voter fraud efforts and points out that the DNC provided no evidence to the contrary. *Id.* at 19.

As to Mr. Priebus' comment that the RNC is in "full coordination" with the Trump Campaign, the RNC asserts that is merely evidence of politics rather than misconduct. *Id.* at 19. As to the other comments alleged, the RNC claims that Kellyanne Conway's comments were triple hearsay from a media article. *Id.* at 20.  Moreover, the RNC continues, the DNC failed to indicate that the same article stated that the reporter to whom Ms. Conway made the comments also indicated that Ms. Conway later said that she had been mistaken. *Id.* at 21.  Regarding Governor Pence's statement concerning "ballot integrity," the RNC asserts that it was a spontaneous remark in response to an audience question, it was mischaracterized by the DNC, and that, in any event, Governor Pence was simply mistaken if he was referring to voter fraud efforts with the RNC. *Id.*  Turning to the statements made by the state party chairs in Pennsylvania and Michigan, the RNC represents that such activities are permissible so long as the chairs are acting in their state party capacity as opposed to as an RNC member. *Id.* at 22-23. In support, the RNC argues that the Supreme Court of the United States has made clear that persons may assume different "hats," such as being a national party official while also occupying

a position within the state party.  *Id.* (citing *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 139, 157 (2003), *partially overruled on other grounds*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010)).

The RNC concludes that the DNC fails to establish its right to any of the relief sought. *Id.* at 23-26.

### The DNC's Declarations

After the RNC filed its opposition, the DNC supplemented the record with declarations from three Democratic poll observers.  D.E. 114-1 – 114-3.  The three Democratic observers consisted of a retired Assistant United States Attorney, an engineering and tech consultant, and an attorney who also serves as a judge *pro tem*.  *Id.*  The three indicated that they were assigned to observe early voting in two locations within Nevada at the end of October 2016.  *Id.* Republican poll observers, from the RNC, also worked at the same time as the Democratic observers.  *Id.*  The first Democratic poll observer declared that the Republican observer, K.H., showed her an email indicating that K.H.  was not obligated to tell anyone that she was working for the Republicans.  D.E. 114-1 at 3.  K.H. further noted that she had been trained on poll monitoring rules, and the Democratic watcher saw K.H. take copious notes and fill out an election incident report.  *Id.* at 2-3.  The two other Democratic observers indicated that their Republican counterparts, O.P. and K.H. again, initially stated that they were "Independent" poll observers before finally admitting that they worked for the RNC.  D.E. 114-2 & 114-3.  K.H. also reportedly said that she was told to lie about whom she worked for.  D.E. 114.  In addition,

the two observers also worked with additional Republican observers, C. and J.,[10] who stated that they too worked for the RNC. *Id.*

The DNC then submitted three additional declarations from Democratic poll watchers. D.E. 122-1 – 122-3. The poll watchers consisted of two lawyers and a consultant. *Id.* The three observers also worked in Nevada at the end of October 2016, in connection with early voting. *Id.* The first Democratic observer identified a Republican observer, O.,[11] who indicated that the O. gave wrong information to a potential voter concerning voting by paper ballot. D.E. 122-1 ¶¶ 4-5. The Democratic observer was also informed that O. provided erroneous information concerning where a person could vote early. *Id.* ¶ 6. The second Democratic observer attested that O.P. twice gave voters wrong directions – once concerning a voting location and once regarding voter identification. D.E. 122-3 ¶¶ 4-5. The final Democratic observer noted that she worked with a Republican poll observer, B., who admitted that the RNC -- as opposed to the Trump Campaign -- was running the poll watching operations. D.E. 122-2. As noted, the information from all six Democratic observers conflicts with the RNC's claim that it is not involved in any poll watching functions.

**The RNC's Discovery**

In response to the Court's discovery orders, the RNC produced three declarations on November 2, 2016 and five additional declarations the following day. The November 2 production was comprised of declarations of Mr. Phillippe, Ronna Romney McDaniel, and Robert A. Gleason, Jr., as well as attached exhibits. D.E. 120 – 120-3.

---

[10] C. and J. are the initials for the observers first names as the declarants did not indicate surnames for either. The same is true for any other observer who is identified by a single letter.

[11] Due to the unique nature of O.'s name, the Court assumes that she is O.P.

Mr. Phillippe addressed whether the RNC had any agreements with the Trump Campaign concerning voter fraud, the press statements reportedly made by Governor Pence and Ms. Conway, and remarks by Ms. Romney McDaniel and Mr. Gleason. D.E. 120-1. As to the agreements, Mr. Phillippe attested that none had been located and, to his knowledge, none existed. In completing his due diligence, Mr. Phillippe spoke to each RNC official who had authority to enter into contracts, certain high-ranking members of the RNC's Political Division, and the general counsel of the Trump Campaign. *Id.* ¶¶ 6-7, 9. Mr. Phillippe also performed a search of the RNC's electronic and hard copy files for any such agreements, but none were found. *Id.* ¶ 8.

