# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| ORCUN SELCUK; ALAN DAVID GWILLIAM; TINGTING ZHEN; MICHAEL BROKLOFF; and THE LEAGUE OF UNITED LATIN AMERICAN CITIZENS OF IOWA, on behalf of itself and its members,<br><br>*Plaintiffs*,<br><br>v.<br><br>PAUL D. PATE, in his official capacity as the Iowa Secretary of State; BENJAMIN D. STEINES, in his official capacity as the Winneshiek County Auditor and Winneshiek County Commissioner of Elections; JAMIE FITZGERALD, in his official capacity as the Polk County Auditor and Polk County Commissioner of Elections; MELVYN HOUSER, in his official capacity as the Pottawattamie County Auditor and Pottawattamie County Commissioner of Elections; ERIN SHANE, in her official capacity as the acting Johnson County Auditor and acting Johnson County Commissioner of Elections; and KERRI TOMPKINS, in her official capacity as the Scott County Auditor and Scott County Commissioner of Elections,<br><br>*Defendants*. | Case No. 4:24-cv-00390<br><br>**STATE DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR EXPEDITED DISCOVERY** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................................i

INTRODUCTION ...............................................................................................................................1

BACKGROUND .................................................................................................................................4

ARGUMENT.......................................................................................................................................6

I.    PLAINTIFFS SHOULD NOT GET TO SHORT CIRCUIT ORDINARY PROCEDURE AFTER HAVING WAIVED THEIR STATUTORY BASES FOR EMERGENCY RELIEF AND LOST THE REMAINDER OF THEIR REQUESTED EMERGENCY RELIEF..................................................................................................6

II.    PLAINTIFFS' RENEWED REQUEST FOR EMERGENCY RELIEF—LIKE THEIR FIRST REQUEST—IS FORECLOSED BY THE *PURCELL* PRINCIPLE AND THIS COURT'S PREVIOUS ORDER. ........................................................................................13

CONCLUSION .................................................................................................................................14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Beals v. Virginia Coalition for Imm. Rts.*,
   No.24A407, 2024 WL 4608863 (U.S. Oct. 30, 2024)..................................................................1

*Common Cause Georgia v. Kemp*,
   347 F. Supp. 3d 1270 (N.D. Ga. 2018) ........................................................................................8

*Council on Am.-Islamic Rels.-Minnesota v. Atlas Aegis, LLC*,
   497 F. Supp. 3d 371 (D. Minn. 2020) .................................................................................... 7, 8

*Fish v. Kobach*,
   189 F. Supp. 3d 1107 (D. Kan.) ..................................................................................................7

*Forrah v. United States*,
   282 F.R.D. 442 (N.D. Iowa 2012) ...............................................................................................7

*Luzadder v. Accelerated Servicing Grp., LLC*,
   No. 4:19-CV-00268-RP-RAW, 2019 WL 6293893 (S.D. Iowa Nov. 19, 2019)..........................7

*Maracich v. Spears*,
   570 U.S. 48  (2013) ....................................................................................................................12

*Milligan v. Ottumwa Police Department*,
   937 N.W.2d 97 (Iowa 2020) .....................................................................................................12

*Pub. Int. Legal Foundation v. Boockvar*,
   431 F.Supp.3d 553 (M.D. Pa. 2019) .........................................................................................12

*Purcell v. Gonzalez*,
   549 U.S. 1 (2006) ................................................................................................................. 1, 13

*Rapid Refill, LLC v. JDDK, Inc.*,
   No. C14-0084, 2014 WL 12581758 (N.D. Iowa July 17, 2014) .................................................7

*Reno v. Condon*,
   528 U.S. 141 (2000) ..................................................................................................................12

*Republican National Committee v. Genser*,
   No. 24A408, 2024 WL 467792 (U.S. Nov. 1, 2024) ...................................................................1

*Wachovia Sec. LLC v. Stanton*,
   571 F. Supp. 2d 1014 (N.D. Iowa 2008) .....................................................................................7

**Statutes**

18 U.S.C. § 2721.............................................................................................................................. 11, 12
18 U.S.C. § 2725......................................................................................................................................11
52 U.S.C. § 20507.....................................................................................................................................5
Iowa Code § 22.7 ....................................................................................................................................11
Iowa Code § 321.11 ........................................................................................................................ 11, 12

