IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ORCUN SELCUK; ALAN DAVID GWILLIAM; TINGTING ZHEN; MICHAEL BROKLOFF; NINO NATENADZE; and THE LEAGUE OF UNITED LATIN AMERICAN CITIZENS OF IOWA, on behalf of itself and its members, | Case No. 4:24-cv-00390-SHL-HCA |
| Plaintiffs, | |
| vs. | **BRIEF IN SUPPORT OF DEFENDANT PAUL D. PATE'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |
| PAUL D. PATE, in his official capacity as the Iowa Secretary of State; BENJAMIN D. STEINES, in his official capacity as the Winneshiek County Auditor and Winneshiek County Commissioner of Elections; JAMIE FITZGERALD, in his official capacity as the Polk County Auditor and Polk County Commissioner of Elections, MELVYN HOUSER, in his official capacity as the Pottawattamie County Auditor and Pottawattamie County Commissioner of Elections, JULIE PERSONS, in her official capacity as the acting Johnson County Auditor and acting Johnson County Commissioner of Elections; and KERRI TOMPKINS, in her official capacity as the Scott County Auditor and Scott County Commissioner of Elections, | |
| Defendants. | |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

PROCEDURAL BACKGROUND........................................................................................ 2

ARGUMENT ....................................................................................................................... 3

    I.   Plaintiffs Selcuk, Gwilliam, Zhen, Borkloff, and Natenadze's claims are moot.......... 3

    II.  Plaintiffs lack standing........................................................................................... 7

  A.   Plaintiffs lack standing because their alleged harm is not redressable......................... 7

  B.   LULAC lacks organizational standing because it has not identified any
member that has suffered the requisite harm............................................................... 8

  C.   LULAC's alleged diversion of resources does not give it direct standing................... 9

    II.  Plaintiffs fail to plead facts to state a claim for relief that is plausible on its face. ...... 9

  A.   Counts IV through VII should be dismissed because Plaintiffs conceded that
State Defendant did not remove any voters from Iowa's voter rolls........................... 11

  B.   Even if Plaintiffs try to disavow these concessions, Count IV through VII still
should be dismissed because Plaintiffs have not pled sufficient facts to support
claims based on the removal of voters from Iowa voter rolls. ................................... 12

  C.   Count VIII should be dismissed because State Defendant prevented no
Plaintiff from casting a ballot or having that ballot counted. ..................................... 13

  D.   Counts I, II, and V should be dismissed because noncitizens are
constitutionally prohibited from voting...................................................................... 16

  E.   Counts I, II, and V fail to allege discrimination based on citizenship status in
violation of the Constitution or the NVRA. .............................................................. 17

  F.   Count III fails to plead a viable due process claim. ................................................... 18

  G.   Count VII should be dismissed because Plaintiffs seek records that cannot be
legally released under State and federal law. ............................................................. 19

CONCLUSION................................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ........................................................................................................ 3

*Ark. AFL-CIO v. FCC*,
  11 F.3d 1430 (8th Cir. 1993) ........................................................................................ 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 10, 12

*Ass. For Gov't Acct. v. Simon*,
  128 F.4th 976 (8th Cir. 2025) ...................................................................................... 20

*Beals v. Va. Coal. For Immigrant Rts.*,
  2024 WL 4608863 (U.S. Oct. 30, 2024) ....................................................................... 2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 10, 12

*Brnovich v. Dem. Nat'l Comm.*,
  594 U.S. 647 (2021) ............................................................................................... 14, 15

*Carlson v. Wiggins*,
  675 F.3d 1134 (8th Cir. 2012) ...................................................................................... 17

*Charleston Hous. Auth. v. U.S. Dep't of Agric.*,
  419 F.3d 729 (8th Cir. 2005) ......................................................................................... 3

*Clark v. Kan. City Mo. Sch. Dist.*,
  375 F.3d 698 (8th Cir. 2004) ....................................................................................... 18

*Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985) ...................................................................................................... 16

*Crawford v. Marion Cnty. Election Bd.*,
  553 U.S. 181 (2008) ...................................................................................................... 14

*Dept. of Educ. v. Brown*,
  600 U.S. 551 (2023) ........................................................................................................ 7

*Dunn v. Blumstein*,
  405 U.S. 330 (1972) ...................................................................................................... 17

*FDA v. All. For Hippocratic Med.*,
  602 U.S. 367 (2024) ........................................................................................................ 9

*Flast v. Cohen*,
  392 U.S. 83 (1968) .......................................................................................................... 3

*Gonzalez v. Barr*,
  929 F.3d 595 (8th Cir. 2019) ....................................................................................... 11

*Griffin v. N.C. State Bd. of Elections*,
  2025 WL 1292530 (E.D.N.C. May 5, 2025) ............................................................... 14

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ........................................................................................................ 9

*Iowa League of Cities v. EPA*,
  711 F.3d 844 (8th Cir. 2013) ......................................................................................... 8

*Kowalski v. Tesmer*,
  543 U.S. 125 (2004) ........................................................................................................ 8

iii

*Kushner v. Beverly Enters., Inc.*,
  317 F.3d 820 (8th Cir. 2003) ............................................................................ 10
*Libertarian Party v. Bond*,
  764 F.2d 538 (8th Cir. 1985) .............................................................................. 5
*Luria v. United States*,
  231 U.S. 9 (1913) ............................................................................................... 17
*Maracich v. Spears*,
  570 U.S. 48 (2013) ............................................................................................ 20
*Mattes v. ABC Plastics, Inc.*,
  323 F.3d 695 (8th Cir. 2003) ............................................................................ 10
*Milligan v. Ottumwa Police Dept.*,
  937 N.W.2d 97 (Iowa 2020) ............................................................................ 20
*Mills v. Green*,
  159 U.S. 651 (1895) ............................................................................................ 3
*Miss. River Revival, Inc. v. City of Minneapolis*,
  319 F.3d 1013 (8th Cir. 2003) ............................................................................ 5
*Missouri Protection & Advoc. Servs., Inc. v. Carnahan*,
  499 F.3d 803 (8th Cir. 2007) .............................................................................. 8
*N.D. Rural Dev. Corp. v. U.S. Dep't of Labor*,
  819 F.2d 199 (8th Cir. 1987) .............................................................................. 5
*Nat'l Comm. v. Wetzel*,
  120 F.4th 200 (5th Cir. 2024) .......................................................................... 19
*Noem v. Haaland*,
  41 F.4th 1013 (8th Cir. 2022) ......................................................................... 3, 4
*Oil Workers v. Missouri*,
  361 U.S. 363 (1960) ............................................................................................ 3
*Pa. State Conf. of NAACP Branches v. Sec'y of the Commonwealth of Pa.*,
  97 F.4th 120 (3d Cir. 2024), ...................................................................... 14, 15
*Public Interest Legal Found. v. Boockvar*,
  431 F. Supp. 3d 553 (M.D. Pa. 2019) .............................................................. 20
*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) ................................................................................................ 2
*Religious Sisters of Mercy v. Becerra*,
  55 F.4th 583 (8th Cir. 2022) ........................................................................... 8, 9
*Repub. Nat'l Comm. v. Genser*,
  2024 WL 4647792 (U.S. Nov. 1, 2021) ............................................................. 2
*Richardson v. Tex. Sec'y of State*,
  978 F.3d 220 (5th Cir. 2020) ............................................................................ 18
*Ritter v. Migliori*,
  142 S. Ct. 1824 (2022) ...................................................................................... 15
*Sandusky Cnty. Dem. Party v. Blackwell*,
  387 F.3d 565 (6th Cir. 2004) ............................................................................ 19
*Schmidt v. Des Moines Pub. Sch.*,
  655 F.3d 811 (8th Cir. 2011) ............................................................................ 18
*South Dakota v. Hazen*,
  914 F.2d 147 (8th Cir. 1990) .............................................................................. 3

