IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ORCUN SELCUK; ALAN DAVID GWILLIAM; TINGTING ZHEN; MICHAEL BROKLOFF; NINO NATENADZE; and THE LEAGUE OF UNITED LATIN AMERICAN CITIZENS OF IOWA, on behalf of itself and its members,<br><br>Plaintiffs,<br><br>vs.<br><br>PAUL D. PATE, in his official capacity as the Iowa Secretary of State; BENJAMIN D. STEINES, in his official capacity as the Winneshiek County Auditor and Winneshiek County Commissioner of Elections; JAMIE FITZGERALD, in his official capacity as the Polk County Auditor and Polk County Commissioner of Elections; MELVYN HOUSER, in his official capacity as the Pottawattamie County Auditor and Pottawattamie County Commissioner of Elections; JULIE PERSONS, in her official capacity as the acting Johnson County Auditor and acting Johnson County Commissioner of Elections; and KERRI TOMPKINS, in her official capacity as the Scott County Auditor and Scott County Commissioner of Elections;<br><br>Defendants. | 4:24-cv-00390-SHL-HCA<br><br><br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT PAUL PATE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT |

**I.     INTRODUCTION.**

Shortly before the 2024 general election, Iowa Secretary of State Paul Pate sent guidance to local election officials in Iowa directing them to the challenge the votes of 2,176 registered voters. Four of those voters, along with a civil rights organization, sought a temporary restraining order and preliminary injunction, which the Court denied. (ECF 32.) Pate now moves to dismiss the case as moot and because Plaintiffs lack standing and have failed state a plausible claim for relief. (ECF 76.) The Court agrees that the requests for injunctive relief are moot given that Pate has rescinded the guidance. This development, among others, shows that the Court cannot award any meaningful injunctive relief even if Plaintiffs were to succeed on the merits of their claims.

1

The Court therefore GRANTS IN PART Pate's Motion to Dismiss. All claims for injunctive relief are DISMISSED AS MOOT. The five County Commissioner Defendants are DISMISSED from the case. In addition, Plaintiff League of United Latin American Citizens of Iowa ("LULAC") is DISMISSED for lack of standing.

This does not end the case, however, because the individual Plaintiffs also have asserted claims for monetary damages against Pate in his individual capacity. The Court cannot tell from existing briefing whether these claims are viable because neither side devoted any meaningful attention to them. Accordingly, the Court DENIES IN PART Pate's Motion to Dismiss as it relates to claims by the individual Plaintiffs against him in his individual capacity for damages. As explained below, however, the Court will give Pate twenty-one days to file a renewed motion to dismiss addressing the merits of those claims.

## II.   FACTUAL BACKGROUND.

For purposes of a motion to dismiss, the Court accepts as true the facts alleged in the First Amended Complaint. In or around October 2024, Pate compiled a list of 2,176 registered Iowa voters who at some point in time informed the Iowa Department of Transportation that they were not United States citizens. (ECF 66, ¶ 37.) On October 22, 2024, Pate sent guidance to county commissioners in Iowa directing them to challenge any effort by voters on the list to cast a ballot in the 2024 election. (Id., ¶¶ 37–39.) The five County Commissioner Defendants were among the local officials who received Pate's list, and all of them used it to some degree or another to challenge voters and/or make public statements regarding voter eligibility. (Id., ¶¶ 57–77.)

All five individual Plaintiffs are naturalized United States Citizens residing in Iowa who previously were lawful permanent residents of the United States. (Id., ¶¶ 17–21.) All five therefore were presumably included on Secretary Pate's list. (E.g., id., ¶¶ 87, 97.) Plaintiffs cannot, however, identify all voters on Pate's list because the list has been kept secret. (Id., ¶¶ 49–50.) The secrecy of the list, when combined with public statements from Pate and others about potential criminal prosecutions of ineligible voters who attempt to cast ballots, has created a chilling effect among newly naturalized citizens and others with respect to voting. (Id., ¶¶ 53–55.) Plaintiffs allege, upon information and belief, that some of the voters on the list tried to cast ballots but were turned away or did not have their ballots counted. (Id., ¶ 78.) Nonetheless, all five individual Plaintiffs cast ballots in the 2024 election (id., ¶¶ 88, 100–01, 106, 110, 114), although some express uncertainty as to whether their votes counted (id., ¶¶ 91, 111, 117). The individual Plaintiffs allege that the

guidance caused them to suffer monetary losses from missing work or expending resources to prove their citizenship. (Id., ¶ 122.)