Turning to Governor Pence and Ms. Conway, Mr. Phillippe personally spoke with each and both indicated that they had no knowledge of any involvement between the RNC and the Trump Campaign as to ballot integrity or poll monitoring activities. *Id.* ¶¶ 12 – 15. As to Ms. Romney McDaniel and Mr. Gleason, Mr. Phillippe contacted counsel for both the Pennsylvania and Michigan Republican Parties. *Id.* ¶¶ 18 – 19. Counsel for each state indicated that the RNC has no involvement in the state committee's poll watching efforts. *Id.*

Ms. Romney McDaniel's declaration indicated that she is the Chairwoman of the Republican Party of Michigan and, by virtue of that position, a member of the RNC. D.E. 120-2 ¶ 2. Ms. Romney McDaniel acknowledged that the state party is engaged in poll watching and ballot security efforts but said that all funding, materials, and training come from the state party, rather than the RNC. *Id.* ¶ 3. Ms. Romney McDaniel stated that the RNC is not involved in the state committee's efforts. *Id.* Mr. Gleason, the Chairman of the Republican Party of Pennsylvania and also a member of the RNC, made attestations similar to those of Ms. Romney

McDaniel. Specifically, to the extent that the state committee is engaged in poll watching activities, Mr. Gleason stated that the RNC is not involved. D.E. 120-3 ¶¶ 5 – 6.

Pursuant to the Court's November 2, 2016 discovery order, and in response to the six declarations of the Democratic poll observers, the RNC submitted five declarations, along with exhibits, on November 3, 2016. D.E. 128 – 128-5. The declarations were from Mr. Phillippe; Peter Graves, the RNC's Regional Political Director in the region covering Nevada; Matt Pinnell, the State Party Director for the RNC; Robert Talbot, the Nevada State Director for the RNC; and Holly Turner, a partner with Stampede Consulting, LLC ("Stampede"). *Id.*

Mr. Phillippe said that it "stood out" to him that the DNC has many attorneys working as poll observers in a particular areas of Nevada. D.E. 128-1 ¶ 9. Mr. Phillippe believes that the Democratic observers are aware of the Decree and are questioning other poll workers in an attempt to find an association with the RNC. *Id.* Mr. Phillippe further attested that his due diligence, including an electronic search of the RNC's emails, failed to reveal any names matching K.H., O.P. or C.[12] *Id.* ¶¶ 11-14. As to Stampede, Mr. Phillippe confirmed that the RNC has contracted with the consulting firm but solely for get-out-the-vote activities limited to a different state in another part of the country. *Id.* ¶ 15. Mr. Phillippe also opined that, in his experience, it is not uncommon for individuals who work or volunteer for a political organization to be confused as to the nature of the organization with whom they are working. *Id.* ¶ 17.

Mr. Graves, Mr. Pinnell, and Mr. Talbot confirmed that the RNC has no poll watching activities underway in Nevada. D.E. 128-2 ¶ 5, D.E. 128-3 ¶ 5, D.E. 128-4 ¶ 7. Ms. Turner acknowledged that Stampede is undertaking poll-watching in Nevada but not in conjunction with

---

[12] Since neither the DNC or RNC knew C.'s last name, the RNC searched for a person named C.S. based on her first name. Ms. Turner's declaration refers to the same C.S.

the RNC.  D.E. 128-5, ¶¶ 7-8.  Ms. Turner added that both K.H. and C.S. are employed with

Stampede.  *Id.* ¶¶ 8-12.  Ms. Turner could not locate anyone named O.P., B., or J. working for

Stampede.  *Id.* ¶ 13.

**The DNC's Reply**

     The DNC replies that its evidence clearly shows that the RNC is involved in ballot

security efforts prohibited by the Consent Decree.  DNC RBr. at 2.  The DNC first notes that five

separate poll workers in Nevada indicated that they are working for the RNC.  *Id.*  The DNC

further claims that while Stampede denies working for the RNC in Nevada, the RNC admits that

Stampede is working for it in some capacity as a contractor.  *Id.*  *See also* RNC REx. 1 (October

18, 2016 FEC filing by the RNC reflecting that has paid Stampede a total of $1,305,000).

According to the DNC, the RNC's use of Stampede as a contractor establishes a violation of the

Decree, assuming that K.H. and C. are actually working for Stampede rather than the RNC.

DNC Br. at 2-3.

     In further support, the DNC again points to the statements of Governor Pence, Ms.

Conway, and Mr. Priebus.  *Id.* at 2-3.  The DNC emphasizes the high rank of each in either the

Trump Campaign or the RNC, and indicates that it is highly unlikely that all three are actually

"mistaken."  *Id.*  The DNC also points to new evidence, that of a high-ranking officer of the

Republican Party of Virginia, who during a poll-watching training session referred to the

involvement of the RNC only to immediately correct himself, reportedly to laughter in the

crowd.  *Id.* at 4, DNC REx. 2.  The DNC claims that another "mistaken" reference to the RNC's

involvement is simply not plausible.  DNC RBr. At 4.

     The DNC also argues that the Trump Campaign is acting as an agent of the RNC because

the RNC is running the campaign's ground game and supplying it with voter data.  DNC RBr. at

5, DNC REx. 3.  At a minimum, according to the DNC, the Trump Campaign is an agent of the

RNC through either apparent authority or authority by estoppel.  DNC RBr. At 7.  As to the state

chairs of Pennsylvania and Michigan, the DNC claims that they are bound by the Decree since

both are also RNC members.  *Id.* at 7-9.  The DNC also points to a memorandum from counsel

for the RNC to all political staff and independent contractors indicating that they can never

remove their RNC "hat" regardless of whether they are working in another capacity.  *Id.* at 9.

## II. ANALYSIS

Consent decrees are generally interpreted pursuant to principles of contract construction.