**Rules**

Fed. R. Civ. P. 4 .......................................................................................................................................9

## INTRODUCTION

This Court denied Plaintiffs' request for emergency relief. Dkt. 31 at 2. This Court detailed five primary reasons for that denial—starting with *Beals v. Virginia Coalition for Imm. Rts.*, No.24A407, 2024 WL 4608863 (U.S. Oct. 30, 2024) and *Republican National Committee v. Genser*, No. 24A408, 2024 WL 467792 (U.S. Nov. 1, 2024), and relying on *Purcell v. Gonzalez*, 549 U.S. 1, 5–6 (2006). This Court agreed with binding Supreme Court precedent that federal judges should be cautious about issuing decisions affecting how the State runs elections on election day as a matter of law—no discovery was requested or needed. Dkt. 32 at 2. Now, Plaintiffs seek via emergency discovery order what was denied in their temporary restraining order and waived from their complaint. *See* Dkt. 40. This Court should deny the renewed request for emergency relief.

*First*, there is no exigency here. Plaintiffs first request for emergency relief was denied at 4 p.m. on Sunday, but they waited until almost the close of polls to file their second emergency motion. *See id.* Plaintiffs' claimed exigency—resolving ballots challenged during the election—will be resolved or moot by the time this response is filed. State Defendant is working around the clock to deal with these sequenced emergency motions but are hard pressed when this emergency relief that could have been filed earlier is filed at 7:00 p.m. on election day itself.

*Second*, Plaintiffs waived their claim or this court denied it in the TRO denial. Oddly, Plaintiffs never state what claim their discovery relates to. One ground of relief that Plaintiffs sought in their complaint included "Public Disclosure of Voter Registration Activities." Dkt. 1 at 29. That was under Count Seven, which related to "Violation of the National Voter Registration Act." *Id.* Plaintiffs affirmatively and strategically waived their NVRA claim for purposes of the emergency relief they sought. *See*, *e.g.*, Dkt. 21 at 1, 5. They now renew the relief they waived on an emergency basis restyled under a different emergency basis. Also, the relief Plaintiffs seek is like the sixth form of relief sought in the since-denied temporary restraining order, which included ordering "all Defendants to take all

1

such steps as are necessary to alert all individuals on the list of Affected Voters and the public that any notice letters sent to pursuant to an Affected Voter's status are rescinded" among other actions. Dkt. 9 at 2.

Unsatisfied with this Court's denial of the requested emergency relief and their own affirmative NVRA waiver—and despite the problems with disclosure being briefed before this Court and forfeited by Plaintiffs—Plaintiffs now return for a second bite at the emergency relief apple. Dkt. 40. Having been denied emergency relief on the merits, Plaintiffs repackage their request as emergency discovery. But there is no request for emergency relief pending—this Court denied such relief. And nothing in the rules warrants emergency discovery regarding non-party voters.

On the merits, State Defendant laid out the disclosure issues under both State and federal law with the list that Plaintiffs now seek. *See* Dkt. 14-1 at 26–28. Plaintiffs did not respond to this argument in either their reply or their supplemental brief. Dkt. 21; Dkt. 30. Defendant raised the disclosure issue at the temporary restraining order hearing and offered a colloquy with the Court, which the Court deemed unnecessary at the time and which was not raised by Plaintiffs' rebuttal. *See* Dkt. 28 (notice of hearing; as Plaintiffs declined to file an emergency appeal State Defendant has not yet asked for or received a transcript). This issue is either forfeited or waived when it comes to the emergency consideration that Plaintiffs now seek, again.

*Third*, *Purcell* applies to this renewed relief sought via discovery motion. Indeed, *Purcell* counsels federal courts not to issue relief unless it is "entirely clear" on the eve of election day. Dkt. 32, at 14 (quoting *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring)). While a more complete timeline will be recounted below, it is important to highlight the prejudice the State now faces—as two constitutional offices, the Secretary of State and Attorney General's Office with important responsibilities on election day now must divert time and resources to respond to an emergency motion filed seeking relief this Court already denied on an emergency basis. Plaintiffs

baselessly contend that *Purcell* does not apply to discovery motions relating to this newly styled claim for relief that can be found in their complaint and their request for emergency relief. But calling the relief "discovery" is not a get-out-of-*Purcell* free card.