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ..................................................................... 7
*State Farm Mut. Auto. Ins. Co. v. Worthington*,
   405 F.2d 683 (8th Cir. 1968) ................................................. 11, 12
*Stevenson v. Blytheville Sch. Dist. No. 5*,
   762 F.3d 765 (8th Cir. 2014) ...................................................... 5
*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ..................................................................... 9
*Twin Cities Safety, LLC v. Moe*,
   --- F.4th ----, 2025 WL 1680442 (8th Cir. June 16, 2025) ......... 4, 7
*Warner Bros. Entm't v. X One X,*
   *Prods.*, 840 F.3d 971 (8th Cir. 2016) ...................................... 11
*Weimer v. Amen*,
   870 F.2d 1400 (8th Cir. 1989) ................................................... 18
*Whitney v. Franklin Gen. Hosp.*,
   995 F. Supp. 2d 917 (N.D. Iowa 2014) ...................................... 10
*Whitney v. Guys, Inc*,
   700 F.3d 1118 (8th Cir. 2012) ................................................... 10
*Zakrzewski v. Fox*,
   87 F.3d 1011 (8th Cir. 1996) ..................................................... 18

## Statutes and Constitution

18 U.S.C. § 2721 .................................................................... 19, 20
18 U.S.C. § 2725 ......................................................................... 19
42 U.S.C. § 15483 ....................................................................... 14
52 U.S.C. § 20505 ................................................................. 11, 13
52 U.S.C. § 20507 ........................................................... 11, 13, 16
52 U.S.C. § 20508 ................................................................. 11, 13
52 U.S.C. § 21082 ........................................................... 14, 18, 19
Iowa Code § 22.7 ................................................................... 19, 20
Iowa Code § 321.11 ............................................................... 19, 20
Iowa Code § 48A.15 .................................................................... 13
Iowa Code § 48A.25A .................................................................... 7
Iowa Code § 49.79 ....................................................................... 18
U.S. Const. amend XIV ................................................................. 16

## INTRODUCTION

On October 22, 2024, Iowa Secretary of State Paul Pate sent county election officials a list of 2,176 registered voters who had self-identified as noncitizens to the Iowa Department of Transportation. Dkt. 66 ¶ 37. Secretary Pate then directed those officials to challenge the self-identified noncitizens' ballots, requiring those voters to cast provisional ballots. *Id.* ¶ 38.

On October 30, four voters and one advocacy organization sued Secretary Pate and five county election officials alleging that being required to cast a provisional ballot violated their rights. *See* Dkt. 1 (complaint); Dkt. 66 (amended complaint). The Amended Complaint alleges Defendants violated the U.S. Constitution's Equal Protection Clause, Due Process Clause, and right to vote, and violated the National Voter Registration Act ("NVRA"). *See* Dkt. 1, 66. Their Amended Complaint adds a claim based on § 11(a) of the Voting Rights Act ("VRA") as well as adding a fifth plaintiff. *See* Dkt. 66. But the Amended Complaint has the same fundamental flaws.

The 2024 election is over. Noone's voter registration was rescinded due to Defendants' actions. The challenged list has been explicitly rescinded. And Iowa has greater access to federal databases to stop noncitizens from voting. Iowa has even changed its election law. Plaintiffs admit that 12 percent of the challenged October 2024 list were noncitizens without the right to vote. *See* Dkt. 66 ¶ 3. In the days before the 2024 election, Secretary Pate knew that "some portion of the 2,176 names . . . [we]re indeed ineligible to vote due to non-citizenship." Dkt. 32 at 12. But at the time, he could not determine who those voters were without additional screening. *Id.* This case was not viable—but now is moot.

Further, while the Complaint may seem to contain much factual detail, a closer inspection reveals many conclusory allegations and factual gaps. Among those gaps are allegations that would establish Plaintiffs' standing to sue. Failing this threshold requirement dooms their case.

Even if Plaintiffs cleared that requirement, they fail to plausibly allege that Secretary Pate removed any voters from Iowa's registration rolls or failed to count any votes from qualified voters—a fatal flaw for many of their claims. They also fail to plausibly allege that State Defendant illegally discriminated against Iowans based on citizenship status. After all, it is legal for a State

to discriminate against noncitizens in its voting rules because noncitizens have no right to vote. Indeed, a noncitizen voter commits both federal and a State crimes. And Plaintiffs' own allegations establish that State Defendant did not discriminate against voters based on naturalization status.

Further, Plaintiffs have not plausibly alleged that Secretary Pate denied them due process by following State and federal law. For these reasons, the entire Complaint must be dismissed for failing to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

## PROCEDURAL BACKGROUND

Plaintiffs sued on October 30, 2024 (with early voting already underway), then requested a temporary restraining order and preliminary injunction on October 31. Dkts. 1, 9. Following expedited TRO briefing, the district court held a hearing on Plaintiffs' request on November 1. Dkts. 16, 21, 28. The parties submitted supplemental briefing on November 2 (Dkts. 30, 31), and the Court denied Plaintiffs' TRO and preliminary injunction request on November 3. Dkt. 32. The Court concluded that *Purcell v. Gonzalez*, 549 U.S. 1 (2006) cautioned the Court against granting injunctive relief near election day, especially considering recent U.S. Supreme Court decisions. Dkt. 32 at 2 (citing *Beals v. Va. Coal. For Immigrant Rts.*, 2024 WL 4608863 (U.S. Oct. 30, 2024) and *Repub. Nat'l Comm. v. Genser*, 2024 WL 4647792 (U.S. Nov. 1, 2021)).