Plaintiff LULAC is the Iowa chapter of an Hispanic civil rights organization. (Id., ¶ 22.) As a result of Pate's guidance, LULAC was forced to divert resources from other projects to ensure that its members were able to cast ballots. (Id., ¶ 123.)

Both sides agree that 88% of the people identified on Secretary Pate's list were indeed U.S. citizens. (Id., ¶ 45; ECF 76-1, p. 11.)[1] Plaintiffs allege that some of these voters "were intimidated and had their right to vote hampered because of their status as naturalized U.S. citizens—and they were also deprived of process or even the basic information necessary to challenge their targeting or to alleviate the extra burdens placed on their fundamental rights." (ECF 66, ¶ 121.) Plaintiffs allege that eligible voters on Secretary Pate's list "will be subjected to similar treatment in future elections" absent judicial relief. (Id., ¶ 124.)

As of the date of the First Amended Complaint (April 4, 2025), Plaintiffs alleged that Pate "has not rescinded the List or any related instructions requiring election officials to challenge Affected Voters." (Id.) Subsequently, however, Pate's Chief Operating Officer & Legal Counsel sent an email to local election officials stating, in relevant part: "we are withdrawing the noncitizen ballot challenge directive from October 22, 2024. That directive and the list we provided at the time shall not be used in any current or future voter registration maintenance or ballot eligibility challenges." (ECF 76-2.) In addition, Pate reports that Iowa has obtained access to the federal Systematic Alien Verification for Entitlements ("SAVE") program, which assists in verifying voter eligibility. (ECF 76-1, p. 11.) Thanks to the SAVE program, and according to a public press release, Pate has determined that 277 of the 2,176 names on his list are confirmed noncitizens who either voted or are registered to vote according to Iowa voter registration lists. *See* Press Release, Iowa Secretary of State, Iowa Secretary of State's Audit of Voter Registration Lists Finds 277 Confirmed Noncitizens Registered to Vote (Mar. 20, 2025), *available at* https://sos.iowa.gov/news-resources/iowa-secretary-states-audit-voter-registration-lists-finds-277-confirmed-noncitizens last visited November 19, 2025). "Access to the SAVE program has allowed the Iowa Secretary of State's Office to significantly reduce the former estimate of 2,186 [sic] potential noncitizens to 277

---

[1] All citations to page numbers on the Electronic Case Filing ("ECF") system are to the page numbers on the upper righthand corner of the page, which are auto-populated by the ECF system. These numbers may not match the pagination used by the parties on the bottom of each page.

confirmed noncitizens. That is approximately 12% of the 2,176 individuals." *Id.* Finally, the Iowa Legislature enacted a new law, codified at Iowa Code § 48A.25A(2A), requiring election officials to verify citizenship status at the time of voter registration. (ECF 76-1, p. 12.)