"[C]onsent decrees are judicial acts, [which] have many of the attributes of contracts voluntarily

undertaken and are construed according to traditional precepts of contract construction."  *Fox v.*

*U.S. Dep't of Hous. & Urban Dev.*, 680 F.2d 315, 319 (3d Cir. 1982) (internal citations omitted);

*see also Miles v. Aramark Corr. Serv., Inc.*, 321 F. App'x 188, 191 (3d Cir. 2009) ("Consent

decrees are analogous to contracts, and thus we interpret them with reference to traditional

principles of contract interpretation." (internal quotation marks omitted)).  Courts "discern the

scope of a consent decree by examining the language within its four corners."  *Harris v. City of*

*Philadelphia*, 137 F.3d 209, 212 (3d Cir. 1998).  A court's "first task in interpreting a consent

decree . . . is to determine whether its terms unambiguously cover the dispute in question."

*United States v. State of New Jersey*, 194 F.3d 426, 430 (3d Cir. 1999).  "In so doing, [the judge]

must not strain the decree's precise terms or impose other terms in an attempt to reconcile the

decree with [the Court's] own conception of its purpose."  *Harris*, 137 F.3d at 212.  Thus, "[t]he

parties are bound by the 'objective definition of the words they use to express their intent.'"

*United States v. State of New Jersey*, 194 F.3d at 430.  The Court will only look to extrinsic

evidence in interpreting a consent decree when a term is ambiguous, in other words, when "it is reasonably susceptible to at least two different interpretations." *Id.*

At the outset, it is important to emphasize that the Trump Campaign is not subject to the Consent Decree unless it acted as an agent or representative of the RNC. The DNC clarified in its reply brief and at oral argument that it was advocating two positions in this regard: first, that the Trump Campaign was an agent of the RNC, and, second, that the RNC was acting in concert with the Trump Campaign. As to the agency claim, the Court finds that the DNC has submitted insufficient evidence to support its position. In addition, the RNC produced documentary evidence from its counsel's office to the general counsel for the Trump Campaign which indicated that the campaign was not an agent of the RNC vis-à-vis ballot security measures. The Court views the actual issue in this case as whether the RNC is working in concert with the Trump Campaign on voter fraud programs. The question is not whether the RNC is working with the Trump Campaign on other campaign strategy and events? They clearly are. Instead, the primary inquiry is whether the campaign and the RNC are operating together in a manner that would violate the Decree. Of course, the RNC's overall relationship with the Trump Campaign may be relevant as to whether they are coordinating on ballot security measures.

For this reason, comments by persons within the Trump Campaign are relevant to the Court's analysis. The Trump Campaign has clearly emphasized voter fraud efforts. Mr. Trump himself has publicly encouraged his supporters to actively fight voter fraud. If the RNC acted in concert with the Trump Campaign on these activities, the RNC would be in violation of the Consent Decree for a number of reasons, chief among them being that the RNC did not seek preclearance of such efforts. The DNC also submitted evidence indicating that at least certain supporters of the Trump Campaign have interpreted the campaign's remarks to take action in a

manner that would violate the Decree, whether it be engaging in racial profiling, making potential voters nervous, or hauling voters away in a cage attached to a pickup truck.[13]

As a result, the Court disagrees with the RNC's claims that Mr. Priebus, Governor Pence, and Ms. Conway's statements are not probative. In addition, as the head of the RNC, Mr. Priebus' statements are not hearsay. *See* F.R.E. 801(d)(2). The statements are also important because of the stature of the speakers – the Vice Presidential candidate, the lead manager of the Trump Campaign, and the head of the RNC. While the RNC argues that such higher-ups may naturally be mistaken because they are removed from the granular details of the day-to-day operations of the campaign, the Court finds this explanation lacking. The Trump Campaign has made combatting voter fraud a central issue, and it is implausible to believe that such high level personnel are unaware of this call to action and any corresponding plans to implement it.

Governor Pence stated that the RNC and the Trump Campaign are working with state committees on "ballot integrity." The RNC's own internal guidance acknowledges that such a term implicates the Consent Decree. *See* RNC Ex. A ¶ 20 & A-10 at 2 ("You may have heard [that] the Consent Decree prohibits the RNC from participating in Election Day Operations (or "EDO"), 'ballot security', or *'ballot integrity'* activities. Whatever the name given to such

---

[13] The Court notes that, unfortunately, such calls for uninformed, vigilante enforcement of voting laws carries with it the very real possibility of subjecting the adherents to legal violations. Among other laws, the Voting Rights Act provides, in part, that "[n]o person . . . shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote[.]" 52 U.S.C. § 10307(b). From the evidence submitted by the DNC, it appears that some individuals who plan on "watching" polls in "certain areas" are not even aware of the law or its contours. Moreover, such broad calls to action, without specific training as to what is legally permissible, creates untrained watchers with no credible guidance. What are they to watch for? Who are they to watch? Where are they to watch? How are they to act when watching? What action are they to take? What action are they to refrain from? To whom are they supposed to report? What is legally permissible? What is unlawful? Without specific guidance, the "watchers" are left to answer these critical questions for themselves.

programs, *RNC employees, consultants, and volunteers are strictly prohibited from engaging them."* (emphases added)).

Ms. Conway's statements were somewhat different. She said that the RNC and the Trump Campaign were working together on precinct monitoring. Such monitoring could implicate the Decree if it involved a ballot security or had a voter fraud component. However, such monitoring could also be entirely permissible if it was comprised solely of normal poll watching functions.