*Fourth*, the emergency circumstances Plaintiffs rely on—challenged ballots before the end of election day—were, at the time of filing, almost over. Plaintiffs' relief was denied on November 3. State Defendant immediately asked for information about whether Plaintiffs would emergency appeal—to which no response was offered until 2:53 p.m. on November 4, when State Defendant received a preservation letter demanding documents be preserved, among other demands. *See* Ex. A, Ex. B. State Defendant reminded Plaintiffs that, having lost their request for emergency relief, State Defendant had 60-days from waiver of service to answer or move to dismiss. *See id.* Besides in their denied motion for a temporary restraining order, at no point before noon on November 5—election day—did the emergency demand for discovery come. *See id.* State Defendant reminded Plaintiff about the timing and the availability of resources for county auditors or voters that were confused. At Plaintiffs demand, Plaintiffs and State Defendant video conferenced at 3:00 p.m. During that conference at which Plaintiffs explained the basis for which they would seek an emergency discovery motion, State Defendant expressed concern that this motion for expedited discovery is improper. Plaintiffs filed their motion at 7:00 p.m. on election day, seeking immediate relief.

Plaintiffs attach to their emergency motion a declaration from one individual who is not a plaintiff and who successfully cast a ballot, not provisional, that will be counted. *See* Dkt. 40-4 ¶ 13. Those extra steps to vote are not ideal but are the consequence of USCIS continuing to refuse to hand over the complete and correct list that they have by election day. That one successful voter cannot be the basis for good cause for emergency relief.

And Plaintiffs contend that "The Attorney General's Office indicated that some documents, including particularly the list of affected voters, already exist and would not present a burden to

3

produce, but that the Secretary's communications would have to be collected." Dkt. 40-1 at 5. There must be some confusion. When asked directly if the State Defendant thought that producing these documents would be burdensome or create prejudice, counsel answered, "Yes." Then, he explained in detail why the discovery request is burdensome and prejudicial—and that the work already spent dealing with this motion today imposes a cost on the people of Iowa who deserve both their Secretary of State and Attorney General's Office to be focused on the efficient and secure election rather than responding to meritless motions relating to emergency relief that has been denied.

And Plaintiffs also contend that the State Defendant is violating the Court's denial of temporary relief. Dkt. 40-1 at 4. Not so. While there are always issues that arise during the election, the process and procedure has been, to the State Defendant's knowledge, consistent with what the Court explained in its Sunday order.

Finally, by the time Plaintiffs filed, election day was almost over. Indeed—the supposed relief sought is not even possible to produce at this point before polls close. To the extent there is confusion or are questions, the Secretary of State and local election officials are working around the clock to ensure that those questions are answered. This Court was correct when it explained that "other efforts to confirm citizenship"—like the relief asked for here—"would engender more confusion than it resolves." Dkt. 32 at 14.

This Court should deny again the unwarranted emergency relief filed not only on the eve of election day but on election day eve.

**BACKGROUND**

Around 4 p.m. on November 3, this Court denied Plaintiffs' motion for temporary restraining order and preliminary injunction. Dkt. 32. Plaintiffs informed State Defendant around 3 p.m. on November 4 that they would not appeal and sent a document preservation demand letter. *See* Ex A; Ex. B.

At 7 p.m. on November 5—one hour before precincts closed on Election Day, and more than 48 hours after this Court denied Plaintiffs' first request for emergency relief—Plaintiffs renewed their request for emergency relief, characterizing it now as an emergency motion for expedited discovery. Dkt. 40.

Count Seven of Plaintiffs' complaint alleged the Secretary violated the National Voter Registration Act, 52 U.S.C. § 20507(i), by "refusing to provide records with the list of voters identified as potential non-citizens within a reasonable time period." Dkt. 1 at ¶ 151. Plaintiffs thus requested the Court to order that "the requested records must now be produced immediately." Dkt. 1 ¶ 152.

In their reply in support of injunctive relief, Dkt. 21 at 1, 5, and at the November 1 motion hearing, Plaintiffs waived their statutory arguments for purposes of seeking emergency relief. This Court reported Plaintiffs' waiver as Plaintiffs having "wisely conceded that the NVRA does not provide a basis for injunctive relief." Dkt. 32 at 14.

Plaintiffs then elected not to appeal this Court's denial of their motion for injunctive relief.