This Court also recognized that "it appears to be undisputed that some portion of the names on Secretary Pate's list are indeed registered voters who are not United States Citizens." *Id.* at 3. The Court found that Plaintiffs had not established any irreparable harm as "voters are still permitted to vote and have their ballots counted." *Id.* at 13. And even if the harm were irreparable, the Court "could not fashion injunctive relief that could solve the problem." *Id.* The Court then held that Plaintiffs were not likely to succeed on the merits of their claims because: 1) "the NVRA does not provide a basis for injunctive relief given that Secretary Pate has not removed anyone from the voter rolls"; 2) "Secretary Pate at least arguably imposed the type of 'national-origin neutral' policy" that law suggests "would pass constitutional muster"; and 3) "it is less clear

whether or to what extent the due process clause applies to the right to vote," "much less whether Plaintiffs' due process rights had been violated." *Id.* at 1–17. Plaintiffs did not appeal that ruling.

On January 29, 2025, State Defendant moved to dismiss Plaintiff's Complaint. Dkt. 57. In response, Plaintiffs filed an Amended Complaint on April 4, 2025. Dkt. 66.

## ARGUMENT

### I. Plaintiffs Selcuk, Gwilliam, Zhen, Borkloff, and Natenadze's claims are moot.

This Court's role is limited "'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Oil Workers v. Missouri*, 361 U.S. 363, 367 (1960) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). As such, "[q]uestions of mootness are matters of subject matter jurisdiction." *Charleston Hous. Auth. v. U.S. Dep't of Agric.*, 419 F.3d 729, 739 (8th Cir. 2005). "A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (cleaned up); *accord Noem v. Haaland*, 41 F.4th 1013, 1016 (8th Cir. 2022). The Court is constrained from addressing any issues presented by moot cases. *South Dakota v. Hazen*, 914 F.2d 147, 149 (8th Cir. 1990). "It is of no consequence that the controversy was live at earlier stages . . . ; it must be live when [the Court] decide[s] the issues." *Id.* at 150.

Here, Mr. Selcuk, Mr. Gwilliam, Ms. Zhen, Mr. Borkloff, and Ms. Natenadze ("Individual Plaintiffs") no longer have a live dispute as the question sought to be adjudicated has been mooted by the 2024 election. *See Flast v. Cohen*, 392 U.S. 83, 95 (1968).

Beyond damages and attorneys' fees, Plaintiffs' prayer for relief makes seven requests:

1. A declaration that Defendants' challenge of self-identified noncitizen ballots violates federal law and the U.S. Constitution;
2. Rescission of the list of 2,176 names;
3. An order that the Secretary notify county election commissioners that they may not challenge a voter's eligibility due to their status on the self-identified noncitizen voter list of based solely on Department of Transportation data;
4. An order that the Defendants may not conduct voter registration list maintenance or remove any voters from the voter rolls based on the October 2024 list;

5. An order that Defendants "restore the status of any persons who were removed from Iowa's voting rolls, including being placed on inactive status" due to being on the list;

6. An order to take undefined "steps as are necessary" to alert "all individuals on the list of Affected Voters"—including those that are noncitizens or have not yet tried to vote—that they may vote; and

7. An injunction preventing "Defendants from conducting any materially similar purge program in the future."

Dkt. 6 at 37.

Those requests all concern the list of self-identified noncitizen voters created for the November 2024 election. That election is over. All ballot challenges—whether based on noncitizenship, residency, or age—have been made and resolved. All election results have been certified. And none of the Individual Plaintiffs have alleged that they were unable to successfully cast a ballot. Indeed, as this Court noted, even before the election, Secretary Pate stated that he "is no longer challenging the eligibility of the named Plaintiffs in the original Complaint who submitted statements, under oath, in this proceeding confirming they are United States citizens." Dkt. 32 at 13. This statement mooted those Plaintiffs' claims even before Election Day.

And on June 4, 2025, State Defendant notified local election officials that "we are withdrawing the noncitizen ballot challenge directive from October 22, 2024." Email from Iowa Secretary of State, Voter registration procedure update (June 4, 2025) (attached as Ex. 1). The notice stated: "That directive and the list we provided at the time shall not be used in any current or future voter registration maintenance or ballot eligibility challenges." Ex 1. So the October 2024 list no longer has any legal or practical effect, mooting any claims about its future use. *See Twin Cities Safety, LLC v. Moe*, --- F.4th ----, 2025 WL 1680442, *2 (8th Cir. June 16, 2025) (where a State program "has come to an end," "[t]he case is moot"). Regarding the prayer for relief, (2) the list is rescinded, (3) county election commissioners are notified, and (4 & 5) no voters have ever been removed due to the October 2024 list.

Courts commonly find that temporally contingent claims can become moot and dismiss those claims after they indeed become moot. *See, e.g.*, *see id.*; *Noem*, 41 F.4th at 1017 (suit over fireworks permitting during the Fourth of July in 2021 moot because the court cannot change what

happened last year); *Stevenson v. Blytheville Sch. Dist. No. 5*, 762 F.3d 765, 770 (8th Cir. 2014) (request for injunction during the 2013-2014 school year moot as that school year is complete); *Miss. River Revival, Inc. v. City of Minneapolis*, 319 F.3d 1013, 1015 (8th Cir. 2003) (noting some plaintiffs conceded their initial claims for injunctive and declaratory relief were moot after the permits they were seeking to block eventually were issued); *N.D. Rural Dev. Corp. v. U.S. Dep't of Labor*, 819 F.2d 199, 200 (8th Cir. 1987) (appeal moot in 1987 when it concerned an entity's participation in a 1985–87 grant competition). The same principle applies here. The 2024 election is over and the October 2024 list has been rescinded and nothing the Court does can change that.

To be sure, election-related issues sometimes satisfy the mootness exception for claims that are capable of repetition yet evade review. *See Libertarian Party v. Bond*, 764 F.2d 538, 539 n.1 (8th Cir. 1985). This exception applies "when (1) the challenged action is of too short a duration to be litigated fully," and "(2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Ark. AFL-CIO v. FCC*, 11 F.3d 1430, 1435 (8th Cir. 1993). But Individual Plaintiffs' claims do not qualify because there is no reasonable expectation that Individual Plaintiffs will be subject to the same action again. *First*, "Secretary Pate has stated that he is no longer challenging their eligibility to vote as they have submitted statements, under oath, in this proceeding confirming they are United States citizens." Dkt. 32 at 13. *Second*, the Secretary has "withdraw[n] the noncitizen ballot challenge directive from October 22, 2024" and that directive and the October 2024 list "shall not be used in any current or future voter registration maintenance or ballot eligibility challenges." Ex. 1.