Plaintiffs bring eight claims: <u>Count One</u> alleges a violation of the equal protection clause of the Fourteenth Amendment; <u>Count Two</u> alleges a violation of the fundamental right to vote under the First and Fourteenth Amendments; <u>Count Three</u> alleges a violation of the due process clause of the Fourteenth Amendment; <u>Count Four</u> alleges a violation of Section 8(c) of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507(c)(2)(A); <u>Count Five</u> alleges a violation of Section 8(b) of the NVRA, 52 U.S.C. § 20507(b)(1); <u>Count Six</u> alleges a violation of the NVRA, 52 U.S.C. §§ 20508(b)(1), 20505(a)(1)–(2); <u>Count Seven</u> alleges a violation of the NVRA, 52 U.S.C. § 20507(i); and <u>Count Eight</u> alleges a violation of Section 11(a) of the Voting Rights Act, 52 U.S.C. § 10307(a). (ECF 66, ¶¶ 127–82.) They ask for an order providing the following declaratory and injunctive relief: declaring that Pate's actions violate federal law and the U.S. Constitution; requiring Pate to rescind his list and all directives to treat voters on the list differently from other voters; enjoining further efforts to use the list to challenge voter eligibility; restoring the status of any eligible voters who were removed from the voting rolls by virtue of inclusion on the list, including by being placed on inactive status; directing Pate to notify all eligible voters on the list that they are indeed eligible to vote; and enjoining Pate from conducting any similar program in the future. (Id., pp. 37–38.) In addition, Plaintiffs request nominal and other damages under 42 U.S.C. § 1983, as well as attorneys' fees and costs. (Id., p. 38.) They sue Pate both in his individual and official capacities. (Id., ¶ 23.) They sue the remaining Defendants, all of whom are county election officials, solely in their official capacities. (Id., ¶¶ 24–28.)

**III   LEGAL STANDARDS.**

   *A. Challenges to Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1).*

Pate moves to dismiss the First Amended Complaint based on mootness, lack of standing, and for failure to state a claim. Arguments about mootness and lack of standing are challenges to the Court's subject matter jurisdiction and therefore governed by Fed. R. Civ. P. 12(b)(1). "A pending case becomes moot when circumstances change and the parties' dispute ceases to exist." *Hunter v. Page County*, 102 F.4th 853, 863 (8th Cir. 2024). "A moot case is a 'dispute [that] is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Id.* (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)). "A federal court loses its jurisdiction when

4

plaintiffs no longer have a 'personal stake in the outcome of the lawsuit,' or a stake unique to them." *Id.* (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)).

Even if a case is not moot, at least one plaintiff must have standing to pursue it. To establish standing, "a plaintiff must present a 'case' or 'controversy' within the meaning of Article III of the Constitution." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009). "This 'irreducible constitutional minimum of standing' requires a showing of 'injury in fact' to the plaintiff that is 'fairly traceable to the challenged action of the defendant,' and 'likely [to] be redressed by a favorable decision.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "Whether a plaintiff has shown such an injury 'often turns on the nature and source of the claim asserted.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). "[T]he question whether he has a cognizable injury sufficient to confer standing is closely bound up with the question of whether and how the law will grant him relief." *Id.*

When a defendant moves to dismiss for lack of subject matter jurisdiction, the Court must determine whether the motion raises a "facial" or "factual" attack. *See Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015). "In a facial attack, 'the court merely [needs] to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction.'" *Id.* (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "Accordingly, 'the court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" *Id.* (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). "Conversely, in a factual attack, 'the existence of subject matter jurisdiction [is challenged] in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Id.* at 914–15 (quoting *Menchaca*, 613 F.2d at 511). "Thus, the nonmoving party would not enjoy the benefit of the allegations in its pleadings being accepted as true by the reviewing court." *Id.* at 915. Either way, "[t]he plaintiff bears the burden of establishing subject matter jurisdiction." *Hilger v. United States*, 87 F.4th 897, 899 (8th Cir. 2023).

Although Pate does not specify whether he is raising a facial or factual attack, he asks the Court to consider materials outside the pleading. Accordingly, the Court will treat his Motion to Dismiss as raising a factual attack. The Court has "wide discretion" to consider affidavits and other extrinsic documents when evaluating a factual attack on subject matter jurisdiction pursuant to

5

Fed. R. Civ. P. 12(b)(1). *See Davis v. Anthony, Inc.*, 886 F.3d 674, 677 (8th Cir. 2018) (quoting *Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008).