As to Mr. Priebus, he publicly stated in October 2016 that the RNC and the Trump Campaign were working in "full coordination [with the RNC]" at "all levels." The RNC dismisses this statement as mere politicking at a time in which the RNC's commitment to the campaign was being questioned. The RNC may be correct. Yet, if taken literally, such a claim could also indicate that the RNC and Trump Campaign are working in lock-step on all matters, including ballot security initiatives. Mr. Priebus' statement also came *after* Governor Pence's comments concerning ballot integrity. Adding to the mix is Mr. Priebus' statement later in October 2016 that voter fraud "is real." The Court cannot overlook the fact that Mr. Priebus is the Chairman of the RNC. In light of the Consent Decree's prohibitions, the Court finds the foregoing statements probative, both individually and collectively.

However, the critical issue remains whether the RNC has in fact acted in coordination with the Trump Campaign to prevent voter fraud in light of the statements. Putting aside the activity in Nevada, which is discussed separately below, the DNC has been unable to demonstrate such coordination. The Court realizes that given the timing of the motion and

Election Day, only limited discovery was permitted.[14]  However, the discovery thus far produced

by the RNC reflects that it is not working with the Trump Campaign on ballot security measures.

First, no agreements between the two exist as to voter fraud efforts.  In addition, the RNC's

Chief Counsel, Mr. Phillippe, personally confirmed with Governor Pence and Ms. Conway that

neither were aware of any activities with the RNC pertaining to ballot integrity.  Further, the

RNC's counsel informed the Trump Campaign that it will not engage in any such efforts on

Election Day.  Moreover, Mr. Phillippe set forth in great detail, with corresponding exhibits, his

efforts to continually educate representatives of the RNC as to the Decree and its prohibitions.

The Court is aware that recipients of sound legal advice do not always follow the given advice,

but it does appear that Mr. Phillippe has undertaken extensive efforts to ensure that the RNC

does not violate the Consent Decree.

      The DNC also points to the actions of the RNC members, Ms. Romney McDaniel and

Mr. Gleason, who are also the state party chairs of their respective states.  To be clear, if Ms.

Romney McDaniel or Mr. Gleason were engaging in the reported activity on behalf of the RNC,

the RNC would be in violation of the Decree because Michigan and Pennsylvania's voter fraud

measures received no preclearance approval.  Moreover, the press accounts indicate that the

Pennsylvania effort is focused on Philadelphia, at least in part, due to its racial and ethnic make-

---

[14] Due to the limited discovery, and as is discussed further below, the Court is permitting the
DNC to return after Election Day to seek additional discovery.  For example, the DNC posits that
if Mr. Priebus advised the Trump Campaign on ballot security efforts, then the RNC would be in
violation of the Consent Decree.  This is a fair point.  However, based on the evidence currently
before the Court, Mr. Priebus merely stated that he was aware of the Trump Campaign's position
on voter fraud.  Mr. Priebus did not add that he was also advising the campaign how to stop such
perceived fraud.  That being said, the DNC may be permitted to take additional discovery after
Election Day on this issue among others.

up. However, the crucial issue is whether either state director is also acting in his/her capacity as RNC members.

The Court finds, as a matter of law, that neither Ms. Romney McDaniel nor Mr. Gleason are subject to the Consent Decree if they are acting solely in their capacity as state party chairs. The Court notes that the 1982 Consent Decree stated that it was binding on the RNC, and its "agents, servants, and employees, whether acting directly or indirectly through other party committees." *Id.* At first glance, this sentence appears to support the DNC's reading because Ms. Romney McDaniel or Mr. Gleason could be acting as agents of the RNC through their positions in their state committees.

However, the provision is immediately followed by a recognition that the RNC did not have a "right of control over other state party committees, county committees, or other national, state and local political organizations of the same party, and their agents, servants and employees." *Id.* at ¶ 4. All state party chairs are, by virtue of their position, automatically members of the RNC. Thus, the practical effect of the DNC's argument, if accepted, would be that all state party committees are bound by the Consent Decree due their chairs being RNC members. This conclusion would mean that the express acknowledgement that the RNC had no right of control over other "state party committees" would be, at best, meaningless, and at worst, misleading. *See Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163, 169 (3d Cir. 1987) (noting that "a contract should be read so as to give meaning to all of its terms" and "a construction which neutralizes any provision of a contract should never be adopted if the contract can be so construed as to give effect to all the provisions" (internal quotation marks omitted)). Moreover, at the time of the 1982 Decree, only the New Jersey state committee was a party and bound by its parameters. No other state committee has since been added to the Decree.

28

Importantly, the fact that one state committee was bound also supports the conclusion that by using the word "other" to modify state committees, the Consent Decree meant no state committees other than New Jersey.