At noon on Election Day, Plaintiffs for the first time alerted State Defendant that they would immediately demand emergency discovery when Plaintiffs' counsel e-mailed State Defendant's counsel demanding the Secretary turn over the requested records immediately. Ex. A. In particular, Plaintiffs requested:

> (a) the Secretary's list of voters, including the counties in which they reside and their contact information; (b) the directions the Secretary has issued to county commissioners charged with implementing his directive; and (c) any further guidance the Secretary has issued to county commissioners as it relates to the procedures for determining a voter's citizenship, such as what documentation will be deemed adequate.

Ex. A. Plaintiffs charged that the alleged exigency continues through November 12, and thus supports their request for expedited discovery. But because State Defendant has 60 days from date of service to file a responsive pleading, and because the Secretary and Secretary's counsel are busy facilitating the election on election day, and because the exigency of the Election has effectively passed, State

Defendant declined to provide the requested documents in the requested emergency manner. Ex. A. State Defendant instead reserved final determination on the document request until the appropriate time. Ex. A ("To the extent [Plaintiffs] wish to engage in discovery in the normal course [State Defendant] can discuss that at the appropriate time, assuming that if [State Defendant] move[s] to dismiss the Court denies [State Defendant's] motion.").

At 7:00 p.m. on election day, Plaintiffs moved for expedited discovery. Dkt. 40. Citing "developing facts on election day," which includes evidence of one non-party voter who initially had their ballot challenged, then provided evidence to the county auditor, then had their ballot counted, *see* Dkt. 40-4, Plaintiffs allege a need for expedited discovery about the voters on the Secretary's list and the procedures being used to assess citizenship of non-party voters. Plaintiffs also attach declarations from two attorneys either representing or working for the Iowa Democratic Party, who are not alleged to be on the list, who called various county auditor's offices and the Secretary's office seeking information about how the conduct of elections and declare they received differing guidance from different officials. Dkt. 40-2; Dkt. 40-3.

Plaintiffs' emergency request provides no evidence relating to any named Individual Plaintiff nor any of Plaintiff LULAC's members. Put differently, Plaintiffs provide no evidence that any Plaintiff has not had their vote counted if they provided timely evidence of citizenship status. *See* Dkt. 32, Order denying TRO, at 15 ("Here, the restrictions are not so severe in and of themselves to trigger the higher standard of scrutiny because: (1) . . . many of the voters on [the Secretary's] list of 2,176 will be entitled to vote a regular, non-provisional ballot; and (ii) those who are required to vote provisionally will have their votes counted if they provide timely evidence of citizenship status.").

## ARGUMENT

**I. PLAINTIFFS SHOULD NOT GET TO SHORT CIRCUIT ORDINARY PROCEDURE AFTER HAVING WAIVED THEIR STATUTORY BASES FOR EMERGENCY RELIEF AND LOST THE REMAINDER OF THEIR REQUESTED EMERGENCY RELIEF.**

Plaintiffs already lost their request for emergency relief. This Court need not entertain a second such request when the exigency of the upcoming election is almost passed, particularly when Plaintiffs

6

renew their request on a ground they already waived. Having briefed and argued this matter once already on an expedited timeline, State Defendant should be allowed the proper time under the Rules to file a responsive pleading. Discovery should be conducted on an ordinary timeline.

Plaintiffs argue a good cause standard governs the propriety of such emergency discovery. Dkt. 40-1 at 5–6. But none of the cases support a finding of good cause here, five days after service was waived, two days after injunctive relief was denied, and nearly two months ahead of Defendant's responsive pleading deadline. The first case Plaintiffs cite involved a need for early, expedited discovery to aid service of process; plaintiff there established a need for discovery to locate the defendant. *Luzadder v. Accelerated Servicing Grp., LLC*, No. 4:19-CV-00268-RP-RAW, 2019 WL 6293893, at *1 (S.D. Iowa Nov. 19, 2019). *Luzadder* is of course inapposite here. Four other cases they cite involved expedited discover in aid of a pending preliminary injunction motion. *Rapid Refill, LLC v. JDDK, Inc.*, No. C14-0084, 2014 WL 12581758, at *1 (N.D. Iowa July 17, 2014); *Wachovia Sec. LLC v. Stanton*, 571 F. Supp. 2d 1014, 1050 (N.D. Iowa 2008); *Council on Am.-Islamic Rels.-Minnesota v. Atlas Aegis, LLC*, 497 F. Supp. 3d 371, 380 (D. Minn. 2020); *Fish v. Kobach*, 189 F. Supp. 3d 1107, 1112 (D. Kan.), aff'd, 691 F. App'x 900 (10th Cir. 2016), and aff'd, 840 F.3d 710 (10th Cir. 2016), and order enforced, 294 F. Supp. 3d 1154 (D. Kan. 2018). But Plaintiffs have already lost their request for emergency relief. One of those three cases, *Atlas Aegis, LLC*, also allowed discovery to aid plaintiffs in identifying the as-yet-unknown defendants, which is not the case here either. 497 F. Supp. 3d at 380. And another case they cite involved a defendant being allowed to seek reciprocal expedited discovery because the plaintiff there was already granted expedited discovery relating to the court's determination of the already-filed motion to dismiss. *Forrah v. United States*, 282 F.R.D. 442, 445 (N.D. Iowa 2012). But here, because it is just six days after Plaintiffs filed suit, there is no pending motion to dismiss. Finally, Plaintiffs rely on an election case where—unlike here—plaintiffs received their requested emergency injunctive relief, so the Court then granted expedited discovery to aid in the trial