*Third*, this is not a class or collective action; Individual Plaintiffs can litigate only their own claims not the claims of any other voters on the Secretary's list. So to the extent Plaintiffs argue the claims of other voters may evade review, those claims are not before this Court.

*Fourth*, Iowa has spent months obtaining names of the known noncitizens from the federal government. Before the election, the United States confirmed that there were noncitizens on the State's list, using a list compiled no later than October 25, 2024. Dkt. 16 at 6. The United States Citizenship and Immigration Services ("USCIS") reached out to the Secretary of State's office "to

offer assistance in further refining" the list that had been provided to county auditors. Dkt. 16, Ex. A ¶ 30. On October 29, USCIS told the Secretary of State's office that despite having checked the immigration statuses of the individuals on the list, USCIS was not able to share the information. *Id.* ¶ 31. USCIS told the Secretary of State that "[w]e do not want [Iowa USCIS staff] to release to release any information to the [Iowa Secretary of State]." *Id.* ¶ 32 (quoting Ex. D at 1). Senators Grassley and Ernst both joined in calling for USCIS to transmit this data. *See* Charles E. Grassley & Joni K. Ernst, Letter to Director Jaddou (Oct. 31, 2024), https://perma.cc/6LJA-2CXK.

After months of negotiation, Iowa obtained access to the Systematic Alien Verification for Entitlements ("SAVE") program to assist in voter verification. Press Release, Iowa Secretary of State, Iowa Secretary of State's Audit of Voter Registration Lists Finds 277 Confirmed Noncitizens Registered to Vote (Mar. 20, 2025) *available at* https://bit.ly/405nclh ("March 20 Release"). Using that information, Iowa confirmed that 12 percent of voters on the October 2024 list were noncitizens. *See* Dkt. 66 ¶ 45.[1] And on May 22, 2025, USCIS announced that it updated the SAVE program to allow State and local authorities to access the SAVE database to verify U.S. citizenship status using a voter's Social Security number. USCIS, News Release, USCIS Deploys Common Sense Tools to Verify Voters (May 22, 2025), *available at* https://perma.cc/U9EQ-CM76. USCIS "encouraged" "[a]ll state and local governments . . . to register to use SAVE for lawful voter eligibility verification" and eliminated all charges to access SAVE. *Id.*

Iowa also has worked diligently to obtain additional federal citizenship data, so it does not need to rely on voter self-identifications again. On December 3, 2024, Iowa sued the U.S. Department of Homeland Security and USCIS to obtain that list. *See Bird v. Mayorkas*, No. 4:24-cv-00423 (S.D. Iowa Dec. 3, 2024). That litigation is ongoing. *Id.* These changes eliminate the need for Secretary Pate to renew the October 2024 approach going forward.

---

[1] Plaintiffs incorrectly allege—without citation—that "merely thirty-five of the 2,176 voters on the List (1.6%) were non-citizens at the time of the General Election." Dkt. 66 ¶ 45. But "35 noncitizens *cast ballots that were ultimately counted* in the 2024 General Election." March 20 Release (emphasis added). Another "5 noncitizens attempted to cast ballots that were rejected" thanks to the list. *Id.* And 277 confirmed noncitizens were on the October voter roll list. *Id.*

*Finally*, the operative legal framework for verifying voter registrations has changed and will prevent last-minute citizenship verifications. On June 2, 2025, Governor Kim Reynolds signed House File 954 into law. H.F. 954, 91st Leg. (Iowa 2025), *available at* https://bit.ly/441sQpV. Among other changes, the law requires that elections officials verify citizenship status at the time of voter registration. *See* Iowa Code § 48A.25A(2A). Before, Iowa law required that election officials verify that the voter's name, date of birth, and driver's license, nonoperator identification, or social security number matched DOT records. *See* Iowa Code § 48A.25A(1)(*a*). Based on State efforts and changes in Iowa law, it is not reasonable to expect that Plaintiffs—or any person—will be subject to the same action in another election. *See Twin Cities*, 2025 WL 1680442, at *3 (where policy turned on circumstances that have since changed, the case should be dismissed as moot).

## II. Plaintiffs lack standing.

Federal courts are courts of limited jurisdiction, so they first determine whether a plaintiff has Article III standing before reaching the merits. *See Dept. of Educ. v. Brown*, 600 U.S. 551, 560 (2023). Standing requires a plaintiff establish that: Plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). If a Plaintiff cannot establish standing, a Court need not proceed to the merits. *Brown*, 600 U.S. at 560–561.

### A. Plaintiffs lack standing because their alleged harm is not redressable.

In denying Plaintiffs' injunction request, this Court found that Plaintiffs' requested relief would not redress their alleged harm. Dkt. 32 at 13. *First*, "Secretary Pate's letter was sent to county commissioners, not directly to voters, and thus it is unclear what purpose it would serve to require him to 'retract' the letter." *Id. Second*, because county commissioners already had taken steps to comply with the letter before the election, "[a]n order requiring county commissioners to 'retract' those letters or cease other efforts to confirm citizenship likely would engender more confusion than it resolves." *Id.* at 13–14. *Third*, and most importantly, "some portion of the 2,176 names on Secretary Pate's list—reportedly twelve percent (*id.* at 3)—are indeed ineligible to vote

due to noncitizenship." *Id.* at 14. "If the Court were to order a 'retraction' of the list or otherwise stop his efforts to challenge those voters, local election officials arguably would be required to let those voters cast a ballot despite their ineligibility to do so. It goes without saying that this would be inappropriate." *Id.* Ultimately, the Court held, "the injunctive relief proposed by Plaintiffs would create as many problems as it would solve." *Id.*

The passage of time has not changed the redressability of Plaintiffs claims. Secretary Pate has "withdraw[n] the noncitizen ballot challenge directive from October 22, 2024, including "the list we provided at the time." Ex. 1. And neither can be "used in any current or future voter registration maintenance or ballot eligibility challenges." *Id.* That means Plaintiffs essentially want this Court to order State Defendant to send letters to voters—who might not have been aware of the October 2024 list at all—telling them that they are not on a list that no longer exists. Such a letter risks creating even more problems than the Court envisioned when denying the preliminary injunction. Plaintiffs likewise have not requested any relief as to future voter registration verifications and list maintenance that H.F. 954 does not already provide.

### B. LULAC lacks organizational standing because it has not identified any member that has suffered the requisite harm.

"[A] party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). But a membership organization may sue on behalf of its members if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Missouri Protection & Advoc. Servs., Inc. v. Carnahan*, 499 F.3d 803, 809 (8th Cir. 2007). A membership organization need not show that all its members have standing, only that one of them does. *See Iowa League of Cities v. EPA*, 711 F.3d 844, 869 (8th Cir. 2013). But it must identify its members who have suffered the requisite harm. *See Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 602 (8th Cir. 2022).