    B.  *Challenges to the Merits Under Fed. R. Civ. P. 12(b)(6).*

Questions of mootness and standing are different than whether Plaintiffs have stated a plausible claim for relief pursuant to Fed. R. Civ. P. 12(b)(6). *See Campbell v. Minneapolis Pub. Hous. Auth. ex rel. City of Minneapolis*, 168 F.3d 1069, 1074 (8th Cir. 1999) ("We repeat the fundamental principle that the ultimate merits of the case have no bearing on the threshold question of standing."). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden*, 588 F.3d at 594 (quoting *Iqbal*, 556 U.S. at 678). In determining plausibility, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012). The Court is not obligated to accept legal conclusions, however, and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *United States ex rel. Ambrosecchia v. Paddock Lab'ys, LLC*, 855 F.3d 949, 955 (8th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

**IV.**    **LEGAL ANALYSIS.**

    A.  *Plaintiffs' Claims for Injunctive Relief Are Moot.*

Plaintiffs' claims for injunctive relief rest largely on the premise that the guidance provided by Pate to county commissioners on October 22, 2024, remains in effect. Plaintiffs ask, for example, for an injunction requiring Pate to rescind the guidance, notify local election officials not to use it, and inform affected voters that their voting rights are fully restored. (ECF 66, p. 37.)

Pate has submitted evidence that he rescinded the guidance via email from his Chief Operating Officer and Legal Counsel dated June 4, 2025. (ECF 76-2.) Accordingly, Plaintiffs' requests for injunctive relief have become moot because they have already received the relief they are seeking. *See, e.g., Twin Cities Safety, LLC v. Moe*, 139 F.4th 1015, 1019 (8th Cir. 2025) (holding that dispute over challenged state program became moot once the program ended); *Hunter*, 102 F.4th at 863 (holding that plaintiffs' dispute with county regarding issuance of wind energy permit became moot once county officials revoked it).

Plaintiffs raise several arguments to try to overcome the mootness problem, but none are persuasive. First, Plaintiffs urge the Court not to consider the June 4 email or other materials from outside the pleadings in ruling on Pate's motion, arguing that these materials are unverified and self-serving. (ECF 79, p. 10.) The Eighth Circuit has, however, considered similar materials when ruling on Rule 12(b)(1) motions in prior cases. *See, e.g.*, *Twin Cities Safety*, 139 F.4th at 1019 (relying on statements from state-run website); *Hunter*, 102 F.4th at 862 (relying on letter from county administrator). To that end, although Plaintiffs dispute the sincerity of the June 4 email, they do not genuinely dispute its authenticity. Thus, although the Attorney General's Office should have included an affidavit or declaration authenticating the email, the omission is harmless because the Court may take judicial notice of the document anyway. *See Twin Cities Safety*, 139 F.4th at 1019 n.6 (allowing courts to take judicial notice of documents when authenticity is not disputed).

Second, and relatedly, Plaintiffs argue that Pate only cited Fed. R. Civ. P. 12(b)(6) in his Motion to Dismiss, and thus that consideration of materials outside the pleadings is forbidden irrespective of authentication. (ECF 79, pp. 8, 10.) This argument impermissibly places form over substance. When a defendant moves to dismiss based on mootness or lack of standing, the challenge is to the Court's subject matter jurisdiction and therefore governed by Fed. R. Civ. P. 12(b)(1) even if the defendant does not cite that rule. *See BBCA, Inc. v. United States*, 954 F.2d 1429, 1431–32 (8th Cir. 1992) ("[T]he substance of a motion rather than the form of a motion is controlling."); *see also Shoots v. iQor Holdings US Inc.*, No. 15-CV-563, 2016 WL 6090723, at *2 (D. Minn. Oct. 18, 2016) (evaluating motion under Fed. R. Civ. P. 12(b)(1) even though moving party nominally filed it under Fed. R. Civ. P. 12(b)(6)). The Court is therefore permitted to consider materials extrinsic to the pleadings.