Notably, Judge Debevoise, who oversaw the Decree from its inception through its 2009 modification, *see* note 1, never interpreted the agreement in the manner proposed by the DNC. First, in 1990, Judge Debevoise found that the RNC was not responsible for the questionable mailings of the North Carolina Republican Party. Instead, Judge Debevoise found that the RNC violated the Consent Decree because it failed to educate the state committees on the terms of the Decree. Similarly, in 2008, Judge Debevoise determined that the RNC was not responsible for the actions of the New Mexico Republican Party. It does not appear that the DNC contested either finding. *See Jaasma v. Shell Oil Co.*, 412 F.3d 501, 509 (3d Cir. 2005) (explaining that when interpreting a contract courts give "'great weight' to the parties' course of conduct in discerning the intent of the parties"). Thus, the Consent Decree has been interpreted, on at least two occasions by Judge Debevoise, to not apply to state committees even though their chairs were also members of the RNC. *See Democratic Nat'l Comm.*, 673 F.3d at 203 ("In reviewing the District Court's opinion and its modifications to the Decree, we do not take lightly Judge Debevoise's nearly three decades of experience presiding over all matters related to this Decree.").

The RNC also represented that when the 1982 Consent Decree was entered, the rule that state chairs automatically became members of the RNC was in effect. D.E. 132-1 ¶ 3. This evidence lends further support to the Court's interpretation. As noted, the Court views the DNC's position, if taken to its logical extreme, to mean that all fifty state chairs are automatically subject to the Decree because they are also members of the RNC. The Court finds

no support in the Decree, or opinions discussing it, for such a broad reading.  To the contrary, as noted, Judge Debevoise expressly rejected this interpretation on at least two occasions.[15]

The issue then becomes a factual inquiry – were either Ms. Romney McDaniel or Mr. Gleason acting in their capacity as RNC members when announcing and engaging in voter fraud efforts in their respective states?  The Court finds that the DNC has not demonstrated that either were acting in their roles as RNC members.  In fact, the DNC's brief merely states that both are RNC members without further analysis.  The RNC, however, presented declarations from both Ms. Romney McDaniel and Mr. Gleason in which they state that they were acting in their capacity as state party chairs, not RNC members, regarding ballot security efforts in their states.  In addition, Mr. Phillippe spoke with counsel for both state parties and each indicated that any state voter fraud effort was separate and distinct from the RNC.  Finally, the RNC presented evidence that its general counsel warned all 168 members, including state chairs, of the parameters of the Decree, encouraged the members not to act contrary to the Decree while wearing a different hat, and notified the members that if they engaged in ballot security efforts while acting in a different capacity they were not doing so on behalf of the RNC.[16]

---

[15] The RNC also noted that the Supreme Court's decision in *McConnell*, 540 at 139, 157, as well as the Federal Election Commission's Advisory Opinion 2003-10 expressly recognize that a person may lawfully assume different roles, and depending upon the role he/she is in, undertake different activities.  The RNC states that both the Supreme Court decision and the Advisory Opinion recognize that the same person may lawfully solicit certain monies if he/she is acting in her state committee role, although the same solicitation would be prohibited if he/she was acting in her national committee role.

[16] As to the DNC's point that the RNC warned its members that it could not wear different hats, the memorandum in question was sent to RNC political staff and independent contractors, persons essentially working full-time for the RNC.  RNC Ex. A ¶ 20 & A-10.  This memorandum was not sent to RNC members.  As noted, different notice was sent to members.  RNC Ex. A ¶ 23 & A-13.

The final area of inquiry concerns Republican poll watchers at early voting sites in Nevada.  The RNC first questions the backgrounds of the Democratic poll observers who submitted the declarations.  As noted, four were attorneys, with one being a retired federal prosecutor and the other also holding the position of judge *pro tem*; one was an engineering and tech consultant; and one was an unspecified consultant.  The RNC suggests that such backgrounds are somewhat suspect, particularly as to the lawyers.  The Court finds this argument to be, at a minimum, unpersuasive and at odds with the RNC's own position.  The RNC in large part relies upon the submissions of its Chief Counsel, Mr. Phillippe.  If the Court accepted the RNC's argument, it appears that the Court would also have to view Mr. Phillippe's representations with a jaundiced eye, perhaps even more so since he is in-house counsel to an actual party in the dispute.  More importantly, it appears to the Court that having persons with professional legal training acting as observers is commendable for several reasons.  When compared with laypersons, attorneys should certainly have a better understanding of the relevant law, of the distinctions between different political committees (such as a national party as opposed to a state party), and of the responsibility and consequences of submitting sworn declarations to the Court.

Turning to the poll watchers, two inquiries arise:  (1) is the RNC engaging persons to engage in poll observations and, if so, (2) are the observers engaging in activity related to voter fraud?  The former is permissible under the Decree so long as it meets the definition of normal poll-watch functions, while the latter is forbidden.  The suspicions of the DNC were heightened because the RNC submitted many exhibits which indicated that the RNC was not involved in any poll watching activities whatsoever.  *See* RNC Ex. A ¶¶ 20-23 & A-10 – A-13.  To be sure, the RNC emphasized that some of the actions it was internally prohibiting were permissible under

the Decree, but it nevertheless directed that no poll observations be undertaken.  Of course, the RNC is free to put greater restrictions upon itself, in an abundance of caution, than those required by the Consent Decree.  Yet, if certain RNC employees or representatives are not following the clear advice of its Chief Counsel, the concerns are obvious – not only as to poll watching but potentially also as to other areas in which legal instruction has been provided.