7

on the merits. *Common Cause Georgia v. Kemp*, 347 F. Supp. 3d 1270, 1299 (N.D. Ga. 2018). That is not this case.

In all events, there is no good cause here because at least four of the five common factors courts consider when evaluating "good cause" for expedited discovery support denying the expedited relief: (1) the motion for injunctive relief was already denied, (2) the purpose of the request does not relate to any Plaintiff, (3) the request is about as far in advance of the usual discovery process as possible with this suit being less than one week old, and (4) the burden of compliance is great given the lack of any meritorious reason for disclosure. *See Atlas Aegis, LLC*, 497 F. Supp. 3d at 380 (detailing common factors).

1. *The motion for injunctive relief was already denied.*

On October 30, Plaintiffs sued the Secretary of State, raising multiple constitutional and statutory counts. Count 7 demanded that "the requested records must now be produced immediately." Dkt. 1 ¶ 152. On October 31, five days before the election, Plaintiffs moved for emergency injunctive relief. Dkt. 9-1.

State Defendant opposed the request for emergency relief, in part arguing that disclosure of the information Plaintiffs demanded the Secretary to disclose would violate State and federal law. Dkt. 16 at 21–23. In their reply, not only did Plaintiffs fail to respond to that merits argument, but they expressly waived any emergency relief based on their statutory claims, relying instead only on constitutional grounds for their desired emergency relief. Dkt. 21 at 1, 5. This Court then denied the motion. First, the Court recognized Plaintiffs "wisely conceded" that their statutory claims do not provide a basis for emergency relief. Dkt. 32 at 14. Then the Court rejected their constitutional claims, reasoning that "Plaintiffs have not shown a sufficient likelihood of success on the merits to warrant injunctive relief." Dkt. 32 at 14.

Now Plaintiffs seek emergency disclosure of certain documents, including the Secretary's list of self-identified non-citizen registered voters and their personal contact information, as well as any direction and guidance the Secretary has had with county commissioners on how to administer the election in a way to ensure no noncitizen may cast a ballot. Seemingly the hook for such request is Count 7 or some other statutory Count, especially given that Plaintiffs were determined to lack a likelihood of success on the merits as a matter of law as to each of their constitutional claims. But Plaintiffs waived any reliance on those statutory claims when seeking emergency relief.

The exigency is over. Today is election day. Any person on the list who decided to vote in this election would have received notice of any ballot challenge by 8 p.m. tonight when precincts closed. Plaintiffs assert the exigency continues through November 12 at noon, when ballot challenges must be resolved.

    2.    *The purpose of the request does not relate to any Plaintiff.*

Disclosing to Plaintiffs the names on the list and their contact information is not justified as related to the denied emergency relief and is not germane to Plaintiffs' claims for relief. The Individual Plaintiffs do not face ballot challenges. *See* Dkt. 32 at 3. To the extent any of Plaintiff LULAC's members face ballot challenges, LULAC already has their contact information and vice versa. Those members can contact LULAC for assistance, or LULAC can send a notice out to its full membership list. Any non-party facing a ballot challenge may cure by providing evidence of their citizenship. More, this is not a class action; non-party rights are not represented by Plaintiffs in this case. Plaintiffs contend their discovery requests are narrow—but their discovery is broad enough to be unrelated to relief for these Plaintiffs in this case.