Here, LULAC alleges only that "at least some LULAC members are Affected Voters" on the Secretary of State's list. Dkt. 66 ¶ 22. But it does not allege that any of the Individual Plaintiffs are LULAC members, nor does it identify any other individuals allegedly on the State's list of self-identified noncitizens. An organization must identify particular members and their injuries to establish associational standing. *See Becerra*, 55 F.4th at 601. LULAC does not. And the allegation that LULAC has more than 500 active members in Iowa (Dkt. 66 ¶ 22) is not enough. "A court cannot 'accept[]the organizations' self-descriptions of their membership' because the court has an independent obligation to assure that standing exists.'" *Becerra*, 55 F.4th at 602 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)). "While it is certainly possible—perhaps even likely—that one individual will meet all th[e] criteria, that speculation will not suffice." *Id.* (quoting *Summers*, 555 U.S. at 499). When an organization fails to identify members who have suffered the requisite harm, that organization lacks standing to sue on behalf of unnamed members.

### C. LULAC's alleged diversion of resources does not give it direct standing.

A membership organization may also have direct standing if it can establish its own injury, traceability, and redressability. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982). But "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing." *FDA v. All. For Hippocratic Med.*, 602 U.S. 367, 394 (2024).

Here, LULAC alleges it has "had to spend resources it would otherwise have devoted to [voter education and registration] efforts to instead informing concerned members about" the Secretary's list of self-identified noncitizen voters. Dkt. 66 ¶¶ 22, 123. But an organization "cannot spend its way into standing simply by expending money to gather information and advocate against" government conduct. *See All. for Hippocratic Med.*, 602 U.S. at 394. Secretary Pate did not force LULAC to divert resources; LULAC's funding choices do not give rise to direct standing. LULAC's alleged injuries are exactly the type of self-inflicted injuries or setbacks to "abstract social interests" and advocacy work that do not support direct standing. *Id.*

### II. Plaintiffs fail to plead facts to state a claim for relief that is plausible on its face.

Because Individual Plaintiffs' claims are moot and because all Plaintiffs lack standing, this complaint should be dismissed. But if this Court addresses the merits of Plaintiffs' claims, those claims should still be dismissed because they do not state a plausible claim for relief.

A complaint that fails to state a claim upon which relief can be granted must be dismissed. Fed. R. Civ. P. 12(b)(6). While a complaint need not contain "detailed factual allegations" to state a claim, a plaintiff must provide more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also* Fed. R. Civ. P. 8(a)(1)-(3). Labels or legal conclusions are not enough. *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570). This "plausibility" standard is not the equivalent of a "probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557).

There is no requirement that the Court accept the legal conclusions in a complaint as true. *Id*. Courts evaluate plausibility under *Iqbal* and *Twombly* by "'draw[ing] on [their own] judicial experience and common sense'" and will consider "only the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint.'" *Whitney v. Franklin Gen. Hosp*., 995 F. Supp. 2d 917, 925 (N.D. Iowa 2014) (citing *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012); *Mattes v. ABC Plastics, Inc*., 323 F.3d 695, 697 n.4 (8th Cir. 2003)). On a motion to dismiss, "a court may consider the complaint and documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enters., Inc*., 317 F.3d 820, 831 (8th Cir. 2003).

Plaintiffs bring claims under the U.S. Constitution, the NVRA, and VRA. But those claims suffer from one of three basic conceptual flaws: that 1) challenging a voter's ballot is the same as removing that voter from the registration rolls, 2) requiring a voter to cast a provisional ballot is the same as preventing that voter from voting, and 3) citizens and noncitizens must have equal voting rights and protections. Those flaws doom Plaintiffs' claims based on the Equal Protection

Clause (Count I), right to vote (Count II), NVRA (Counts IV–VI), and VRA (Count VIII).

Plaintiffs' Due Process (Count III) and public records (Count VII) claims fail because they allege

only that Secretary Pate followed federal law. As such, Plaintiffs' claims must be dismissed.

### A. Counts IV through VII should be dismissed because Plaintiffs conceded that State Defendant did not remove any voters from Iowa's voter rolls.

Plaintiffs allege violations of four provisions of the NVRA:

1. The "90-Day-Provision," barring States from "systematically" removing voters from voter registration rolls within 90 days of an election, 52 U.S.C. § 20507 (Count IV);
2. The anti-discrimination provision, requiring that voter list maintenance programs be "uniform" and "nondiscriminatory," 52 U.S.C. § 20507(b)(1) (Count V);
3. The proof-of-citizenship provision, limiting the proof of citizenship that may be requested, 52 U.S.C. §§ 20508(b)(1), 20505(a)(1)–(2) (Count VI); and
4. The public disclosure provision, which governs preservation and disclosure of records related to voter registration list maintenance, 52 U.S.C. § 20507(i) (Count VII).

Dkt. 66 ¶¶ 151–175.

Plaintiffs base their NVRA claims on allegations that State Defendant sought to

"remov[e] . . . supposedly ineligible voters" from the rolls. Dkt. 66 ¶ 56. But this Court held in its

order denying Plaintiffs' TRO and preliminary injunction that "[h]ere, Secretary Pate has not

removed anyone from the voter rolls, but rather is simply requiring voters on the list of 2,176 to

vote via provisional ballots." Dkt. 32 at 10; *see also id.* at 2 ("Secretary Pate's letter does not

remove anyone from the voter rolls—but rather, at most, requires those voters to use provisional

ballots."); *id.* at 11 ("Secretary Pate did not remove anyone from the voter rolls, but decided to

require the use of provisional ballots by some voters.").

Indeed, at the time, Plaintiffs "wisely conceded that the NVRA does not provide a basis

for injunctive relief given that Secretary Pate has not removed anyone from the voter rolls, but

rather has simply required the use of provisional ballots." *Id.* at 14. Formal admissions to a court

create judicial admissions that replace the need for evidence on the subject. *See Warner Bros.*

*Entm't v. X One X Prods.*, 840 F.3d 971, 978 (8th Cir. 2016). "[J]udicial admissions are binding

for the purpose of the case in which the admission is made." *Gonzalez v. Barr*, 929 F.3d 595, 597

(8th Cir. 2019) (quoting *State Farm Mut. Auto. Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th

Cir. 1968)) (internal quotation marks omitted). Because Plaintiffs concede that State Defendant has not removed any voters from Iowa's registration rolls, they cannot state an NVRA claim upon which relief can be granted. For these reasons, Counts IV through VII should be dismissed.