Third, Plaintiffs argue that the Court should apply the exception to the mootness doctrine for conduct that is "capable of repetition yet evading review." *Nat'l Right to Life Pol. Action Comm. v. Connor*, 323 F.3d 684, 691 (8th Cir. 2003). "This exception will rescue an otherwise moot claim if (1) the challenged conduct is of too short a duration to be litigated fully prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* Plaintiffs satisfy the first prong, but not the second. Pate did not merely rescind the guidance he provided on October 22, 2024; he also took steps to verify the eligibility of the 2,176 voters on his list, ultimately concluding, according to his press release, that 88% of them are indeed U.S. citizens based on access to the SAVE program. (*See* ECF

7

76-1, p. 11; ECF 83, pp. 3–4.) At this point, only 277 noncitizens on the voter rolls remain subject to scrutiny. Because all five individual Plaintiffs are U.S. citizens—and because Pate acknowledged earlier in the litigation that they are eligible voters—they cannot plausibly claim that they remain part of the shorter list. Accordingly, they do not have a "reasonable expectation" of being subject to the same action again. *See Noem v. Haaland*, 41 F.4th 1013, 1016–17 (8th Cir. 2022) (dismissing appeal as moot because of the likelihood that any future government action would arise under different circumstances).

Similarly, to the extent LULAC has standing at all, the rescission of the October 22 guidance and winnowing down of Pate's list to confirmed noncitizens renders moot any claims that entity might have for injunctive relief on behalf of members who are U.S. citizens. This is because, by definition, LULAC members who were on the original list of 2,176 despite being U.S. citizens are no longer on the list of 277. Thus, there is no reasonable expectation that Pate will challenge their right to vote again in the future at all, much less in circumstances similar to those present here. *See id.*

Fourth, and finally, Plaintiffs challenge the sincerity of Pate's statements that he will not use the existing list or create a new one in the immediate run-up to future elections. At this point, however, Pate has communicated to local election officials that the October 22 guidance is rescinded *and* taken advantage of the SAVE program to winnow down his original list *and* submitted a public press release announcing that only 277 confirmed noncitizens remain under scrutiny *and* stated multiple times and in multiple ways in this litigation that he is no longer challenging the eligibility of the vast majority of the registered voters on his original list (including, but not limited to, the five individual Plaintiffs). In these circumstances, it is pure speculation to conclude that Pate might suddenly challenge the voting eligibility of the individual Plaintiffs or other confirmed U.S. citizens again after all. *See Republican Party of Minn. v. Klobuchar*, 381 F.3d 785, 790–91 (8th Cir. 2004) (affirming dismissal on mootness grounds where plaintiffs' arguments about risk repetition were speculative); *Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d 604, 606 (8th Cir. 1994) ("Beck has shown only a theoretical possibility of recurrence, not the demonstrated probability required.").

In sum, all claims for injunctive relief are moot, and no exception to the mootness doctrine applies. Accordingly, all claims for injunctive relief are dismissed. Because the claims against the

County Commissioner Defendants seek only injunctive relief, the Court will *sua sponte* dismiss those Defendants from the case.

> B. *Plaintiffs' Claims for Damages Against Pate Are Not Moot, Nor Is Dismissal Appropriate on the Existing Record for Lack of Standing Except as to LULAC.*

In addition to seeking injunctive relief, Plaintiffs seek actual or nominal damages from Pate pursuant to 42 U.S.C. § 1983. Pate argues, correctly, that he is immune from such claims insofar as Plaintiffs are suing him in his official capacity. *See Smith v. Reynolds*, 139 F.4th 631, 635 (8th Cir. 2025) ("The Eleventh Amendment bars a suit brought by a private individual against a state. The same rule applies to a suit against [state officials] in their official capacities because 'the state is the real, substantial party in interest.'" (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (internal citation omitted))). What Pate misses, however, is that Plaintiffs are also suing him in his individual capacity. (ECF 66, ¶ 23.) This creates potential liability for him for nominal and compensatory damages irrespective of the fact that the claims for injunctive relief are moot. *See Webb ex rel. K.S. v. Smith*, 936 F.3d 808, 814 (8th Cir. 2019) (holding that plaintiffs could pursue claims for damages even though they could not obtain declaratory or injunctive relief). The fact that the individual Plaintiffs are suing Pate in his individual capacity for damages also means they may have standing despite the mootness of their claims for injunctive relief. *See id.* In arguing otherwise, Pate operates from the premise that Plaintiffs are suing only for injunctive relief. (ECF 76-1, pp. 12–13.) Because the premise is wrong, his argument that they lack standing is unpersuasive.