As to the first inquiry, the DNC presented credible evidence that the RNC is engaging in poll observations in Nevada.  The DNC poll observers identified five separate Republican watchers who stated that they were working for the RNC:  K.H., O.P., C., J., and B.  Importantly, it appears that subterfuge was involved.  O.P. and K.H. first identified themselves as "Independent" observers before acknowledging that they were present on behalf of the RNC.  On another occasion, O.P. stated that she was with a grassroots organization.  B. stated that she was working for the RNC although she had been told to say that she was there on behalf of Trump Campaign.  K.H. further indicated that she was instructed that she did not have to indicate for whom she worked and also stated that she was told to lie about representing the RNC.  As noted, the backgrounds of the Democratic poll watchers inures to the benefit of the DNC.

As to the second question, the DNC presented evidence that at least one of the Republican poll observers, O.P., engaged in conduct that could be construed as related to voter fraud.  O.P. reportedly gave incorrect information to voters on four separate occasions.  The bad advice concerned paper ballots, voting locations, and voter identification.  However, outside of O.P., the only other potentially questionable act arose when K.H. filled out an election incident report.  If the report concerned voter fraud, then it would also violate the Decree.  On the other hand, the Democratic poll watchers did not indicate that the remaining three RNC watchers – C., J., and B. – engaged in any conduct that could be construed as related to ballot security.

The Court first reviews the foregoing analysis and findings in light of the injunctive relief sought. "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt.*, LLC, 793 F.3d 313, 318 (3d Cir. 2015) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir.1994)). To obtain a preliminary injunction, the party seeking relief must show "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Id.* at 318-19 (quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir.2004)). A preliminary injunction will not issue unless all four elements are satisfied. *Id.*

As to the second element, irreparable harm, the United States Supreme Court has recognized that the right to vote is a "fundamental political right." *Reynolds v. Sims*, 377 U.S. 533, 562 (1964) (internal quotation marks omitted). Accordingly, courts have consistently found that a "person who is denied the right to vote suffers irreparable injury." *Fla. Democratic Party v. Hood*, 342 F. Supp. 2d 1073, 1082 (N.D. Fla. 2004); *see also Montano v. Suffolk Cty. Legislature*, 268 F. Supp. 2d 243, 260 (E.D.N.Y. 2003) ("An abridgement or dilution of the right to vote constitutes irreparable harm."); *Cardona v. Oakland Unified Sch. Dist., Cal.*, 785 F. Supp. 837, 840 (N.D. Cal. 1992) (same); *Dillard v. Crenshaw Cty.*, 640 F. Supp. 1347, 1363 (M.D. Ala. 1986) (explaining that infringement on the fundamental right to vote causes irreparable injury that cannot be remedied through monetary damages). That is so because infringement on the right to vote "cannot be alleviated after the election." *Council of Alt. Political Parties v. Hooks*, 121 F.3d 876, 883 (3d Cir. 1997); *see also United States v. Berks*

33

*Cty., Pa.*, 250 F. Supp. 2d 525, 541 (E.D. Pa. 2003) ("The impact of the discouragement of equal participation in the democratic system cannot be redressed by money, or any other remedy[.]").

The third and fourth elements also appear to inure to the benefit of the DNC. As to potential harm to the RNC if the Court enjoined the RNC from engaging in poll watching activities involving voter fraud, the RNC would merely be prohibited from doing what the Consent Decree already forbids. No additional harm, except perhaps reputational, would come to the RNC. And the public interest certainly favors the enforcement of consent decrees and the prevention of potential voter suppression.

Yet, in the Court's view, the injunctive relief sought turns on the first element, that is, the DNC's likelihood of success on the merits. For the reasons stated above, in light of the evidence currently in the record, the Court finds that the DNC has not demonstrated a likelihood of success concerning action taken by the RNC in light of the statements by Mr. Priebus, Governor Pence, Ms. Conway, Ms. Romney McDaniel, or Mr. Gleason. The poll watching activity in Nevada is not as clear. However, assuming that the DNC has shown a probability that it will succeed in demonstrating that the RNC is engaged in poll watching, the DNC has not done the same concerning whether such activity is related to voter fraud or ballot security, which is what the Decree prohibits. As noted, normal poll-watch functions are expressly permitted under the Consent Decree, so proving this fact alone would not entitle the DNC to relief. The Court is sensitive to the DNC's position that such activity is suspicious in light of the RNC's position that it is not engaging in any poll watching, but the Court's only focus is whether the Decree itself is being violated.

At best, the DNC shows a possibility, not a probability, that the poll observers' activities were related to voter fraud. The strongest evidence concerns the statements of O.P., who

allegedly gave potential voters materially wrong information on four occasions.  Even this

evidence, however, turns on O.P.'s intent when she provided the erroneous advice – did she do

so intentionally or was she unintentionally mistaken?  More importantly, even if O.P.'s

statements were intentionally misleading, the Court is unable to infer an overarching program

based on the actions of one person.  Outside of the O.P. examples, the DNC's submissions on

activities related to potential voter fraud are scant.  K.H. reportedly filled out an incident report,

but the Court would have to speculate as to whether the report related to alleged voter fraud.

Critically, three observers who indicated that they worked for the RNC did not engage in any

activities that could be deemed related to ballet security or voter fraud.  As a result, the DNC has

not demonstrated a probability of success on the critical issue – a program related to voter fraud

– and its motion for injunctive relief is denied.