    3    *The request is about as far in advance of the usual discovery process as possible with this suit being less than one week old.*

State Defendant has 60 days from the date Plaintiffs requested a waiver of service to answer or move to dismiss. Fed. R. Civ. P. 4(d)(3). He waived service on October 31 and thus has until

9

December 30 to answer or move to dismiss. Dkt. 2. Demanding expedited pre-answer discovery 3 business days after suing, and 2 days after losing the emergency motion, is far from proper procedure. And demanding that senior members of the Secretary of State's team divert resources to trawling through their emails during the process of overseeing the election and its aftermath is a harsh burden to impose unless absolutely justified. If allowed, it would in effect grant in part Plaintiffs' first request for emergency relief.

"Expedited discovery' is not a backdoor means for relief once a plaintiff loses a motion for temporary restraining order and preliminary injunction. Plaintiffs should not get to file a second motion seeking emergency relief by simply characterizing it as a discovery motion instead of a motion for injunctive relief. The requested relief operates the same: either State Defendant is ordered to disclose certain documents, or he is not.

In sum, Plaintiffs' requested emergency discovery would short circuit the ordinary course of litigation. This Court should not give them a second bite at the apple.

4.     *The burden of compliance is great given the lack of any meritorious reason for disclosure.*

The burden of compliance on State Defendant would be severe. Plaintiffs demand discovery responses within less than 24 hours or, in some cases, within 48 hours, while the Secretary is busy conducting the election. Worse, Plaintiffs' renewed emergency relief still demands the Secretary to release information that is protected under state and federal law. This Court should not force such a severe burden on Plaintiffs who waited more than 48 hours after having their injunctive relief denied to even file such request.

Plaintiffs again ask Defendants to release the list of self-identified noncitizen voters despite that list being protected and confidential information. Not only did Plaintiffs waive their request for emergency production of these documents and otherwise lose the remainder of their first request for emergency relief, but releasing the requested information would violate State and federal law. The information here was received from the Department of Transportation subject to various memoranda

of understanding both with the Secretary of State's office and with the federal government. So this Court should not order Defendants to release that information.

Iowa Code makes all Iowa DOT records available for public inspection, except those which are made confidential, and which are not permitted to be open. *See* Iowa Code § 321.11. That section goes on to state that "personal information shall not be disclosed subject to 18 U.S.C. § 2721 unless the person whose personal information is requested has provided express written consent allowing disclosure." *Id.* Under both Iowa Code section 321.11 and 18 U.S.C. section 2721, "personal information" is defined as "information that identifies a person, including a person's photograph, social security number, driver's license number, name, address, telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status or a person's zip code." 18 U.S.C. § 2725; Iowa Code § 321.11(2). Personal information may be given only to an officer or employee of a law enforcement agency or an employee of a federal or state agency or political subdivision acting in their official capacity, or to the Department of Inspections, Appeals and Licensing for purposes of investigating. Iowa Code § 321.11(3).

Iowa Code section 22.7(66) creates a privilege for personal information contained on electronic driver's license or nonoperator's identification card records. That is because that information is provided by the licensee or card holder to the department of transportation "for use by law enforcement, first responders, emergency medical service providers, and other medical personnel responding to or assisting with an emergency." The requested information is from the department of transportation, relating to information on their drivers' licenses, and is "for use by law enforcement." is very straightforward in its protection of personal information provided to the Iowa DOT for purposes of a driver's license or other identification document.

Iowa law makes clear that the Iowa DOT may not provide personal information to anyone outside of government without that persons' express written authorization. *Milligan v. Ottumwa Police Department* held that because the personal identifying information sought by the citizen came from the vehicle registration and driver's license database, its public disclosure was "presumptively prohibited

11

under the [Drivers Privacy and Protection Act] and Iowa Code § 321.11.", 937 N.W.2d 97, 99–100 (Iowa 2020), *as amended* (Jan. 21, 2020).

As noted in *Milligan*, the federal Drivers Privacy and Protect Act ("DPPA") prohibits a state department of motor vehicles from "knowingly disclosing or making available to any person or entity personal information about any individual obtained in connection with a motor vehicle record." 18 U.S.C. § 2721(a); *see also Maracich v. Spears,* 570 U.S. 48 57, 133 (2013) (citing *Reno v. Condon*, 528 U.S. 141, 144 (2000)). The federal definition of personal information matches Iowa Code section 321.11.