> **B. Even if Plaintiffs try to disavow these concessions, Count IV through VII still should be dismissed because Plaintiffs have not pled sufficient facts to support claims based on the removal of voters from Iowa voter rolls.**

Even if Plaintiffs try to disavow their earlier concession, Secretary Pate still has not removed any voters from the rolls, and Plaintiffs' conclusory removal allegations do not plausibly plead otherwise. This pleading failure dooms their NVRA claims.

Plaintiffs must provide more than "labels or conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement'" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). But Plaintiffs have not done so. Plaintiffs allege only that State Defendant issued a letter to county election officials "with the purpose of ultimately removing those supposedly ineligible voters" and that ineligible voters will be removed from voter registration rolls at some unknown point in the future. Dkt. 66 ¶ 56; *see also id.* ¶ 126 ("Plaintiffs have every reason to believe that the Secretary will continue to target Affected Voters on the List for . . . future removal."); *id.* ¶ 125 (alleging that State Defendant may seek to remove ineligible voters from the voter lists at some point "after the 2024 general election"). But Plaintiffs do not allege that the Secretary removed any voters from Iowa voter rolls—much less Plaintiffs themselves. Nor do they explain how casting a provisional ballot counts as removing that voter's registration from the rolls. Conclusory allegations with no factual basis are not enough.

*First*, challenging a voter's ballot and removing that voter from the rolls are not the same. Removal means that the voter is no longer registered, and unregistered voters cannot cast ballots. But every person on the State's list could cast ballots and, on proof of eligibility, those votes were counted. That necessarily means they were not removed from the voter rolls. Even if a voter's provisional ballot was rejected, that voter remains registered to vote. In contrast, removal from the rolls is a multi-step process following a separate legal challenge and full hearing and appeal

procedures. Iowa Code §§ 48A.15–.16. And registration challenges made fewer than seventy days before a regularly scheduled election, cannot not even occur until after the current election. *Id.* § 48A.14(4). Plaintiffs do not allege that process started—much less concluded—at any point.

*Second*, even if Secretary Pate removes ineligible voters under the new law, the NVRA allows States to remove ineligible voters more than 90 days before an election. *See* 52 U.S.C. § 20507(c)(2)(A); *id.* § 20507(b)(1); *id.* § 20505(a)(1)–(2); *id.* § 20508(b)(1)–(2). Such removals today fall outside the NVRA's 90-Day "Quiet Period" for "systematic removals." *Id.* § 20507(c)(2)(A). And removals based on noncitizenship do not fall under the NVRA's nondiscrimination section because such voters are ineligible to vote. *Id.* § 20507(b)(1). Further, removing a registered voter based on individualized information from the federal government about that voter's federal immigration status, is not "systematic" under the NVRA. Nor does it require the voter to give any information beyond what the voter must produce under the NVRA. *Id.* § 20507(c)(2)(A); *id.* § 20505(a)(1)–(2); *id.* § 20508(b)(1)–(2). With no removals related to the underlying case, and prospective removals authorized, Plaintiffs fail to state an NVRA claim.

*Third*, any allegation that "Affected Voters on the Secretary's List will also be subjected to erroneous removal from the list of eligible voters" not only lacks factual support but also is directly contradicted by Plaintiffs' allegations. Plaintiffs allege that "the Secretary has now confirmed" that 88 percent of people on the October 2024 list were registered citizens—and thus, by extension that the remaining 12 percent were not. Dkt. 66 ¶ 3. Plaintiffs' Complaint thus failed to explain how a voter could be "erroneous[ly] remov[ed] from the list of eligible voters" when by their own allegations, State Defendant has accurate information of which voters from the October 2024 list are citizens—and eligible to vote—and which are not.

Thus, Plaintiffs cannot support claims based on the removal of voters from voter rolls.

### C. Count VIII should be dismissed because State Defendant prevented no Plaintiff from casting a ballot or having that ballot counted.

Plaintiffs' VRA claim suffers from nearly the same flaw as their NVRA claims—Plaintiffs have not identified a single eligible voter who was prevented from casting a ballot or from having

that ballot counted. Plaintiffs' conclusory allegation that "Affected Voters . . . were not permitted to cast a regular ballot in the General Election" is not enough. *See* Dkt. 66 ¶ 180. And Plaintiffs' allegation that "Defendants failed or refused to count, tabulate, and report the votes cast by qualified voters" (*id.* ¶¶ 181–82) lacks any factual support and is likewise insufficient.

Plaintiffs seem to believe that if a voter is required to cast a provisional ballot rather than a "regular ballot," that voter somehow has been prevented from voting. Dkt. ¶ 180. That is not how federal election law works. The Help America Vote Act ("HAVA") specifically allows an individual "to cast a provisional ballot" if "an election official asserts that the individual is not eligible to vote." 52 U.S.C. § 21082(a); 42 U.S.C. § 15483(b)(2)(B); *see also Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 193 (2008) ("[I]n a provision entitled 'Fail-safe voting,' HAVA authorizes the casting of provisional ballots by challenged voters.") (op. of Stevens, J.). And the Supreme Court has repeatedly held that voter verification processes requiring provisional ballots comply with the VRA. *See Brnovich v. Dem. Nat'l Comm.*, 594 U.S. 647, 678–79 (2021) (voting procedure that included provisional ballots did not violate the VRA); *Crawford*, 553 U.S. at 199–200 (law that required some voters to cast provisional ballots did not violate VRA). Other federal courts also have concluded that it is "implausible that the Voting Rights Act bars a State from enforcing vote casting rules that it has deemed necessary to administer its elections." *Griffin v. N.C. State Bd. of Elections*, 2025 WL 1292530, at *32 (E.D.N.C. May 5, 2025); *see also Pa. State Conf. of NAACP Branches v. Sec'y of the Commonwealth of Pa.*, 97 F.4th 120, 135 (3d Cir. 2024)

By extension, allegations that election officials asked Plaintiffs to provide additional documentation as part of the provisional ballot process does not state a claim. *See* Dkt. 66 ¶¶ 92, 101, 110, 115. "Mere inconvenience cannot be enough to demonstrate a violation of [the VRA]" because "every voting rule imposes a burden of some sort." *Brnovich*, 594 U.S. at 669. "[B]ecause voting necessarily requires some effort and compliance with some rules, the concept of a voting system that is 'equally open' and that furnishes an equal 'opportunity' to cast a ballot must tolerate the 'usual burdens of voting.'" *Id.* (quoting *Crawford*, 553 U.S. at 198) (op. of Stevens, J.)).