Separately, Pate argues that LULAC lacks organizational standing because it has not identified by name any member who suffered the requisite harm. *See Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 602 (8th Cir. 2022) (dismissing for lack of associational standing based on plaintiff's failure to identify by name members who suffered the requisite harm). LULAC does not directly respond to this argument, instead asserting that it suffered harm of its own by virtue of diverting resources that otherwise would have been deployed elsewhere. This is not, however, enough to establish standing. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024). Accordingly, LULAC must be dismissed for lack of standing.

> C. *The Court Cannot Determine from Existing Briefing Whether the Individual Plaintiffs Have Viable Claims for Damages.*

On the merits, Pate's Motion to Dismiss again starts from the premise that Plaintiffs are only seeking injunctive relief. (ECF 76-1, pp. 16–25.) Plaintiffs essentially respond in kind (ECF

79, pp. 16–22), mentioning their claims for damages only in response to Pate's arguments about mootness and standing (id., pp. 9, 12). This creates a problem for the Court because the analysis of the merits of claims for damages is different in many material respects than the analysis of the merits of claims for injunctive relief.

For example, as a threshold matter, the parties did not address whether a plaintiff has a private cause of action for damages under the relevant provisions of the NVRA and Voting Rights Act until Pate's Reply Brief. Some courts have held that no such private cause of action exists. *See Krieger v. Loudon County*, No. 5:13-cv-073, 2014 WL 4923904, *5 (W.D. Va. Sept. 30, 2014) ("Neither … the NVRA nor the Voting Rights Act provides a private cause of action for damages."); *see also, e.g.*, *Cook v. Randolph County*, 573 F.3d 1143, 1155 (11th Cir. 2009) ("Neither the Supreme Court nor this Court has ever held, however, that private parties have an implied right of action for monetary damages under § 5 [of the Voting Rights Act]."); *Nat'l Coal. for Students With Disabilities Educ., Legal Def. Fund v. Bush*, 170 F. Supp. 2d 1205, 1208 n.1 (N.D. Fla. 2001) ("The National Voter Registration Act creates a private right of action 'for declaratory or injunctive relief' with no mention of any right of action for damages. 42 U.S.C. § 1973gg-9(b)."). The Eighth Circuit does not appear to have directly addressed the question in the context of the NVRA and Voting Rights Act provisions at issue here, although it has held twice in recent cases that no private right of action exists for injunctive relief under other sections of the Voting Rights Act. *See Ark. United v. Thurston*, 146 F.4th 673, 676 (8th Cir. 2025) (holding that § 208 of the Voting Rights Act does not provide an implied right of action); *Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204 (8th Cir. 2023) (holding that § 2 of the Voting Rights Act does not provide an implied private right of action).

Even if the NVRA and/or Voting Rights Act do not allow a direct cause of action for damages, it is nonetheless possible that a plaintiff may pursue a claim for damages pursuant to 42 U.S.C. § 1983 based on violations of those statutes. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) ("Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983."). However, § 1983 "does not necessarily provide an avenue to vindicate rights under a federal statute if that statute has an express and specific remedial scheme." *Black Voters Matter Fund v. Raffensperger*, 508 F. Supp. 3d 1283, 1296 (N.D. Ga. 2020); *see also City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 119–21 (2005). Two courts in relatively recent cases have concluded that plaintiffs may not pursue damages claims under § 1983

based on alleged violations of the NVRA. *See Isabel v. Reagan*, 394 F. Supp. 3d 966, 975–76 (D. Ariz. 2019); *Black Voters Matter*, 508 F. Supp. at 1296. Again, it does not appear that the Eighth Circuit has directly addressed the issue under the sections of the NVRA and Voting Rights Act at issue here. *Cf. Turtle Mountain Band of Chippewa Indians v. Howe*, 137 F.4th 710, 721 (8th Cir. 2025) (holding that plaintiffs may not pursue relief under § 1983 for violations of § 2 of the Voting Rights Act).