For similar reasons, the DNC's motion for contempt also fails.  Regarding contempt, a

"plaintiff has a heavy burden to show a defendant guilty of civil contempt."  *Quinter v.*

*Volkswagen of Am.*, 676 F.2d 969, 974 (3d Cir. 1982) (quoting *Fox v. Capital Co.*, 96 F.2d 684,

686 (3d Cir. 1938)).  "To prove civil contempt the court must find that (1) a valid court order

existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the

order."  *Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995).  "Those elements

must be proven by 'clear and convincing' evidence, and ambiguities must be resolved in favor of

the party charged with contempt."  *John T. ex rel. Paul T. v. Del. Cty. Intermediate Unit*, 318

F.3d 545, 552 (3d Cir. 2003).  "Substantial compliance with a court order is a defense to an

action for civil contempt."  *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994) (quoting

*General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir.1986)).  Because the DNC

has not shown a reasonable likelihood of success on the merits, it, by definition, has not shown

an actual violation of the Consent Decree by the more exacting standard of clear and convincing evidence. For similar reasons, the Court will deny the DNC's request for sanctions.

Finally, as to the breach of the Consent Decree, the DNC similarly has not met its burden of showing a violation by a preponderance of evidence. Again, the evidence currently in the record at most demonstrates a possible violation. Yet, the Court is cognizant that neither party was permitted to engage in full discovery. The DNC has made a colorable showing of a possible breach. As a result, the Court will deny the DNC's motion to extend the Consent Decree without prejudice at this time. Following the election, the Court will hear the parties as to whether additional discovery[17] is justified and, if so, the scope of the discovery.

### III. CONCLUSION

For the foregoing reasons, the Court denies the DNC's motion for injunctive relief, denies the DNC's motion to hold the RNC in contempt, denies the DNC's request for sanctions, and denies without prejudice DNC's motion to extend the Consent Decree.[18]

An appropriate Order follows.

Dated: November 5, 2016                    *s/ John Michael Vazquez*
At Newark, New Jersey                      JOHN MICHAEL VAZQUEZ
                                           United States District Judge

---

[17] To be clear, the Court is not limiting post-election discovery requests to the events described in Nevada. Based on the evidence currently before the Court, it cannot find that certain statements about coordinated efforts between the Trump Campaign and the RNC were actually implemented. However, the Court is aware that the reason that the evidence is so limited is due to the time constraints that the parties were operating under due to the approaching Election Day and, as a result, limited the discovery that could reasonably be provided. The Court made this point clear in its October 31, 2016 Order. D.E. 113 at 2 n.2.

[18] Although the Court is denying the DNC's current motion for injunctive relief, for a contempt finding, and for sanctions nothing herein prohibits the DNC from making similar motions in the future if, in its view, the DNC believes that such motions are warranted in light of additional information revealed during post-election discovery.

# Exhibit R

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**FILED**

FEB 27 2019

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

TEXAS LEAGUE OF UNITED LATIN          )
AMERICAN CITIZENS, ET AL.,            )
                                      )
        Plaintiffs,                   )
                                      )
V.                                    )      CIVIL ACTION NO. SA-19-CA-074-FB
                                      )
DAVID WHITLEY, in his Official Capacity )
as Secretary of State for the State of Texas; )
ET AL.,                               )
                                      )
        Defendants.                   )

## ORDER

Before the Court are a number of preliminary issues related to protecting the integrity of the

election process and ensuring the Equal Protection of the laws for all Texans. There is unanimity

among the parties, counsel and the Court that non-American citizens are ineligible to vote.

The evidence has shown in a hearing before this Court that there is no widespread voter fraud.

The challenge is how to ferret the infinitesimal needles out of the haystack of 15 million Texas voters.

The Secretary of State through his dedicated employees, beginning in February 2018, made a good faith

effort to transition from a passive process of finding ineligible voters through the jury selection system

in each county to a proactive process using tens of thousands of Department of Public Safety driver

license records matched with voter registration records. Notwithstanding good intentions, the road to

a solution was inherently paved with flawed results, meaning perfectly legal naturalized Americans

were burdened with what the Court finds to be ham-handed and threatening correspondence from the

state which did not politely ask for information but rather exemplifies the power of government to strike

fear and anxiety and to intimidate the least powerful among us.[1]  *See* Attachment A (TX-LULAC

---

[1] *Boustani v. Blackwell,* 460 F. Supp. 2d 822, 827 (N.D. Ohio 2006) (Boyko, J.) ("This Court has personally presided over numerous naturalization ceremonies and has witnessed firsthand the joy of these new Americans and their intense desire to participate in this nation's democratic process. There is no such thing as a second-class citizen

Exhibit 4). No native born Americans were subjected to such treatment. *See* U.S. CONST. amend XIV,

§ 1 ("[N]or shall any State . . . deny to any person within its jurisdiction the equal protection of the

laws."). Out of 98,000 new American voters on the list, thus far approximately 80 have been identified

as being ineligible to vote.[2] Almost immediately upon sending the list, the government had an "oops"

moment, realizing that 25,000 names should not have been included. It appears this is a solution

looking for a problem. Indeed, Secretary of State Whitley has accepted responsibility and apologized

for the failure to seek confirmation of the accuracy, appropriateness, competency and due diligence of

the process before the rollout. Though promising more transparency, the Secretary has resisted

plaintiffs' legal concerns as opposed to entering into an agreed solution precluding further fear and

intimidation. *See* Attachment B (TX-LULAC Exhibit 54); *see also United States v. Florida,* 870 F.