While there are no cases interpreting that federal law in Iowa or our home circuit, a case out of the Middle District of Pennsylvania is highly informative. In *Public Interest Legal Foundation v. Boockvar*, the Foundation sued Pennsylvania state officials seeking the production, under the National Voter Registration Act of records documenting that noncitizens were registering to vote through the Pennsylvania Department of Motor Vehicles due to a "glitch" in their system which allowed noncitizens to register when the renewed their licenses. *Pub. Int. Legal Foundation v. Boockvar*, 431 F.Supp.3d 553, 556 (M.D. Pa. 2019). The court first found that the NVRA record disclosure provision was not limited to information related to the death or change in residence of a registrant. *Id.* at 561. Then it explained that the requestor had identified information which was subject to disclosure under the NVRA. *Id.* Given those findings, the court held the DPPA barred disclosing that protected information. *Id.* at 562–64.

In sum, like the records requested in *Boockvar,* the records compiled by the Iowa Secretary of State involved an analysis matching noncitizen driver's license number, including the indication that the individuals attested to not being a citizen, against the driver's license numbers of registered voters. These records are protected under DPPA against any requests, whether made as a Freedom of Information request or under the disclosure provision of the NVRA. Iowa's DOT code has a matching protection for personal information obtained by the DMV in issuing a driver's license which gives the same protections at the state level.

Plaintiffs' requested emergency discovery would violate both State and federal law. At the least, there are no grounds to compel the State to engage in this discovery *now* without giving the Court

the benefit of time to consider the request's propriety—outside of the procedural impropriety at issue and explained elsewhere in this brief.

## II. PLAINTIFFS' RENEWED REQUEST FOR EMERGENCY RELIEF—LIKE THEIR FIRST REQUEST—IS FORECLOSED BY THE *PURCELL* PRINCIPLE AND THIS COURT'S PREVIOUS ORDER.

"[C]ourt orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell*, 549 U.S. at 5. And this Court already applied the *Purcell* principle to this case in denying Plaintiffs' first request for emergency relief, determining that the principle "weighs heavily against injunctive relief." Dkt. 32 at 11; *id.* at 2 ("Like *Beals, Genser* counsels the Court to act with great caution before awarding last-minute injunctive relief into how Iowa officials handle election issues."). Plaintiffs contend that *Purcell* does not apply to the emergency relief that they seek on the eve of election day but have no citation for that proposition. This Court should again decline their invitation to insert itself into the election here.

But here we are on election day. And today, Plaintiffs return to this Court with a second emergency request that the Court order the Secretary to release the names on the list and related documents—phrasing it now as a request for emergency discovery instead of a request for TRO or preliminary injunction. Such semantics should not evade proper procedure. The effect of their second request is the same as the first request. They waived the first request in part. Then this Court denied it, relying on the *Purcell* principle and the U.S. Supreme Court's repeated cautionary warning for courts not to issue orders as an election draws near. This Court declined to grant Plaintiffs their request relief "into how Iowa officials handle election issues." Dkt. 31 at 2.

After waiving their first emergency claim for production of the requested records, Plaintiffs do not get a second bite at the apple. Ordinary principles of waiver, party presentation, and *Purcell* roundly reject such a renewed emergency request.

## CONCLUSION

For these reasons, Defendants respectfully request that Plaintiffs' request for emergency discovery be denied.

Respectfully submitted,

BRENNA BIRD
Attorney General of Iowa

/s/ *Eric Wessan*
Eric Wessan
*Solicitor General*
Patrick C. Valencia
*Deputy Solicitor General*
Breanne A. Stoltze
*Assistant Solicitor General*
Iowa Department of Justice
Hoover State Office Building
Des Moines, Iowa 50319
(515) 823-9117 / (515) 281-5191
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov
breanne.stoltze@ag.iowa.gov

ATTORNEYS FOR STATE DEFENDANT

*Original filed electronically.*
*Copy electronically served on all parties of record.*

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served on counsel for all parties of record by delivery in the following manner on November 5, 2024:

☐ U.S. Mail          ☐ FAX
☐ Hand Delivery      ☐ Overnight Courier
☐ Federal Express    ☐ Other
☒ CM/ECF

Signature: /s/ *Eric Wessan*

14