Individual Plaintiffs also do not allege that their votes were not counted, they only speculate about whether they were. *See* Dkt. 66 ¶ 91 (letter from county auditor "caused Dr. Selcuk uncertainty about whether his vote would count"); *id.* ¶ 100 ("The knowledge of his status as an Affected Voter caused Mr. Gwilliam uncertainty about whether his vote would count."); *id.* ¶ 111 ("Mr. Brokloff left the Scott County Auditor's Office on October 28 without knowing whether his ballot would be counted."); *id.* ¶ 117 ("Ms. Natenadze does not know whether her General Election ballot was counted."). But Dr. Selcuk, Mr. Gwilliam, and Mr. Brokloff allege that they provided additional documentation of their voter eligibility. *See* Dkt. 66 ¶¶ 92, 101, 110. These allegations support the inference that these Plaintiffs' votes were counted. And Plaintiffs expressly allege that the Polk County Auditor "confirmed that [Ms. Zhen's] vote would be counted." Dkt. 66 ¶ 106.

To be sure, Plaintiffs' state that Ms. Natenadze "was not comfortable emailing a copy of her passport and citizenship paperwork," but she alleges only that she "does not know whether her General Election ballot was counted." *Id.* ¶ 117. Even if this Court assumes that it was not, a failure based on an admitted refusal to follow provisional ballot procedures would not violate the VRA. "Casting a vote, whether by following the directions for using a voting machine or completing a paper ballot, requires compliance with certain rules." *Brnovich*, 594 U.S. at 669. And "a registered voter who does not follow the rules may be unable to cast a vote for any number of reasons." *Ritter v. Migliori*, 142 S. Ct. 1824, 1825 (2022) (Alito, J., dissenting from denial of stay). But "[a] State's refusal to count the votes of these voters does not constitute a denial of 'the right to vote.'" *Id.* "Even the most permissive voting rules must contain some requirements, and the failure to follow those rules constitutes the forfeiture of the right to vote, not the denial of that right." *Id.*; *see also Pa. State Conf. of NAACP*, 97 F.4th at 135 ("[I]ndividuals are not 'denied' the 'right to vote' if non-compliant ballots are not counted.").

Finally, Plaintiffs' conclusory allegations that Defendants' violated Section 11(b) of the VRA, regarding voter intimidation are likewise insufficient. Dkt. 66 ¶¶ 31, 118, 121. Plaintiffs make conclusory allegations that the Individual Plaintiffs were intimidated yet all five allege that they cast ballots in the 2024 Election. *See id.* ¶¶ 88, 101, 106, 110, 114. Indeed, State Defendant

never interacted with Plaintiffs directly. There is no plausible intimidation claim by Plaintiffs against this Defendant. Due to these pleading failures, Plaintiffs' VRA claim should be dismissed.

### D. Counts I, II, and V should be dismissed because noncitizens are constitutionally prohibited from voting.

Counts I, II, and V turn on allegations that State Defendant discriminated against noncitizens in violation of the Equal Protection Clause, the constitutional right to vote, and the NVRA's nondiscrimination provision. Dkt. 66 ¶¶ 127–143, 158–162. The Equal Protection Clause requires "that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Constitutional and statutory voting provisions impose similar requirements. *See* U.S. Const. amend XIV; 52 U.S.C. § 20507(b)(1). But the Secretary's list treated similarly all persons who registered to vote in the last ten years but attested to the State that they were not a U.S. citizen. Sharing this credible information with local election officials is not differential treatment based on national origin. And the statutory ballot-challenge procedure at issue here, which has been in effect for decades, is the same for anyone who offers a ballot, whether that challenge is based on residency, youth, felon status, or self-identification as a noncitizen.

Plaintiffs allege that the distinction drawn is based on national origin. Their allegation is novel in this context. Indeed, as noted at the TRO hearing—and as conceded by Plaintiffs' counsel on rebuttal—nation-of-origin discrimination has never been found to differentiate between American-born and all foreign-born persons. Nor has this type of alleged discrimination ever been found in the election context. National-origin discrimination tends to rely on discriminating against persons coming from a nation (or, more rarely, a region). State Defendant has not found a single election case, or any other type of case in the Eighth Circuit, where the status of a naturalized citizen as opposed to a natural born citizen created the presumption of discrimination.

That makes sense. Noncitizens, definitionally, are not Americans, so have no right to vote. Not under Iowa nor federal law. So State and federal law mandate any line the Secretary draws as to noncitizens. Plaintiffs' theory requires applying heightened scrutiny to the right to vote generally because that right distinguishes between citizens and noncitizens. That cannot be right.

Indeed, Plaintiffs allege the Secretary has confirmed that 12 percent of the people on the October 2024 list were noncitizens and thus were ineligible to vote. Dkt. 66 ¶ 3. Plaintiffs fail to plead discriminatory conduct that can support Counts I, II, and V, and they should be dismissed.

### E.  Counts I, II, and V fail to allege discrimination based on citizenship status in violation of the Constitution or the NVRA.

Plaintiffs allege that State Defendant illegally "targeted recently naturalized citizens for voter challenges, law enforcement investigations, and unwarranted scrutiny for exercising their right to vote." Dkt. 66 ¶ 2. "In the right-to-vote context, . . . equal protection of the laws has been interpreted to provide 'a constitutionally protected right [for each citizen] to participate in elections on an equal basis with other citizens in the jurisdiction.'" *Carlson v. Wiggins*, 675 F.3d 1134, 1138 (8th Cir. 2012) (quoting *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972)). Here, a naturalized citizen "stands on equal footing with the native citizen in all respects, save that of eligibility for the presidency." *Luria v. United States*, 231 U.S. 9, 22 (1913). But Plaintiffs' do not plausibly allege that State Defendant has discriminated against voters based on their naturalization status.

Plaintiffs allege that "many (the vast majority, if not all)" of the voters on the State's list of 2,176 "are naturalized citizens who lawfully obtained a driver's license at some point prior to naturalizing." Dkt. 66 ¶ 45; *see also id.* ¶¶ 2, 5, 43, 45, 129–130, 132–34. But Plaintiffs also allege that thousands of people are naturalized each year. *See id.* ¶ 3 ("According to data maintained by the State, 4,097 persons were naturalized as U.S. citizens in 2022 alone."). Placed side by side, these allegations demonstrate a fundamental flaw in Plaintiff's argument. According to Plaintiffs, 4,097 were naturalized in 2022 alone, yet only 2,176 people appear on State Defendant's list. Thus, even if every single voter on the list were naturalized in 2022—which is not alleged—about half of those naturalized residents were not included on the list. This percentage shrinks further once one accounts for the thousands of citizens naturalized in other years. Thus, based on Plaintiffs' own allegations, State Defendant's list must be based on something other than naturalization status.

This Court identified this precise flaw in denying Plaintiffs' request for injunctive relief. Dkt. 32 at 3. The Court explained, "according to the United States Census Bureau and Office of

Homeland Security data, there are more than 79,000 naturalized citizens in Iowa in total, including more than 32,000 who were naturalized between 2013 and 2022." *Id.* As such, "Pate's list contains, at most, only a tiny percentage of these citizens." *Id.* Thus, Counts I, II, and V should be dismissed.