      Next, to the extent § 1983 provides a pathway for the individual Plaintiffs to pursue claims for damages under the NVRA and/or Voting Rights Act, the Court nonetheless must determine whether Pate is entitled to qualified immunity on those claims. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (explaining that qualified immunity protects state officials from claims for damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))). The Court also must analyze qualified immunity on Plaintiffs' claims against Pate under the First and Fourteenth Amendments, which presumably may be pursued under § 1983 irrespective of the outcome of the NVRA and Voting Rights Act claims. *See, e.g., Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2011) ("This court has held that a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983."). "Qualified immunity 'is an immunity from suit rather than merely a defense to liability.'" *Solomon v. Petray*, 699 F.3d 1034, 1038 (8th Cir. 2012) (emphasis omitted) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. State officials like Pate are entitled to qualified immunity "unless: (1) [they] violated a constitutional right, and (2) that constitutional right was clearly established so that a reasonable [official] would know of the right at the time of the alleged violation." *Thurairajah v. City of Fort Smith*, 925 F.3d 979, 982 (8th Cir. 2019).

      The parties have not meaningfully addressed any of these issues, instead focusing entirely on how to interpret the NVRA, Voting Rights Act, and First and Fourteenth Amendments in the context of Plaintiffs' claims for injunctive relief. These interpretive questions are only relevant to Plaintiffs' claims for damages if such claims are viable in the first place. And even if they are, the

interpretive questions may have to be analyzed through the lens of qualified immunity; meaning, the relevant question would not necessarily be whether Pate violated Plaintiffs' rights, but rather whether those rights were "clearly established" at the time of the alleged violation.

The Court could, based on the existing briefing and its own survey of governing law, try to make determinations on: (a) whether the individual Plaintiffs have private causes of action for damages under the NVRA and/or Voting Rights Act; (b) if not, whether the individual Plaintiffs nonetheless may pursue damages for violations of those statutes pursuant to 42 U.S.C. § 1983; and (c) whether Pate is entitled to qualified immunity on any § 1983 claims that the individual Plaintiffs are permitted to bring based on alleged violations of the NVRA, Voting Rights Act, and/or First and Fourteenth Amendments. The better path forward, however, is for the parties to address these issues in the first instance. Accordingly, the Court will proceed as follows:

(1) Pate's Motion to Dismiss will be GRANTED IN PART. All claims for injunctive relief against Pate and all other Defendants are DISMISSED AS MOOT. The five County Commissioner Defendants are DISMISSED from the case. All claims for damages against Pate in his official capacity are DISMISSED based on sovereign immunity. All remaining claims by LULAC are DISMISSED based on lack of standing.

(2) Pate's Motion to Dismiss will be DENIED IN PART. The individual Plaintiffs' claims for damages against Pate will not be dismissed.

(3) **Within twenty-one days**, Pate must either file a renewed motion to dismiss addressing the issues identified above regarding the claims against him for damages in his individual capacity, or, if he does not intend to renew the motion to dismiss, a new Proposed Scheduling Order and Discovery Plan in consultation with Plaintiffs' counsel.

(4) The agreed-upon stay will be extended until Pate makes his decision how to proceed; if he chooses to renew his motion to dismiss, the stay will remain in effect until the renewed motion to dismiss is decided.

V. CONCLUSION.

The Court GRANTS IN PART and DENIES IN PART Pate's Motion to Dismiss. (ECF 76.)

**IT IS SO ORDERED.**

Dated: November 20, 2025

STEPHEN H. LOCHER
U.S. DISTRICT JUDGE