Supp. 2d 1346, 1347, 1348 (N.D. Fla. 2012) (Hinkle, J.) (explaining that Florida election officials

identified only "a small number" of ineligible voters from Secretary of State's list of "180,000

registered voters who he said might be noncitizens").[3] The Florida program, similar in nature to Texas,

was ultimately abandoned by the state. *Florida,* 870 F. Supp. 2d at 1350-51. Here, for the local

officials responsible for implementing the program, it was not a Henry David Thoreau moment

---

or a second-class American. Frankly, without naturalized citizens, there would be no America. It is shameful to imagine that this statute is an example of how the State of Ohio says thank you to those who helped build this country."). I concur. (Biery, J.).

[2]The Bard might say this is much ado about nothing. WILLIAM SHAKESPEARE, MUCH ADO ABOUT NOTHING, act 3, sc.1. On the other hand, for the people who perceive discriminatory impact, it is much ado about their constitutionally protected rights.

[3]As plaintiffs' counsel stated at the preliminary injunction hearing, "[o]n the Florida case, . . . they started at 180,000 identified voters in that state, and by the time they went through all the sifting, they ended up with 85" people who were ineligible to vote. (Docket no. 57, at page 52, lines 12-20); *see also Editor's Note on Nov. 12, 2018 to Story Published in May 2012,* https://www.nbcmiami.com/news/local (last visited Feb. 26, 2019) (explaining that Florida election documents show that initial list of 180,000 names was whittled to only 85 ineligible voters).

("Simplify, simplify.").[4] Rather, the Court heard compelling evidence concerning confusing and contradictory communications from the Secretary of State.

While the Court awaits proposed findings of fact and conclusions of law regarding the preliminary injunction issues, the Court is prepared to address some issues.

Defendants Whitley and Paxton have moved to dismiss, alleging the Court has no jurisdiction and plaintiffs have failed to state a claim. To the extent defendants rely upon state statutes in support of the jurisdictional motion, the Court holds that the United States Constitution trumps state law in appropriate circumstances, this being one. Moreover, given the highly credible evidence presented by plaintiffs, the Court finds overwhelmingly that claims for relief have been properly stated. Accordingly, defendants' motion to dismiss (docket no. 20) is DENIED.

Plaintiffs have also sued Attorney General Paxton, whose only involvement shown thus far is a press release, which the Court finds arguably vituperative in tone but nevertheless states the Attorney General's authority and, therefore, without further proof is within his First Amendment right to free speech. *See* Attachment C (TX-LULAC Exhibit 3). Clearly, this statement is not yelling fire in a crowded theater and therefore not subject to being censured.[5] While the Court would prefer that political rhetoric be newtralized to more civil discourse, Article III of the Constitution bestows no power on the federal judiciary to make wishes come true. Accordingly, plaintiffs' request for relief regarding the press release is DENIED.

The Court awaits final advice from the individual counties which are parties concerning whether they will agree to pause the process, particularly not sending any notice of examination letters without

---

[4]HENRY D. THOREAU, WALDEN 91 (J. Lyndon Shanley ed., Princeton Univ. Press 1971) (1854).

[5]As Justice Oliver Wendell Holmes, Jr. stated in *Schenck v. United States,* 249 U.S. 47, 52 (1919): "The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic."

prior approval of the Court. Local officials can continue to find out if in fact someone is registered who is not a citizen, so long as it is done without communicating directly with any particular individual on the list. In addition, local officials are ORDERED not to remove any person from the current voter registration list until authorized by this Court. As to the first rollout of 98,000, the Secretary of State is ORDERED to tell other counties which are not parties to this litigation, or party counties which will not agree to a pause, not to send any notice of examination letters nor remove voters from registration without prior approval of the Court with a conclusive showing that the person is ineligible to vote.

With reference to the new lists being prepared based on contemporaneous applications for driver licenses and applications to register to vote, the Secretary of State may proceed with the monthly rollouts. However, the Secretary of State is affirmatively ORDERED to advise and direct local voting officials not to send notice of examination letters nor remove voters from registration without prior approval of the Court.

The Court further finds and concludes the Secretary of State, though perhaps unintentionally, created this mess. As Robert Fulghum taught in *All I Really Need to Know I Learned in Kindergarten*, "always put things back where we found them and clean[] up our own messes." ROBERT FULGHUM, ALL I REALLY NEED TO KNOW I LEARNED IN KINDERGARTEN: UNCOMMON THOUGHTS ON COMMON THINGS (Villard Books 1986).

IT IS SO ORDERED.

SIGNED this 22 day of February, 2019.

FRED BIERY
UNITED STATES DISTRICT JUDGE

# Exhibit S



October 31, 2024

# Attorney General Bird Statement on LULAC Suing State for Upholding Election Integrity

**DES MOINES—**Iowa Attorney General Brenna Bird today announced that the League of United Latin American Citizens ("LULAC") is suing the State for protecting election integrity by verifying that voters are citizens.

Attorney General Bird released the following response:

"Iowa law guarantees that every eligible voter can vote and every legal vote will count. But now, with only a few days until the election, and many Iowans already voting, LULAC is trying to derail our election integrity systems to let noncitizens illegally vote. Every noncitizen who illegally votes cancels out an Iowan's valid vote. We won't let that happen. I am fighting to defend our long-standing election integrity laws and ensure Iowans can maintain trust in our elections."

###

## For More Information:

Alyssa Brouillet | Communications Director

515-823-9112

alyssa.brouillet@ag.iowa.gov

« Back

© 2024 State of Iowa Office of the Attorney General. All rights reserved.