### F.  Count III fails to plead a viable due process claim.

Plaintiffs allege State Defendant violated due process by denying them the ability to contest inclusion on the October 2024 list or to contest a ballot challenge. Dkt. 66 ¶¶ 144–150. But they fail to recognize that the provisional ballot system guarantees all process due. While the equal protection clause applies to the right to vote, it is less clear whether or to what extent the due process clause applies. *See Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 228–31 (5th Cir. 2020). Even if it does, "'[t]o set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law.'" *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 817 (8th Cir. 2011) (citation omitted). "'Due process is a flexible concept, requiring only such procedural protections as the particular situation demands.'" *Id.* (quoting *Clark v. Kan. City Mo. Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004)).

Plaintiffs have not alleged that State Defendant denied anyone the ability to vote without due process of law. Indeed, Plaintiffs admit that election officials were to offer provisional ballots to voters on the October 2024 list. Dkt. 66 ¶ 38. While Plaintiffs dispute that established process's sufficiency, federal law expressly permits its use. *See* 52 U.S.C. § 21082(a) (allowing a person "to cast a provisional ballot" if "an election official asserts that the individual is not eligible to vote."). The Eighth Circuit has repeatedly held that plaintiffs cannot establish due process claims when adequate state-law remedies exist. *See, e.g.*, *Schmidt*, 655 F.3d at 818–19; *Zakrzewski v. Fox*, 87 F.3d 1011, 1014 (8th Cir. 1996); *Weimer v. Amen*, 870 F.2d 1400, 1405 (8th Cir. 1989).

Iowa's provisional ballot process has existed for more than two decades. *See* Iowa Code § 49.79(1) (enacted in 2002). The process complies with federal law and the Constitution. HAVA specifically allows an individual "to cast a provisional ballot" if "an election official asserts that

the individual is not eligible to vote." 52 U.S.C. § 21082(a); *see also Repub. Nat'l Comm. v. Wetzel*, 120 F.4th 200, 212 (5th Cir. 2024) ("HAVA establishes a procedure for provisional voting when a voter's eligibility is in question."). That "is designed to recognize and compensate for, the improbability of 'perfect knowledge' on the part of election officials." *Sandusky Cnty. Dem. Party v. Blackwell*, 387 F.3d 565, 570 (6th Cir. 2004) (citation omitted). The process allows for further review "when, one hopes, perfect or at least more perfect knowledge will be available" and "the vote will be counted or not, depending on whether the person was indeed entitled to vote." *Id.* (citation omitted). That process provides an adequate remedy, so Count III should be dismissed.

### G. Count VII should be dismissed because Plaintiffs seek records that cannot be legally released under State and federal law.

Count VII asks Defendants to release the list of self-identified noncitizen voters. Dkt. 66 ¶¶ 170–175. But that request cannot be legally granted because releasing that information violates State and federal law. The information here was received from the Department of Transportation subject to various memoranda of understanding both with the Secretary of State's office and with the federal government. So the State Defendant cannot release it.

Iowa Code section 321.11 opens DOT records to public inspection, except those made confidential. The law states "personal information shall not be disclosed subject to 18 U.S.C. § 2721 unless the person whose personal information is requested has provided express written consent." Under State and federal law, "personal information" includes: "information that identifies a person, including a person's photograph, social security number, driver's license number, name, address, telephone number, and medical or disability information." 18 U.S.C. § 2725; Iowa Code § 321.11(2). This information may be provided only to law enforcement officers or employees, state, federal or political subdivision employees in their official capacity, or the Department of Inspections, Appeals and Licensing. Iowa Code § 321.11(3).

Iowa Code section 22.7(66) privileges from disclosure personal information on electronic driver's license or nonoperator's identification card records. That is because the licensee or card holder provides the information to the DOT "for use by law enforcement, first responders,

emergency medical service providers, and other medical personnel responding to or assisting with an emergency." Iowa Code § 22.7(66). The law thus straightforwardly protects personal information given to the DOT for purposes of a driver's license or identification document. *See id.*

Iowa law makes clear that the DOT cannot give personal information to anyone outside of government without that persons' express written authorization. *Milligan v. Ottumwa Police Department* held that because the personal identifying information sought came from the vehicle registration and driver's license database, public disclosure was "presumptively prohibited under the [Drivers Privacy and Protection Act] and Iowa Code § 321.11." 937 N.W.2d 97, 99–100 (Iowa 2020), *as amended* (Jan. 21, 2020). As noted in *Milligan*, the federal Drivers Privacy and Protect Act ("DPPA") prohibits a department of motor vehicles from "knowingly disclosing or making available to any person or entity personal information about any individual obtained in connection with a motor vehicle record." 18 U.S.C. § 2721(a); *see also Maracich v. Spears*, 570 U.S. 48, 57 (2013)). The federal definition of personal information matches Iowa Code section 321.11.

In *Public Interest Legal Foundation v. Boockvar*, plaintiffs sued state officials to obtain, under the NVRA, records documenting that noncitizens were registering to vote due to a "glitch" in the Pennsylvania Department of Motor Vehicles system. 431 F. Supp. 3d 553, 562 (M.D. Pa. 2019). The court found that the records "are shielded by the DPPA." *Id.* Nor could Plaintiffs sue under the DPPA. *See Ass. For Gov't Acct. v. Simon*, 128 F.4th 976, 979 (8th Cir. 2025).

In sum, like the records in *Boockvar*, the records State Defendant compiled involved matching a noncitizen driver's license number—including the noncitizen attestation—against the driver's license numbers of registered voters. The DPPA and Iowa Code section 321.11 protect those records against any Freedom of Information or NVRA disclosure requests.

As State Defendant cannot legally grant the requested relief, Count VII must be dismissed.

## CONCLUSION

For these reasons, Plaintiffs' Complaint must be dismissed due to mootness, lack of standing, and failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

BRENNA BIRD
Attorney General of Iowa

ERIC WESSAN
Solicitor General

*/s/ Breanne A. Stoltze*
BREANNE A. STOLTZE
Assistant Solicitor General
Department of Justice
Hoover State Office Building
Des Moines, Iowa 50319
(515) 281-5164/6957
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
breanne.stoltze@ag.iowa.gov
ATTORNEYS FOR STATE DEFENDANT

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon each of the persons identified as receiving a copy by delivery in the following manner on June 18, 2025:

☐ U.S. Mail            ☐ FAX
☐ Hand Delivery        ☐ Overnight Courier
☐ Federal Express      ☐ Other
☒ CM/ECF

Signature: */s/ Breanne A. Stoltze*